1  William M. Audet (CA 117456)
   waudet@audetlaw.com
2  Adel A. Nadji (CA 232599)
   anadji@audetlaw.com
3  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
4  San Francisco, California 94105
   Tel: 415-568-2555
5  Fax: 415-568-2556

6  *Counsel for Plaintiffs*

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| BABAK PISHVAEE, individually, and on behalf of a class of similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>VeriSign, Inc., a California corporation, m-Qube, Inc., a Delaware corporation, and AT&T Mobility LLC, formerly known as Cingular Wireless LLC, a Delaware corporation<br><br>Defendants. | No. 07-3407 (PVT)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>DEMAND FOR JURY TRIAL<br><br>CLASS ACTION |

## NATURE OF THE CLASS ACTION

1.    Plaintiff Babak Pishvaee ("Plaintiff"), on behalf of himself and a class of similarly situated individuals ("Class"), brings this class action against VeriSign, Inc. and m-Qube, Inc. (collectively hereinafter "m-Qube"), and against AT&T Mobility LLC f/k/a Cingular Wireless LLC (hereinafter "Cingular"), seeking (1) to stop Defendants' common and unlawful practice of causing cellular telephone customers to be improperly billed for wireless content services that the customers did not order and (2) stop Defendants' common and unlawful practice of re-using cellular telephone numbers that are encumbered with undisclosed pre-existing billing obligations, which the practice thereof resulted in unauthorized charges to customers' accounts.

2.    M-Qube and Cingular shared in the revenues generated from the improper billing services, has profited enormously from its wrongful conduct in violation of (a) the common law of unjust enrichment, (b) improper billing in violation of federal and state statutes (against Cingular Defendant only), (c) violation of Civil Code §§ 1750, *et seq.*, and (d) violation of Bus. & Prof. Code Sections 17200 and 17500, *et seq.*

3.    Plaintiff seeks money damages disgorgement, injunctive and declaratory relief, costs, and reasonable attorneys' fees for himself and for the Class.

## PARTIES

4.    Plaintiff is a resident of California and a member of the Class.

5.    Defendant m-Qube, Inc. is a leading mobile channel enabler that helps companies develop, deliver, and bill for mobile content, messaging and applications.  Defendant m-Qube, Inc. is a Delaware corporation, and now a subsidiary of Defendant VeriSign, Inc.

6.    Defendant VeriSign, Inc. is a California corporation with headquarters in Mountain View, California.  In May of 2006, VeriSign, Inc. acquired m-Qube, Inc. and became its corporate partner.

7.    Defendant AT&T Mobility LLC, f/k/a Cingular Wireless LLC, is a Delaware corporation with its principle place of business in Atlanta, Georgia.  Cingular is a wholly-owned wireless subsidiary of AT&T Inc.

**JURISDICTION AND VENUE**

8.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection applies to the instant action.

9.    Venue is proper in this district under 28 U.S.C. §§ 1391(a)(1) and 1391(a)(2).

**STATEMENT OF THE FACTS**

10.    Cingular provides its customers with a cellular telephone number upon purchasing Cingular's cellular telephone services and/or activation of cellular telephone accounts. These telephone numbers are routinely "recycled" and "dirty." The term "recycled" means that that they were previously owned and/or used by other persons or entities. The term "dirty" means that they are encumbered with undisclosed pre-existing billing obligations for products and services purportedly authorized to be purchased by the previous owners and/or users of those numbers.

11.    Cingular's practice of re-issuing "dirty" phone numbers has resulted in unauthorized charges being placed on unsuspecting customers' telephone bills, such as Plaintiff, in an illegal practice known as "cramming." For years, Cingular has systematically, repeatedly and without authorization, placed charges on customers' monthly bills for third-party service that were never authorized to be purchased by the current owners of affected phone numbers.

12.    Third-party services include services such as ringtones, texts, news, and games. Cingular, like most content providers, uses a "intermediary" service company for billing customers for these third-party services. Here, Cingular used m-Qube Defendant's services. Defendant m-Qube is a leading "mobile channel enabler," allowing companies develop, deliver, and bill for mobile software such as ringtones, texts, news, and games to compatible mobile devices throughout the State of California and the nation.

13.    Mobile content providers, i.e., third party service companies, charge for their services and cause such charges to be placed directly on customers' cell phone bill accounts through Plaintiff's service carrier, Cingular. Content providers often turn to intermediaries such as m-Qube Defendants who maintain direct connections to the carriers' networks for content delivery

1    and handle the content providers' billing arrangements with the carriers. M-Qube has developed a

2    vast distribution system that integrates into the networks of the nation's largest cellular telephone

3    carriers, with direct connections to more than two-dozen carriers, including Cingular. As a result,

4    Defendants is able to deliver and bill for mobile content for more than 200 million wireless

5    subscribers nationwide. In this manner, m-Qube and Cingular Defendants have improperly

6    collected millions of dollars for improper billings for services not requested.

7        14.    As m-Qube knows, Cingular routinely recycles encumbered telephone numbers to

8    their customers when they sign up for new cell phone service. M-Qube generates its revenue is

9    primarily by transactions for which it, in concert with mobile content providers and Cingular,

10   charges cell phone subscribers. Each time one of its content-provider partners issues a charge for

11   its services. Defendants m-Qube and Cingular causes the charge to be billed by the carrier to the

12   cell phone account then associated with that phone number. Cell phones accounts function similar

13   to credit card accounts without any security features. The only information mobile-content

14   providers require in order to add a charge to a cell phone account is the cell phone number itself.

15       15.    These problems are reflected by scores of detailed, angry, and explicit online user

16   reviews of the Cingular and m-Qube services. Examples of such reviews follow:

> "I had $33.73 charge added to cell phone bill. It was coded as
> Direct Bill Communications Downloads. Knew it was unfounded.
> Got on the phone with Cingular to have it removed. It was put on
> by m-qube. The operator I was talking to proceeded to tell me that
> this company sends out a text to you and even if you don't accept
> the text you are automatically subscribed to them, for 33.73. Oh
> reeeeeally! How nice. I was furious. How many thousands of
> people have been billed as I?"

> "Several months ago I started getting charges to my Cingular
> account titled M-Qube. The local store has long waiting lines but I
> took the time to wait to remedy the situation. The sales assistant
> was rube and informed me I had gone online and authorized this. I
> never authorized or had ever visited the M-Qube site. After a long
> discussion he informed me that he would credit the charges but that
> it was still my fault. He told me that I must be opening the
> messages which I had never done. He assured me that he had
> stopped the messages from coming again.

4

"The next month I again received charges. I went to the store and found about an hour wait. After waiting for 30 minutes I phoned the Cingular 800 customer service # and continued waiting in line. After a long discussion and two reps they told me that they may not be able to credit the charges. They also told me they could not stop future charges and I had to call M-Qube to cancell what I had never ordered. They also told me the opposite the previous rep had about the charges - that I had to open the messages to decline the offer to keep from being charged. I hung up the phone and left the store after having been there for 45 minutes."

"I was charged $21.19 by Cingular for 'm-Qube') 'downloading charges on my cell', which I don't have 'enabled'! After several different phone calls to various members, they would all refer me to another.... You have to keep a constant check on your bills from ALL!"

16.    When the carrier sends its usual monthly bill to the cell phone subscriber, it includes the charges for such mobile content. Cingular keeps its share of the mobile content charges and then remits the balance to m-Qube. Defendants m-Qube and Cingular have registered hundreds of millions of transactions and processed hundreds of millions of dollars over the years and has profited enormously from its arrangement with Cingular and its content provider partners.

17.    As a result, Cingular and m-Qube has for years been systematically, repeatedly and without authorization, billing its customers for products and services not authorized to be purchased by those customers. If such purchases were authorized at all, they were authorized by previous owners and/or users of such telephone numbers. Cingular and m-Qube have, on information and belief, profited greatly from this practice.

## CLASS ALLEGATIONS

18.    Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of themselves and a class (the "Class") consisting of all wireless telephone subscribers in California and the nation who were billed by Defendants m-Qube and Cingular for products or services not authorized by the existing owner of the telephone number. Defendant m-Qube and Cingular and their employees are excluded from the Class.

19.    The Class consists of thousands of individuals and other entities, making joinder impractical, in satisfaction of Rule 23(a)(l). The law of California can be applied to all class members.

20.    The claims of the representative Plaintiff are typical of the claims of all of the other Class members. The law of California should be applied to all claims asserted.

21.    The Plaintiff will fairly and adequately represent and protect the interests of the other Class members. The Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. The Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither the Plaintiff nor their counsel have any interests adverse to those of the other Class members.

22.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

23.    Defendants m-Qube and Cingular have acted and failed to act on grounds generally applicable to the Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

24.    The factual and legal bases of m-Qube and Cingular Defendants' liability to the Plaintiff and to the other Class members are the same, resulting in injury to the Plaintiff and to all of the other Class members. The Plaintiff and other Class members have all suffered harm and damages as a result of all of the m-Qube and Cingular Defendants' unlawful and wrongful conduct.

25.    There are many questions of law and fact common to the Plaintiff and the other Class members, and those questions predominate over any questions that may affect individual Class members within the meaning of Rule 23(a)(2) and 23(b)(3).

### FIRST CAUSE OF ACTION
[Consumer Legal Remedies Act "CLRA"]
[Violations of Civil Code §§1750, *et seq.*]
[Against All Defendants]

26.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

27.    Defendant m-Qube is a "person" as defined by Civil Code § 1761(c).  Defendant Cingular is a "person" as defined by Civil Code § 1761(c).

28.    Plaintiff and Class are "consumers" within the meaning of Civil Code § 1761(d).

29.    The Consumer Legal Remedies Act applies to m-Qube and Cingular Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods and/or providing services to consumers.

30.    The products that Plaintiff and each other member of the Class purchased from m-Qube are "goods" within the meaning of Civil Code Section 1761(a).

31.    Defendant m-Qube offers for sale and sells products, when at all relevant times, Defendant m-Qube knew or should have known that such actions constitute omissions and concealment of material facts that are unfair, deceptive, and misleading business practices in violation of Civil Code §§1770(a)(1)(2)(3) and (5).

32.    Defendant Cingular intended that Plaintiff and Class would rely on its deception by paying additional costs for unordered goods and/or services, unaware of the material described above.  This conduct constitutes consumer fraud, an unfair business practice and violation of the CLRA.

33.    The conduct described herein by m-Qube and Cingular Defendants is unlawful pursuant to California Civil Code §§1770(a)(1)(2)(3) and (5).  M-Qube and Cingular Defendants' deceptive acts and omissions occurred in the course of selling a consumer product and have occurred continuously through the filing of this Complaint.

34.    As a direct and proximate result of Defendants' violations of Civil Code Section 1750, *et seq.*, Plaintiff and the other Class members have suffered irreparable harm and monetary damages.  Plaintiff, on behalf of himself and on behalf of the Class, seeks all relief allowable under the CLRA.

1    35.    Through the filing of the initial Complaint on June 28, 2207, Plaintiff has complied

2    with the notice provisions of Civil Code §1782, and therefore seeks damages for himself pursuant

3    to the CRLA.

4    **SECOND CAUSE OF ACTION**
**[Unfair Competition & False Advertising]**

5    **[Violation of Bus. & Prof. Code Sections 17200 and 17500]**
**[Against All Defendants]**

6

7    36.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

8    herein and further alleges as follows:

9    37.    Plaintiff brings this cause of action on behalf of himself, on behalf of the Class, and

10    in his capacity as private attorney general.

11    38.    Defendants m-Qube and Cingular have engaged, and continue to engage, in unfair,

12    unlawful and fraudulent business acts and practices of unauthorized billing.

13    39.    Beginning on a date unknown to Plaintiff and continuing to the present, Defendants

14    m-Qube and Cingular have engaged in, are engaged in, and propose to engage in unfair

15    competition, as that term is defined in Business and Professions Code §17200.

16    40.    As used in this Complaint and in §17200, "unfair competition" means (1) an

17    unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading

18    advertising; and/or (3) an act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of

19    Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to Business

20    and Professions Code §§17200, 17203.

21    41.    In engaging in conduct which constitutes unfair competition, Defendants have

22    acquired money or property from members of the general public.  It is impossible for the Plaintiff

23    to determine the exact amount of money that Defendants have obtained without a detailed review

24    of Defendants' books and records.  Specifically, Defendants have engaged in, are engaged in, and

25    propose to engage in unlawful, unfair, and fraudulent business acts and practices, each of which

26    independently constitute Unfair Competition.

27

28

1     42.    Under the circumstances alleged herein, it would be inequitable and would result in

2  a miscarriage of justice for Defendants m-Qube and Cingular to continue to retain the property of

3  Plaintiff and the Class.

4     43.    M-Qube and Cingular Defendants' practice is unfair because it is not fully and

5  adequately disclosed at the time that customers contract to obtain their wireless telephone service

6  through Cingular and, therefore, is immoral, unethical, oppressive, unscrupulous, and/or

7  substantially injurious to the Class.

8     44.    Defendant Cingular's practice is unlawful because it violates the Federal

9  Communications Act and the Consumer Legal Remedies Act.  Defendant Cingular's practice is

10  also unlawful because it constitutes unjust enrichment.

11     45.    M-Qube and Cingular Defendants' practice is fraudulent because it has deceived

12  and is likely to deceive members of the Class.

13     46.    Unless m-Qube and Cingular Defendants are enjoined from continuing to engage in

14  this unfair, unlawful, and fraudulent business practice, Plaintiff and Class will continue to be

15  injured by m-Qube and Cingular Defendants' actions and conduct.

16     47.    So as not to be unjustly enriched by their own wrongful actions and conduct, m-

17  Qube and Cingular Defendants should be required to disgorge and restore to Plaintiff and Class all

18  monies wrongfully obtained by m-Qube and Cingular Defendants as a result of their, unlawful and

19  fraudulent business practice, together with interest thereon.

20     48.    Pursuant to Business and Professions Code §17203, the Court may impose

21  injunctive relief against any conduct found to constitute unfair competition pursuant to Business

22  and Professions Code §17200.  The court may also make such orders or judgments, including the

23  appointment of a receiver, as may be necessary to prevent the use or employment by any person of

24  any practice which constitutes unfair competition, or as may be necessary to restore to any person

25  in interest any money or property, real or personal, which may have been acquired by means of

26  such unfair competition.

27     49.    Plaintiff, on behalf of himself, the Class, and the general public seeks restitution,

28  and all other relief allowed under Section 17200, *et seq.*

**THIRD CAUSE OF ACTION**
**[Unjust Enrichment]**
**[Against All Defendants]**

50.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

51.    A benefit has been conferred upon m-Qube and Cingular Defendants by Plaintiff and the Class.  These Defendants have received and retain money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Class of cellular telephone customers to be billed by their cellular carriers for mobile content services authorized to be purchased, if at all, by the previous owners and/or users of such telephone numbers.

52.    M-Qube and Cingular Defendants appreciate or have knowledge of said benefit.

53.    Under principles of equity and good conscience, m-Qube and Cingular Defendants should not be permitted to retain the money belonging to Plaintiff and the Class which these Defendants have unjustly received as a result of its actions.

**FOURTH CAUSE OF ACTION**
**[Declaratory and Injunctive Relief]**
**[Against All Defendants]**

54.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

55.    There exists an actual controversy under the terms of Defendants' service agreements, and applicable law governing those agreements, as to whether Defendants can charge their customers for services not requested.

56.    Plaintiff, on behalf of himself, the Class, and the general public, seeks declaratory and injunctive relief to stop Defendants' common practice of causing cellular telephone customers to be improperly billed for wireless content services that the customer did not order.

57.    Plaintiff, on behalf of himself, the Class, and the general public, seeks declaratory and injunctive relief to stop Defendants' common and unlawful practice of re-using cellular

1  telephone numbers that are encumbered with undisclosed pre-existing billing obligations, which

2  the practice thereof resulted in unauthorized charges to customers' accounts.

3      58.    These questions are common to the members of the Class who seek declaration of

4  their rights and legal obligations in addition to such other relief as might be granted by this Court.

5

6

7                          **FIFTH CAUSE OF ACTION**
                           **[Violation of 47 U.S.C §201]**
8                        **[Against Cingular Defendant Only]**

9      59.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

10  herein and further alleges as follows:

11      60.    Cingular is a common carrier engaged in interstate communications by wire for the

12  purpose of furnishing communications services within the meaning of § 201(a) of the Federal

13  Communications Act.

14      61.    Section 201 of 47 U.S. Code provides in relevant part as follows:

15          All charges, practices, classifications, and regulations for and in
            connection with such communication service [i.e., interstate or
16          foreign communication by wire or radio], shall be just and
            reasonable, and any such charge, practice, classification, or
17          regulation that is unjust or unreasonable is declared to be unlawful.

18      62.    Cingular's practice of charging Plaintiff and Class members for services they never

19  ordered or subscribed to is unjust and unreasonable, and therefore violates the said statute.

20      63.    As a direct and proximate result of Cingular's violations of § 201 of the Federal

21  Communications Act, Plaintiff and the Class have been damaged in an amount according to proof

22  in trial.

23                          **SIXTH CAUSE OF ACTION**
                   **[Violation of California Public Utilities Code §2890]**
24                        **[Against Cingular Defendant Only]**

25      64.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

26  herein and further alleges as follows:

27

28

65.    Cingular is a telephone corporation and public utility as defined in California Pub. Util. Code Sections 216 and 234 and is certified by the California Public Utilities Commission ("CPUC") to offer, and does in fact offer and sell, mobile cellular telecommunication services throughout the State of California.

66.    California Public Utilities Code Section 2106 provides aggrieved persons the following private right of action:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury maybe brought in any court of competent jurisdiction by any corporation or person.

67.    Cingular's unlawful charging is further exacerbated by its failure to strictly comply with various disclosure-related requirements of Public Utilities Code Section 2890, making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

68.    Defendant Cingular violated Section 2890 by virtue of its conduct alleged above, including its billing for products or services, the purchase of which Plaintiff never authorized, thereby causing Plaintiff and the members of the Class to suffer loss, damage, and injury.

69.    Although required to do so, the bills issued by Cingular failed to include information with regard to the entity that charged for the products or services, failed to include a toll-free telephone number or other no-cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed, failed to include the name of the party responsible for generating the charge, failed to include descriptions of the service, product, or other offering for which charges had been imposed, and failed to indicate how to dispute specific charges.

70.    Cingular systematically failed to adhere to these cramming rules in its treatment of Plaintiff and other affected customers. Public Utilities Code Section 2890(e) further requires that

12

1   an entity responsible for generating a charge on a telephone bill receives "a complaint from a
2   subscriber that the subscriber did not authorize the purchase of the product or service associated
3   with that charge, the entity, not later than 30 days from the date on which the complaint is
4   received, shall verify the subscriber's authorization of that charge or undertake to resolve the
5   billing dispute to the subscriber's satisfaction."

6       71.    Plaintiff and the Class dispute said charges and, thus, are entitled to a presumption
7   that said charges were unauthorized. Pursuant to Public Utilities Code Section 2890(d)(2)(D), if
8   there is a dispute, "there is a rebuttable presumption that an unverified charge for a product or
9   service was not authorized by the subscriber and that the subscriber is not responsible for that
10  charge."

11      72.    Cingular's conduct is by no means accidental. As hereinbefore alleged, Cingular
12  knows that these previously-used numbers often are encumbered with pre-existing subscriptions,
13  that Cingular knows that the cell phone numbers it issues include numbers previously assigned to
14  former customers, and knows, from admitted receipt of customer complaints about billings for pre-
15  existing subscriptions, that among the numbers it issues are numbers with pre-existing
16  subscriptions. Despite this knowledge Cingular has not set up procedures to insure that the
17  numbers it assigns to new customers have been cleansed of pre-existing and undisclosed
18  subscriptions. In light of its knowledge of these facts, Cingular's decision to continue issuing
19  phone numbers without taking any steps to cleanse them constitutes a deliberate and willful
20  scheme to cheat large numbers of people out of small amounts of money.

21      73.    Because the amount Cingular is taking is small on an individual basis, and because
22  of Cingular's vast resources and superior bargaining power, Cingular employs this scheme with
23  the hope and expectation that its illegal conduct will go unpunished.

24      74.    Plaintiff and the Class are entitled to actual damages pursuant to Public Utilities
25  Code Section 2106. Plaintiff and the Class are further entitled to exemplary damages to the extent
26  the evidence shows that Defendant's violations were willful.

27

28

13

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and the Class, pray for the following relief:

(a)     That the Court certify this case as a class action, appoint the undersigned as class counsel, and appoint Plaintiff as the Class representative;

(b)     That the Court declare that the actions of Defendants m-Qube and Cingular, as set out above, constitute unjust enrichment, are in violation of 47 U.S.C. §201, California Public Utilities Code §2890 and California Civil Code §1750 and California Business and Professions Code §§17200 and 17500.

(c)     That the Court enter judgment against Defendants m-Qube and Cingular for all economic, monetary, actual, consequential, and compensatory damages caused by these Defendants' conduct, and if these Defendants' conduct is proved willful award Plaintiff and the Class exemplary damages;

(d)     That the Court award Plaintiff and the Class reasonable costs and attorney's fees;

(e)     That the Court award Plaintiff and the Class pre- and post-judgment interest, including interest not paid on any credits previously provided;

(f)     That the Court enter judgment for an injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class;

(g)     That the Court award such other and further relief as equity and justice may require.

1

## JURY DEMAND

2

Plaintiff requests trial by jury of all claims that can be so tried.

3

Date:  September 21, 2007                    Respectfully submitted,

4

AUDET & PARTNERS, LLP

5

6

7                                            William M. Audet (CA 117456)
                                             Adel A. Nadji (CA 232599)
8                                            221 Main Street, Suite 1460
                                             San Francisco, California 94105
9                                            Telephone:  415.568.2555
                                             Facsimile: 415.568.2556
10

11                                           *Attorneys for Plaintiff and the Class*

12
Of Counsel:
13  Siamak Pishvaee, JD, MBA
    Pishvaee & Associates
14  2934 1/2 Beverly Glen Circle, #269
    Bel Air, CA 90077
15  Telephone: (310) 694-8080
    Facsimile: (310) 694-8081
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

3

I am employed in the County of San Francisco, State of California; my business address is 221 Main Street, Suite 1460, San Francisco, California 94105. I am over the age of 18 and not a party to the within action. On this date I served the following documents:

4

5

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

6

7

on the parties shown below:

8

9
10
11
12

Ronald L. Johnston
Angel L. Tang
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Facsimile: (213) 243-4199
*Attorneys for Defendants VeriSign, Inc. and m-Qube, Inc.*

James L. Cooper
Laura Riposo Vandruff
ARNOLD & PORTER LLP
555 12th Street, NW
Washington, DC 20004
Facsimile: (202) 942-5999
*Attorneys for Defendants VeriSign, Inc. and m-Qube, Inc.*

13

14

[X] (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the above-referenced documents were transmitted, the transmission was reported as complete and without error and the report was properly issued.

15

16

[X] (BY MAIL) I am readily familiar with the firm's practice for the processing of mail; on this date, the above-referenced documents were placed for collection and delivery by the U.S. Postal Service following ordinary business practices.

17

18

[ ] (BY ELECTRONIC FILING) On this date I provided the documents(s) listed above electronically through the Court's electronic filing service provider pursuant to the instructions on that website.

19

20

[ ] (BY E-MAIL) On this date, the above-referenced documents were converted to electronic files and e-mailed to the addresses shown.

21

22

[ ] (BY PERSONAL SERVICE) I caused the above documents to be delivered by hand pursuant to CCP § 1011.

23

[X] Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

[ ] State: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 21st day of September, 2007 at San Francisco, California.

26

27

28

– 1 –