1  Donald M. Falk (State Bar No. 150256)
   dfalk@mayerbrown.com
2  MAYER BROWN LLP
   Two Palo Alto Square
3  3000 El Camino Real, Suite 300
   Palo Alto, CA 94306-2112
4  Telephone: (650) 331-2000
   Facsimile: (650) 331-2060
5
   Michael J. Stortz (State Bar No. 139386)
6  michael.stortz@dbr.com
   DRINKER BIDDLE & REATH LLP
7  50 Fremont Street, 20th Floor
   San Francisco, California 94105-2235
8  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510
9
10 Attorneys for Defendant
   AT&T MOBILITY LLC
11

12          **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
13               **SAN JOSE DIVISION**

14 BABAK PISHVAEE, individually, and on       Case No.: C-07-3407
   behalf of a class of similarly situated
15 individuals,                                MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN SUPPORT OF MOTION OF
16          Plaintiff,                         DEFENDANT AT&T MOBILITY LLC TO
                                               COMPEL ARBITRATION AND TO DISMISS
17     v.                                      CLAIMS PURSUANT TO THE FEDERAL
                                               ARBITRATION ACT
18 VERISIGN, INC., a California corporation, M-
   QUBE, INC., a Delaware corporation, and     Date: February 11, 2008
19 AT&T MOBILITY LLC, formerly known as        Time: 9:00 a.m.
   Cingular Wireless LLC, a Delaware
20 corporation,                                     Honorable James Ware

21          Defendants.

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

STATEMENT OF THE ISSUE TO BE DECIDED ........................................................ 1

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

    A.    Pishvaee Agreed To Resolve Any Dispute With ATTM Either Through Individual Arbitration Or In Small Claims Court .................................... 2

    B.    ATTM's Arbitration Provision Is Uniquely Favorable To Consumers ................. 4

    C.    Dispute Resolution Under ATTM's Arbitration Provision Is Convenient For ATTM's Customers ........................................................... 5

    D.    Pishvaee Files This Putative Class Action Lawsuit Notwithstanding His Agreement To Arbitrate ...................................................... 6

ARGUMENT ................................................................................................................ 8

I.    THE FAA MANDATES ENFORCEMENT OF PISHVAEE'S CONTRACTUAL AGREEMENT TO ARBITRATE ...................................... 7

II.    ATTM'S ARBITRATION PROVISION IS NOT UNCONSCIONABLE UNDER CALIFORNIA LAW ............................................................................ 7

    A.    Pishvaee Can Establish At Most Only A Modest Degree Of Procedural Unconscionability ..................................................................... 9

    B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable At All, Much Less "Great[ly]" So ......................................................... 13

III.    THE FAA WOULD PREEMPT ANY HOLDING THAT ATTM'S ARBITRATION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW ...................................................................................... 16

CONCLUSION ........................................................................................................... 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477 (Ct. App. 1996) ....................................17

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000)............................8, 9

*Aron v. U-Haul Co.*, 49 Cal. Rptr. 3d 555 (Ct. App. 2006)........................................9, 10

*Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631 (Ct. App. 2007)................9, 10, 17

*Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 27 Cal. Rptr. 2d 396 (Ct. App. 1994) ............................9

*Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903 (7th Cir. 2004)....................................18

*Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789 (Ct. App. 1989) ............................10

*Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005)........................................ *passim*

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002)........................................8

*Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344 (Ct. App. 2007) ........................10, 11, 12, 15

*Gentry v. Super. Ct.*, 165 P.3d 556 (Cal. 2007) ........................................15, 16

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)........................................8

*Herbert v. Lankershim*, 71 P.2d 220 (Cal. 1937)........................................9, 17

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) ..................17

*Koehl v. Verio, Inc.*, 48 Cal. Rptr. 3d 749 (Ct. App. 2006) ........................................17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
107 Cal. Rptr. 2d 645 (Ct. App. 2001) ........................................9, 15

*Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797 (Ct. App. 2005) ...............................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................................8

*Odell v. Moss*, 62 P. 555 (Cal. 1900) ........................................9

*Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006)........................................10, 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- i -

# TABLE OF AUTHORITIES

**Page(s)**

*Riensche v. Cingular Wireless LLC*, No. C06-13252, 2007 WL 3407137
(W.D. Wash. Nov. 9, 2007) ...................................................................................10, 11

*Santisas v. Goodin*, 951 P.2d 399 (Cal. 1998) ................................................................14

*Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007) ..................... *passim*

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) .....................................18

*Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862 (Ct. App. 2002)...................................10

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053 (9th Cir. 2004) .......18

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) .........................................................15, 16

*Trend Homes, Inc. v. Super. Ct.*, 32 Cal. Rptr. 3d 411 (Ct. App. 2005).........................10

*United States v. Corum*, 362 F.3d 489 (8th Cir. 2004) ....................................................8

*United States v. Weathers*, 169 F.3d 336 (6th Cir. 1999) .................................................8

*Villa Milano Homeowners Ass'n v. Il Davorge*, 102 Cal. Rptr. 2d 1 (Ct. App. 2000)..................10

*Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544 (Ct. App. 2006) .......................................10

*Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775 (Ct. App. 1976)..................................11

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ..........................................................1, 7, 8, 16

Federal Communications Act, 47 U.S.C. §§ 151 *et seq* ....................................................7

Federal Rule of Civil Procedure 11(b)................................................................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq* ...........................................................................7

Cal. Bus. & Prof. Code §§ 17500 *et seq* ...........................................................................7

Cal. Civ. Code § 54.3(a) ..................................................................................................14

Cal. Civ. Code §§ 1750 *et seq*..........................................................................................7

Cal. Code Civ. Proc. § 116.221 ........................................................................................4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- ii -

## TABLE OF AUTHORITIES

**Page(s)**

**Miscellaneous**

1 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE § 244 (14th ed. 1918)......................9

Stephen A. Broome, *An Unconscionable Application of the Unconscionability Doctrine: How the California Courts Are Circumventing the Federal Arbitration Act*, 3 HASTINGS BUS. L.J. 39 (2006) ................................................10

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts,* 59 VAND. L. REV. 729 (2006) ................................................................16

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. REV. 1303 (2006)........................................14

Lewis L. Maltby, *Employment Arbitration and Workplace Justice,* 38 U.S.F. L. REV. 105 (2003)............................................................15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- iii -

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Federal Arbitration Act, 9 U.S.C. §§ 1–16, requires plaintiff Babak Pishvaee to pursue his claims against defendant AT&T Mobility LLC in accordance with his arbitration agreement.

**INTRODUCTION**

Defendant AT&T Mobility LLC ("ATTM") respectfully moves to compel arbitration and to dismiss plaintiff Babak Pishvaee's claims against ATTM.  When Pishvaee contracted for wireless service, he expressly agreed to arbitrate any claims against ATTM on an individual (rather than class-wide) basis or to bring them in small claims court.  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, as well as applicable state law, requires him to honor his promise.

Pishvaee will likely oppose this motion by arguing that, because his arbitration agreement requires the resolution of disputes on an individual basis, it is unconscionable under the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), and the Ninth Circuit's decision in *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007).  Any such argument should be rejected.  *Discover* did not impose an across-the-board ban on class-arbitration waivers in consumer contracts, and *Shroyer* invalidated an earlier—and materially different—version of the arbitration provision at issue in this case. The unprecedentedly pro-consumer provision that is applicable here specifies that, if an arbitrator awards a California customer more than the amount of ATTM's last settlement offer, ATTM will pay the customer ***$7,500*** or the amount of the award, whichever is greater, and in addition will pay the customer's lawyers ***twice*** the amount of their reasonable attorneys' fees. This new provision directly addresses the concern of the California Supreme Court and the Ninth Circuit that "when the potential for individual *gain* is small, very few plaintiffs, if any will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers." *Shroyer*, 498 F.3d at 986 (emphasis in original) (citing *Discover*, 113 P.3d at 1106–10).

Moreover, any ruling that ATTM's arbitration provision is unenforceable under

California law would be preempted by the FAA. It is true that the FAA permits courts to refuse to enforce arbitration agreements based on ***generally applicable*** state-law principles. But it would require a marked deviation from those principles to invalidate ATTM's arbitration provision, which ensures that customers have a realistic means of obtaining redress for small claims on an individual basis. Section 2 of the FAA expressly preempts any such deviation from generally applicable contract law. Although in *Shroyer* the Ninth Circuit rejected a similar argument in the course of striking down the class-arbitration prohibition in a materially different arbitration provision, it did so on the ground that "[t]he rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to contracts generally in California." *Shroyer*, 498 F.3d at 987. That manifestly cannot be said of any holding that ATTM's ***revised*** arbitration provision is unenforceable. To call this provision "unconscionable" notwithstanding the incentives it provides to customers and their lawyers would be to drain the concept of "unconscionability" of all meaning. Accordingly, the holding in *Shroyer* is not dispositive of the preemption argument in this case.

## BACKGROUND

**A.    Pishvaee Agreed To Resolve Any Dispute With ATTM Either Through Individual Arbitration Or In Small Claims Court.**

Plaintiff Babak Pishvaee, a resident of California (Compl. ¶ 4), originally signed up for wireless service from ATTM (then Cingular Wireless LLC) in November 2002, when he activated service for one wireless phone line. *See* Declaration of Neal S. Berinhout ("Berinhout Decl.") ¶ 28. When he obtained service, Pishvaee entered into a Wireless Service Agreement ("WSA") with ATTM. That agreement incorporated standard Terms of Service that included an arbitration provision. *See id.* ¶¶ 22-23, 29 & Ex. 10.

Subsequently, Pishvaee entered into service agreements with ATTM on a number of occasions. Berinhout Decl. ¶ 30. In April 2006, Pishvaee was required to agree to the then-current Terms of Service—which also contained an arbitration provision—when he renewed his contracts with ATTM. *See id.* ¶ 30 & Ex. 11. In his service agreements, Pishvaee also agreed to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 2 -

a change-in-terms provision, which authorizes ATTM to "change any terms, conditions, rates, fees, expenses, or charges regarding [his] service at any time" and explains that ATTM would "provide [him] with notice of such changes * * * either in [his] monthly bill or separately." *See id.* ¶ 9 & Exs. 10, 11 at 5.  In December 2006, ATTM exercised that contractual right by mailing a revised version of the arbitration provision to all of the customers that it bills on a monthly basis, including Pishvaee, at their billing addresses via first class mail.  *Id.* ¶ 9.  ATTM also included a legend on the first page of Pishvaee's December 2006 bill to remind him that the arbitration provision in his contract had been revised and to invite him to view information about arbitration on ATTM's web site (at http://www.cingular.com/disputeresolution or, later, http://www.att.com/disputeresolution).  *Id.* ¶¶ 9-10, 31 & Ex. 12.  Pishvaee's bills for January through March 2007 included a similar notification.  *Id* ¶ 32 & Exs. 13, 14, 15.[1]

In September 2007, Pishvaee again agreed to ATTM's current terms of service, including the current arbitration provision, when he purchased and activated an iPhone.  Berinhout Decl. ¶¶ 33-34.  To use his iPhone with ATTM's wireless service, Pishvaee was required to activate it online.  *See id.* ¶ 34 & Ex. 16.  As part of the activation process, he was required to click on a box next to the statement: "I have read and agree to the AT&T Service Agreement."  *Id.*  The text of the service agreement, including its terms of service, was displayed in a text box immediately above the statement that Pishvaee was required to check.  *Id.*  The first sentence advised Pishvaee that, by checking the box next to the acknowledgement below, he would be "bound" to "the Terms of Service, including the ***binding arbitration clause***."  *Id.*  (emphasis added).

In addition, ATTM mailed Pishvaee the applicable Terms of Service booklet when he activated his iPhone.  Berinhout Decl. ¶ 35.  The Terms of Service contain an arbitration provision that states that "[ATTM] and you agree to arbitrate **all disputes and claims between us**" or to pursue such disputes in small claims court.  *Id.* Ex. 17 (emphasis in original).  The

---

[1]      ATTM later clarified the language in the revised arbitration provision slightly.  *See* Berinhout Decl. ¶ 11 & Ex. 2 (http://www.att.com/disputeresolution).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 3 -

1   provision specifies that arbitration must be conducted on an individual rather than class-wide

2   basis. *Id.* Ex. 17.

3   **B.     ATTM's Arbitration Provision Is Uniquely Favorable To Consumers.**

4           ATTM's recently revised arbitration provision is, to ATTM's knowledge, the most pro-

5   consumer arbitration provision in the country. Richard Nagareda, a law professor at Vanderbilt

6   University whose scholarship focuses on aggregate dispute resolution, observes that he has

7   "never seen an arbitration provision that has gone as far as this one to provide incentives for

8   consumers and their prospective attorneys to bring claims" on an individual basis. Declaration

9   of Richard A. Nagareda ("Nagareda Decl.") ¶ 11. The provision includes the following features

10  that were designed to make arbitration convenient and inexpensive for ATTM's customers

11  (Berinhout Decl. ¶ 7):

12  - **Cost-free arbitration:**  "[ATTM] will pay all [American Arbitration Association
13    ("AAA")] filing, administration and arbitrator fees" unless the arbitrator determines that
      the claim "is frivolous or brought for an improper purpose (as measured by the standards
14    set forth in Federal Rule of Civil Procedure 11(b))";[2]

15  - **$7,500 minimum award:**  If the arbitrator issues an award in favor of the customer that
16    is greater than "[ATTM's] last written settlement offer before an arbitrator was selected"
      but less than $7,500, ATTM will pay the customer $7,500 rather than the smaller arbitral
17    award;[3]

18  - **Double attorneys' fees:**  If the arbitrator awards the customer more than ATTM's last
19    written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any,
      twice the amount of attorneys' fees, and reimburse any expenses, that [the customer's]
20    attorney reasonably accrues for investigating, preparing, and pursuing [the customer's]
      claim in arbitration";[4]

21  _____

22  [2]     In the event that an arbitrator concludes that a consumer's claim is frivolous, the AAA's
    consumer arbitration rules would cap a consumer's arbitration costs at $125. *See* Berinhout
23  Decl. Exs. 6, 7 (AAA, Commercial Dispute Resolution Procedures and the Supplementary
    Procedures for Consumer Related Disputes ("*AAA Consumer Procedures*") § C-8).

24  [3]     The amount of the minimum payment varies from state to state because it is tied to the
    jurisdictional maximum of the customer's local small claims court. *See* Berinhout Decl. Ex. 2 at
25  4. In California, the jurisdictional limit for small claims court is $7,500. *See* Cal. Code Civ.
    Proc. § 116.221.

26  [4]     This attorney premium "supplements any right to attorneys' fees and expenses [that the
27  customer] may have under applicable law." Berinhout Decl. Ex. 2 at 5. In other words, even if
    (cont'd)

28  _____
                                       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                                       DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
                                       CASE NO. C 07-3407

                                       - 4 -

- **Small claims court option:**  Either party may bring a claim in small claims court;

- **Geographic proximity:**  Arbitration will take place "in the county * * * of [the customer's] billing address";

- **No confidentiality requirement:**  There is no requirement that arbitration be kept confidential;

- **Punitive damages available:**  There is no limitation on the availability of punitive damages;

- **AAA consumer procedures:**  Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes; and

- **Choice of in-person, telephonic, or no hearing**:  For claims of $10,000 or less, customers like Pishvaee have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[5]

*Id.* Ex. 2.

**C.     Dispute Resolution Under ATTM's Arbitration Provision Is Convenient For ATTM's Customers.**

In addition, ATTM has tailored other aspects of the dispute-resolution process to ensure its effectiveness for consumers.  Customers can obtain redress informally without the need for arbitration by contacting ATTM's customer care department by phone or by e-mail.  *See* Berinhout Decl. ¶ 15.  This process works:  In September 2007 (the most recent month for which data are available), ATTM's customer service representatives dispensed over $119 million in credits for customer concerns and complaints.  *Id.* ¶ 16.  Over the preceding 12 months, ATTM representatives dispensed over $1 billion in credits.  *Id.*  And the vast majority of billing problems, including claims by customers that unauthorized or inaccurate charges have appeared

---

an arbitrator were to award a customer less than ATTM's last settlement offer, the customer would be entitled to an award of attorneys' fees to the same extent as if his or her claim had been brought in court.

[5]     Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less.  *See* Berinhout Decl. Exs. 6, 7 (*AAA Consumer Procedures* §§ C-5, C-6).  For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it.  *See id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 5 -

on a bill, are quickly resolved by ATTM's customer care department either by explaining the nature of the charges to the satisfaction of the customer or by eliminating the charges from the bill. *Id.* ¶ 15.

If a customer is unsatisfied with the resolution offered by the customer care department, he or she can take the next step—as required by ATTM's arbitration provision—of providing ATTM with notice of the dispute. Berinhout Decl. ¶ 18. That is as simple as sending a letter to ATTM or filling out and mailing a one-page Notice of Dispute form that ATTM has posted on its website (at http://www.att.com/arbtration-forms). *Id.* ¶ 15 & Ex. 8.

ATTM generally responds to a dispute notice with a written settlement offer. Berinhout Decl. ¶ 20. If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process. *Id.* Ex. 2 at 2. To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM. Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org/) or use the simplified form that ATTM has posted on its own website (at http://www.att.com/arbitration-forms). *See id.* ¶ 13 & Exs. 5, 5. To further assist its customers, ATTM has posted on its website a layperson's guide on how to arbitrate a claim. *Id.* ¶ 12 & Ex. 3 (http://www.att.com/arbitration-information).

Not surprisingly, many ATTM customers have found individual arbitration to be a viable dispute resolution mechanism: From January 1, 2007 through October 31, 2007, ATTM received over 500 notices of disputes or demands for arbitration under ATTM's provision. Berinhout Decl. ¶ 19.[6]

**D.    Pishvaee Files This Putative Class Action Lawsuit Notwithstanding His Agreement To Arbitrate.**

Despite having agreed to arbitrate all disputes against ATTM (or to bring them in small claims court), Pishvaee filed this putative class action, naming Verisign, Inc., m-Qube, Inc.

---

[6]    In addition, as noted above, ATTM's arbitration provision gives customers the option of filing claims in small claims court. ATTM responded to almost 850 such claims in 2005 and 2006. Berinhout Decl. ¶ 21.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 6 -

1  (collectively hereinafter "m-Qube"[7]), and ATTM as defendants.  Pishvaee alleges that ATTM

2  and m-Qube caused him to be improperly billed for wireless content services that he did not

3  order.  *See* Compl. ¶ 1.  He claims that ATTM and m-Qube's conduct violates the common law

4  of unjust enrichment; California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code

5  §§ 1750 *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et*

6  *seq.*, and false advertising law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (collectively "UCL").

7  *See* Compl. ¶ 2.  Against ATTM only, Pishvaee alleges violations of both section 201 of the

8  Federal Communications Act, 47 U.S.C. §§ 151 *et seq.*, and section 2890 of the California Public

9  Utilities Code.  *See* Compl. ¶¶ 2, 59-63, 64-74.  Pishvaee seeks to represent a class consisting of

10  "all wireless telephone subscribers in California and the nation who were billed by Defendants

11  m-Qube and [ATTM] for products or services not authorized by the existing owner of the

12  telephone number."  *Id.* ¶ 18.  He seeks damages, injunctive and declaratory relief, costs, and

13  attorneys' fees.  *Id.* ¶¶ 3, 18; Prayer for Relief.

14  After receiving the complaint, ATTM sent Pishvaee's counsel a letter advising him of the

15  parties' agreement to arbitrate and requesting that Pishvaee dismiss his complaint and pursue his

16  claims against ATTM either through arbitration or in small claims court.  *See* Declaration of

17  Michael J. Stortz ¶¶ 2-3 & Ex. 1.  Pishvaee's counsel rejected this request.  *See id.* ¶¶ 4-5 & Ex.

18  2.

19  **ARGUMENT**

20  **I.    THE FAA MANDATES ENFORCEMENT OF PISHVAEE'S CONTRACTUAL
        AGREEMENT TO ARBITRATE.**

21

22  The FAA mandates that written agreements to arbitrate disputes "shall be valid,

23  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

24  revocation of any contract."  9 U.S.C.  § 2.  Congress enacted the FAA to "reverse the

25  longstanding judicial hostility to arbitration agreements[,] * * * to place [these] agreements on

---

[7]  Pishvaee alleges that m-Qube, Inc. is a "mobile channel enabler that helps companies
26  develop, deliver, and bill for mobile content, messaging and applications" and that m-Qube is a
   subsidiary of VeriSign, Inc.  Compl. ¶¶ 5-6.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 7 -

1    the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring

2    arbitration agreements." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting

3    *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991)).  As the Supreme Court has

4    explained, "questions of arbitrability must be addressed with a healthy regard for [this] federal

5    policy favoring arbitrations."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

6    1, 24-25 (1983).

7         An arbitration agreement must meet two basic conditions for the FAA to apply:  (1) the

8    agreement must be "written"; and (2) it must be in a contract "evidencing a transaction involving

9    commerce."  9 U.S.C. § 2.  Both criteria are met here:  ATTM's arbitration provision is in

10   writing (*see* pages 2-5, *supra*), and the agreement involves commerce, as "[i]t is well-established

11   that telephones, even when used intrastate, are instrumentalities of interstate commerce."  *United*

12   *States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004); *accord United States v. Weathers*, 169 F.3d

13   336, 341 (6th Cir. 1999).

14        There also can be no question that Pishvaee's claims fall within the scope of the

15   arbitration provision, which applies to "all disputes and claims between [the parties] * * *."

16   When, as here, an arbitration provision is governed by the FAA and the plaintiff's claims fall

17   within the scope of that provision, the duty of the district court is clear:  It must compel

18   arbitration.  *See* 9 U.S.C. § 4.

19
20   **II.   ATTM'S ARBITRATION PROVISION IS NOT UNCONSCIONABLE UNDER
        CALIFORNIA LAW.**

21        We anticipate that Pishvaee will argue that his agreement to arbitrate is unconscionable

22   under California law.  Although some courts have refused to enforce ***previous*** ATTM arbitration

23   provisions, no California court has considered the enforceability of—much less invalidated—the

24   recently revised ATTM arbitration provision at issue in this case.

25        Under California law, a party opposing enforcement of a contractual provision on

26   grounds of unconscionability must prove both procedural ***and*** substantive unconscionability.

27   *See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000).

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 8 -

Procedural unconscionability involves "oppression" or "surprise" in the making of the agreement (*id.*), while substantive unconscionability focuses on whether the contractual term in question is so "overly harsh" or "one-sided" (*id.*) as to "shock the conscience." *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 649–50 (Ct. App. 2007); *Aron v. U-Haul Co.*, 49 Cal. Rptr. 3d 555, 564 (Ct. App. 2006). Put another way, the term must be one that "***no man in his senses, and not under delusion,*** would make on the one hand, and [that] no honest and fair man would accept on the other." *Herbert v. Lankershim*, 71 P.2d 220, 257 (Cal. 1937) (en banc) (emphasis added; internal quotation marks omitted) (quoting *Odell v. Moss*, 62 P. 555, 557 (Cal. 1900) (per curiam) (quoting in turn 1 J. Story, COMMENTARIES ON EQUITY JURISPRUDENCE § 244 (14th ed. 1918)); *see also Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 27 Cal. Rptr. 2d 396, 402 (Ct. App. 1994).

In performing the unconscionability inquiry, California courts employ a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 690 (internal quotation marks omitted). In other words, if "the procedural unconscionability, although extant, [is] not great," the party attacking the term must prove "a greater degree of substantive unfairness." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 656–57 (Ct. App. 2001). Under California's sliding-scale approach, ATTM's arbitration provision is fully enforceable.

## A.  Pishvaee Can Establish At Most Only A Modest Degree Of Procedural Unconscionability.

We acknowledge that the Ninth Circuit held in *Shroyer* that "a contract may be procedurally unconscionable under California law when the party with substantially greater bargaining power presents a 'take-it-or-leave-it' contract to a customer—even if the customer has a meaningful choice as to service providers." *Shroyer*, 498 F.3d at 985 (internal quotation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 9 -

1    marks omitted).[8]  As the California Court of Appeal has made clear, however, the non-negotiable

2    nature of an agreement suffices only to establish "a minimal degree of procedural

3    unconscionability."  *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 356 (Ct. App. 2007).

4    Pishvaee cannot establish any other measure of oppression.   A cell phone plainly is a

5    "nonessential recreational" good, and Pishvaee "always ha[d] the option of simply forgoing"

6    wireless service.  *Belton*, 60 Cal. Rptr. 3d at 650 (holding that cable music service is non-

7    essential); *see also Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1202 (C.D. Cal. 2006)

8    (personal computers are non-essential);[9] *cf. Riensche v. Cingular Wireless LLC*, No. C06-13252,

---

9    [8]     For purposes of preserving this issue for possible Supreme Court review, we submit that

10    the Ninth Circuit erred in "follow[ing] the [California] courts that reject the notion that the
      existence of 'marketplace alternatives' bars a finding of procedural unconscionability," and

11    declining to follow the conflicting line of California cases that have held that there can be no
      procedural unconscionability when the customer has meaningful alternatives to contracting with

12    the defendant.  *See Shroyer*, 498 F.3d at 985.  The two competing lines of cases reveal an
      unmistakable pattern.  The state-court decisions that find non-negotiable form contracts to be per

13    se procedurally unconscionable regardless of the availability of market alternatives ***all involve
      arbitration provisions***.  *See Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 582–86 (Ct.

14    App. 2007); *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Ct. App. 2002); *Villa Milano
      Homeowners Ass'n v. Il Davorge*, 102 Cal. Rptr. 2d 1, 5–6 (Ct. App. 2000).  In contrast, the

15    state-court cases that reject the argument that form contracts are procedurally unconscionable
      when meaningful substitutes are available ***all involve other types of contractual provisions***.  *See

16    Belton*, 60 Cal. Rptr. 3d at 650 (requirement that cable music subscribers receive basic cable

17    television); *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Ct. App. 2006) (declared-value
      insurance for package shipping); *Aron*, 49 Cal. Rptr. 3d at 564 (rental truck refueling policy);

18    *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (Ct. App. 2005) (termination
      fee); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789, 795 (Ct. App. 1989)

19    (termination and annual fee).   The conflict thus hinges entirely on whether an arbitration

20    provision is at issue.  *See generally* Stephen A. Broome, *An Unconscionable Application of the
      Unconscionability Doctrine: How the California Courts Are Circumventing the Federal

21    Arbitration Act*, 3 HASTINGS BUS. L.J. 39, 60–67 (2006) (explaining the de facto disparate
      treatment of arbitration provisions under California's procedural-unconscionability doctrine).

22    Because the FAA forbids California from applying a different standard of procedural
      unconscionability to arbitration provisions than it applies to other provisions, the Ninth Circuit

23    erred in adopting California's arbitration-specific rule.

      [9]     The California Court of Appeal has reached this same conclusion about the purchase of a

24    home—a far weightier matter than initiating cell phone service.  As that court explained, the
      purchase of a home "does not involve the same concerns [another] court had about hospital

25    admissions * * *—while home buying may be stressful, it is not a traumatic experience like
      being admitted to the hospital, and no one is directing a home buyer to purchase a particular

26    home like a doctor directs a patient to a particular hospital."  *Trend Homes, Inc. v. Super. Ct.*, 32

27    Cal. Rptr. 3d 411, 418 (Ct. App. 2005) (citing *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775,

                                                                                                    (cont'd)

28    _____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 10 -

1    2007 WL 3407137, at *8 (W.D. Wash. Nov. 9, 2007) ("telephone service, particularly cellular

2    service, is not a necessity").

3         Nor can Pishvaee claim that he was "surprised" by his arbitration agreement, as a recent

4    decision of the California Court of Appeal illustrates.  In *Gatton*, a group of wireless customers

5    challenged on unconscionability grounds the class waiver in T-Mobile's service agreement.  The

6    court concluded that "plaintiffs ha[d] not shown surprise" because "[t]he arbitration provision

7    was not disguised or hidden, and T-Mobile made affirmative efforts to bring the provision to the

8    attention of its customers."  61 Cal. Rptr. 3d at 352.  Specifically, (i) the contract both referred to

9    the terms and conditions contained in a separate Welcome Guide and expressly mentioned the

10   arbitration provision; (ii) the terms and conditions began by admonishing customers to read the

11   terms and informed them that they had to agree with the terms in order to use the service; and

12   (iii) the box containing the phone was sealed with a sticker that adverted to the terms and

13   conditions, including the arbitration provision.  *Id.* at 347.

14        Similarly, ATTM has made no attempt to "disguise" or "hide" the arbitration provision in

15   Pishvaee's service agreements.  To the contrary, ATTM has repeatedly brought it to his

16   attention.  When Pishvaee activated his cell phone service in 2002, he was required to initial his

17   contract to acknowledge specifically that the Wireless Service Agreement incorporated the then-

18   current Terms and Conditions and that the Terms and Conditions had been provided to him.  *See*

19   Berinhout Decl. ¶¶ 28-29 & Ex. 9.  Pishvaee also signed the Agreement directly under his

20   acknowledgment that he had "READ AND UNDERSTOOD * * * THE TERMS AND

21   CONDITIONS."  *See id.* (capitalization in original).  The first paragraph of the Terms and

22   Conditions contained a prominent notice that "THIS AGREEMENT CONTAINS

23   MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE

24   REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE" and directed him to the

25   section entitled "ARBITRATION" for details.  *Id.* Ex. 10 (capitalization in original).  The

26   _____

27   786 (Ct. App. 1976)).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 11 -

1  arbitration provision itself, which began with an exhortation to Pishvaee to "[p]lease read this

2  paragraph carefully," further notified him that the agreement did not permit class arbitration.  *See*

3  *id.*

4        Similarly, the Terms and Conditions of Pishvaee's April 2006 WSA informed him in the

5  first paragraph that **"[t]his Agreement requires the use of arbitration to resolve disputes and**

6  **also limits the remedies available to you in the event of a dispute**."  Berinhout Decl. Ex. 11

7  (boldface emphasis in original).  In addition, when ATTM mailed Pishvaee the newly-revised

8  arbitration provision in December 2006, the notice stated:  "**Please read this carefully.    It**

9  **affects your rights**."  *Id.* Ex. 1 (boldface emphasis in original).  And when Pishvaee activated

10  his iPhone, he was required to click on a box next to the statement: "I have read and agree to the

11  AT&T Service Agreement."  *See id.* ¶ 34 & Ex. 16.  The text of the service agreement, including

12  the Terms of Service, was displayed in a text box immediately above the statement Pishvaee

13  checked (*id.*), and the first sentence of the agreement's text plainly advised him that by checking

14  the box he would be "bound" to "the Terms of Service, including the *binding arbitration*

15  *clause*."  *Id.* (emphasis added).  In addition, ATTM mailed Pishvaee the applicable Terms of

16  Service booklet upon activation.  *Id.* ¶ 35.  The top of the first page of the Terms of Service

17  booklet prominently states: "**This Agreement requires the use of arbitration to resolve**

18  **disputes** * * *."  *See id.* Ex. 17 (emphasis in original).  In light of these repeated and prominent

19  announcements, Pishvaee simply cannot claim that he was "surprised" by the agreement to

20  arbitrate.

21        In short, the fact that ATTM's arbitration provision is contained in a form contract

22  implicates at most only a minimal quantum of procedural unconscionability.  Accordingly, under

23  California's sliding-scale approach Pishvaee must "make a *strong showing* of substantive

24  unconscionability to render [his] arbitration provision unenforceable."  *Gatton*, 61 Cal. Rptr. 3d

25  at 356 (emphasis added).  As we next explain, Pishvaee cannot demonstrate that ATTM's

26  arbitration provision is substantively unconscionable at all, much less make the requisite "strong

27  showing" of substantive unfairness.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

1

2

**B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable At All, Much Less "Great[ly]" So.**

3

4    In *Discover Bank*, the California Supreme Court held that a class-arbitration prohibition

5    in a credit-card issuer's arbitration provision was substantively unconscionable because it

6    effectively "insulate[d]" the company from liability for the $29 claims at issue in that case.  113

7    P.3d at 1109.  The court made clear, however, that it was not holding "that *all* class action

8    waivers are necessarily unconscionable." *Id.* at 1110 (emphasis added).  In particular, whether a

9    class-action prohibition is substantively unconscionable turns on whether the plaintiff may

10   feasibly vindicate "small" claims without using the class-action mechanism and, conversely,

11   whether the prohibition threatens to insulate the company from liability for cheating its

12   customers. *Id.*

13   Applying *Discover Bank*, the Ninth Circuit recently held that the class-arbitration

14   prohibition in an earlier version of ATTM's arbitration provision was substantively

15   unconscionable. *Shroyer*, 498 F.3d at 986–87.  That arbitration provision specified that ATTM

16   (then known as Cingular Wireless) would pay the full cost of arbitration and, in addition, would

17   pay the plaintiff's attorneys' fees if the arbitrator awarded the plaintiff the amount of his or her

18   demand or more. *Id.* at 986.  The Ninth Circuit found ATTM's "attempt to distinguish *Discover

19   Bank* based on the availability of attorneys' fees and arbitration costs [to be] without merit." *Id*.

20   According to the Ninth Circuit, "the [California Supreme Court] was concerned that when the

21   potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration

22   or litigation, which greatly reduces the aggregate liability a company faces when it has exacted

23   small sums from millions of consumers.  It did not suggest that a [class action] waiver is

24   unconscionable only when or because a plaintiff in arbitration may experience a net loss

25   (including attorneys' fees and costs)." *Id*. (emphasis in original; citation omitted).

26   *Shroyer* suggests that the class-arbitration prohibition in ATTM's ***revised*** arbitration

27   provision is not unconscionable under *Discover Bank*.  As noted above, ATTM has built the

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 13 -

1   necessary "individual gain" into its arbitration provision by providing that any California

2   customer who obtains an arbitral award in excess of ATTM's last settlement offer will receive a

3   minimum of **$7,500**, while his or her counsel will receive ***double*** attorneys' fees.  *See* page 4 &

4   n. 4, *supra*.  These amounts far exceed the level of damages that Congress and the California

5   Legislature have deemed sufficient to encourage individuals and their counsel to pursue statutory

6   claims.  *See* Nagareda Decl. ¶ 14 (citing $500 statutory damages provision in Telephone

7   Consumer Protection Act and $1,000 statutory damages provision in Cable Act); 15 U.S.C.

8   § 1681n (statutory damages of between $100 and $1,000 available under Fair Credit Reporting

9   Act); Cal. Civ. Code § 54.3(a) ($1,000 statutory damages under Disabled Persons Act).[10]  The

10  premiums available under ATTM's arbitration procedures also substantially exceed the typical

11  incentive payments awarded to class representatives as part of court-approved class settlement

12  agreements.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action*

13  *Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1333 & tbl. 5 (2006) (finding median

14  incentive award for class representatives in consumer and consumer credit cases to be $2,089

15  and $1,045 respectively).

16         In light of the opportunities for "individual gain" that are built into ATTM's arbitration

17  provision, the concerns that caused the California Supreme Court and the Ninth Circuit to

18  invalidate the class-arbitration prohibitions in *Discover Bank* and *Shroyer* are inapplicable here.

19  ATTM has not immunized itself from liability because ATTM's arbitration provision, and the

20  premiums that are available under it, serve as affirmative inducements for customers to pursue

21  their claims in arbitration and for lawyers to represent such customers.[11]   The premium

---

22  [10]     These legislative determinations of the amount needed to encourage vindication of

23  statutory rights are entitled to great (if not dispositive) weight.  *See Santisas v. Goodin*, 951 P.2d
    399, 413 (Cal. 1998) (noting court's "reluctan[ce] to declare contractual provisions void or

24  unenforceable on public policy grounds without firm legislative guidance"); *People v. Mun. Ct.*,
    574 P.2d 425, 427 (Cal. 1978) (the courts' "common law powers * * * should never be exercised

25  in such a manner as to * * * frustrate legitimate legislative policy") (internal quotation marks
    omitted).

26  [11]     It bears noting in this regard a recent study's conclusion that the de facto monetary

27  threshold for obtaining the assistance of an attorney is lower in arbitration than in court.  *See*
                                                                                            (cont'd)

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 14 -

1    provisions also encourage ATTM to try to resolve disputes quickly—*i.e.*, before arbitration—by

2    making settlement offers that satisfy its customers.  If it fails to resolve a customer's claims,

3    ATTM runs the risk of paying substantial premiums to the customer and his or her counsel, as

4    well as the full costs of arbitration, which can run into the thousands of dollars.[12]

5        In short, ATTM's arbitration provision does not operate as an exculpatory clause.  As

6    Professor Nagareda explains, although arbitration provisions containing class-arbitration

7    prohibitions may be substantively unconscionable when their enforcement would result in "the

8    effective elimination of consumers' private rights of action" (Nagareda Decl. ¶ 7), ***ATTM's***

9    arbitration provision is not of that ilk.  It "reduces dramatically the cost barriers to the bringing of

10   individual consumer claims, is likely to facilitate the development of a market for fair settlement

11   of such claims, and provides financial incentives for consumers (and their attorneys, if any) to

12   pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to

13   settle their dispute."  *Id.* ¶ 11.  It therefore is not substantively unconscionable at all.  At

14   minimum, taking into account the (at most) modest level of procedural unconscionability, this

15   unprecedentedly pro-consumer arbitration provision does not rise sufficiently high on the

16   spectrum of substantive unconscionability as to warrant refusing to enforce it.  *See Gatton*, 61

17   Cal. Rptr. 3d at 356 (requiring "strong showing" of substantive unconscionability when only

18   basis for finding procedural unconscionability is fact that contract is non-negotiable); *Marin*

19   *Storage*, 107 Cal. Rptr. 2d at 656-57 (when procedural unconscionability, "although extant, [is]

20   not great," party seeking to evade contractual obligation must prove "a greater degree of

21   substantive unfairness").[13]

22   Lewis L. Maltby, *Employment Arbitration and Workplace Justice*, 38 U.S.F. L. Rev. 105, 115–17 (2003).

23   [12]    The bare minimum in arbitration costs that ATTM must pay if a customer selects an in-person hearing is $1,700:  $750 in administrative fees, a $200 case service fee, and $750 in

24   arbitrator fees.  *See* Berinhout Decl. Ex. 6, 7 (*AAA Consumer Procedures* § C-8).

25   [13]    Any attempt by plaintiffs to invoke the California Supreme Court's recent decision in

26   *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007), would be misguided.  *Gentry* involved the "statutory right to receive overtime pay," a right which the court held is expressly "unwaivable."

27   *See id.* at 563.  By contrast, there is no indication that the UCL, false advertising law, or Section

       (cont'd)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 15 -

1

2

### III.    THE FAA WOULD PREEMPT ANY HOLDING THAT ATTM'S ARBITRATION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW.

3        If, notwithstanding the opportunities for "individual gain" that ATTM has built into its

4    arbitration provision, this Court were to conclude that the class-arbitration prohibition is

5    unconscionable under California law, so construed California law would be preempted by the

6    FAA.  We acknowledge that in *Shroyer* the Ninth Circuit rejected ATTM's express and conflict

7    preemption arguments.  *See Shroyer*, 498 F.3d at 987–93.  Although the Ninth Circuit's holding

8    on conflict preemption is binding on this Court,[14] for reasons we discuss below (at pages 17-18)

9    its holding on express preemption is not.

10        Section 2 of the FAA specifies that arbitration provisions "shall be valid, irrevocable, and

11    enforceable, save upon such grounds as exist at law or in equity for the revocation of ***any***

12    contract." 9 U.S.C. § 2 (emphasis added).  The Ninth Circuit has recognized that this means that

13    a law that applies only to "a limited set of transactions * * * is not a law of 'general

14    applicability'" and therefore is preempted by Section 2.  *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th

15    Cir. 2003).  Moreover, "[e]ven when using doctrines of general applicability, state courts are not

16    _____

17    2890 of the Public Utilities Code confer any expressly unwaivable statutory right on Pishvaee.
Although the CLRA is non-waivable, the Ninth Circuit has held that, because the CLRA "applies

18    to such a limited set of transactions, * * * it is not a law of general applicability," and thus its
anti-waiver provision is preempted by the FAA.  *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir.

19    2003) (internal quotation marks omitted); *see also Provencher v. Dell, Inc.*, 409 F. Supp. 2d
1196, 1206 n.13 (C.D. Cal. 2006).  Even if there were some basis for disregarding *Ting*, given

20    ATTM's exceptionally pro-consumer arbitration procedures discussed above, plaintiffs cannot
show that class arbitration would "be a ***significantly*** more effective practical means of

21    vindicating [plaintiffs' rights] than individual litigation or arbitration" and that "disallowance of
the class action [would] likely lead to a less comprehensive enforcement of [the applicable]

22    laws" (*Gentry*, 165 P.3d at 568 (emphasis added)).  Accordingly, the class-arbitration prohibition
***in this case*** is fully enforceable under the standard articulated in *Gentry*.

23    [14]    We disagree with that holding and preserve for possible further review our contention

24    that the use of unconscionability law to bar businesses from requiring that arbitration be
conducted on an individual basis conflicts with the objectives of the FAA and is, for that reason,

25    preempted.  *See generally* Christopher R. Drahozal, *Arbitration Costs and Contingent Fee
Contracts*, 59 Vand. L. Rev. 729, 776 (2006) ("[S]tate law challenges to arbitration agreements

26    cannot be based on unique characteristics of the arbitration process, such as the lack of class
relief.").

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 16 -

1    permitted to employ those general doctrines in ways that subject arbitration clauses to special

2    scrutiny." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir.

3    2004). That would be precisely the situation if this Court were to hold that the class-arbitration

4    prohibition in ATTM's arbitration provision is unconscionable under *Discover Bank* and *Shroyer*

5    notwithstanding the ample opportunities for "individual gain" that ATTM built into the

6    arbitration provision.

7            Under California's generally applicable unconscionability principles, a contractual term

8    is substantively unconscionable only if it so "shock[s] the conscience" (*Belton*, 60 Cal. Rptr. 3d

9    at 651) that a person would have to be "under delusion" (*Herbert*, 71 P.2d at 257) to agree to it.

10   The Ninth Circuit held in *Shroyer* that "[t]he rule announced in *Discover Bank* is simply a

11   refinement of the unconscionability analysis applicable to contracts generally in California." 498

12   F.3d at 987. Accepting *arguendo* that the Ninth Circuit's decision striking down ATTM's

13   superseded arbitration provision entailed a mere "refinement" of California's generally

14   applicable "shock the conscience" standard, the same surely could not be said of any holding that

15   ATTM's ***revised*** arbitration provision, with its extraordinary opportunities for "individual gain,"

16   is unenforceably unconscionable. To declare this exceptionally pro-consumer arbitration

17   provision unconscionable would require a total distortion of what it means to "shock the

18   conscience"—one that would enable courts to justify striking down virtually any contractual

19   provision that they think is unfair to one of the contracting parties. That is manifestly not

20   California law—at least not with respect to any contractual provisions other than ones agreeing

21   to resolve disputes on an individual basis. As the California Court of Appeal has put it, "with a

22   concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the

23   paternalistic role of intervening to change contractual terms that the parties have agreed to

24   merely because the court believes the terms are unreasonable." *Koehl v. Verio, Inc.*, 48 Cal.

25   Rptr. 3d 749, 769 (Ct. App. 2006) (internal quotation marks omitted) (quoting *Am. Software, Inc.*

26   *v. Ali*, 54 Cal. Rptr. 2d 477, 480 (Ct. App. 1996)).

27            In short, as the Seventh Circuit has pointed out, "[t]he cry of 'unconscionable!' just

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-3407

- 17 -

1  repackages the tired assertion that arbitration should be disparaged as second-class adjudication.

2  It is precisely to still such cries that the Federal Arbitration Act equates arbitration with other

3  contractual terms." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

4  Because it would take far more than a mere "refinement" of California's "shock the conscience"

5  standard to justify invalidating the class-arbitration prohibition in ATTM's path-breaking

6  arbitration provision, the Court should hold that Section 2 of the FAA precludes interpreting

7  *Discover Bank* and *Shroyer* to invalidate the requirement of individual dispute resolution in

8  ATTM's arbitration provision.

9
                                    **CONCLUSION**
10

11      ATTM's motion to compel arbitration should be granted, and Pishvaee's claims against

12  ATTM should be dismissed.[15]

13

    DATED:  November 20, 2007            MAYER BROWN LLP
14

15                                        By:  /s/ Donald M. Falk
                                              Donald M. Falk
16

17                                        *Attorneys for Defendant AT&T MOBILITY LLC*

18

19  Of Counsel:

20  Evan M. Tager
    Archis A. Parasharami
21  MAYER BROWN LLP
    1909 K Street, N.W.
22  Washington, D.C. 20006-1101
    Telephone: (202) 263-3000
23  Facsimile:  (202) 263-3300

24

25  [15]    District courts may dismiss claims that are subject to arbitration.  *See Thinket Ink Info.*
    *Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Sparling v. Hoffman*
26  *Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (Section 3 of the FAA "did not limit the [district]
    court's authority to grant a dismissal").
27

28
                      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                      DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS
                      CASE NO. C 07-3407

                                    - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

This certifies that on November 20, 2007, I electronically filed the within and foregoing:

MOTION OF AT&T MOBILITY LLC TO COMPEL
ARBITRATION AND TO DISMISS LITIGATION
PURSUANT TO THE FEDERAL ARBITRATION ACT

with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:


William M. Audet
James Cooper
Ronald L. Johnston
Adel A. Nadji
Laura Riposa Van Druff
Angel Lisa Tang


_____/s/ Donald M. Falk_____