Donald M. Falk (State Bar No. 150256)
dfalk@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Michael J. Stortz (State Bar No. 139386)
michael.stortz@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendant
AT&T MOBILITY LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| BABAK PISHVAEE, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>VERISIGN, INC., a California corporation, M-QUBE, INC., a Delaware corporation, and AT&T MOBILITY LLC, formerly known as Cingular Wireless LLC, a Delaware corporation,<br><br>        Defendants. | Case No.: C-07-3407<br><br>**DECLARATION OF NEAL S. BERINHOUT IN SUPPORT OF DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS LITIGATION** |

I, Neal S. Berinhout, hereby declare as follows:

1.     I am employed by AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless LLC ("Cingular")) as Associate General Counsel — Litigation.  In that position, I have been involved with reviewing the contracts used by ATTM for the provision of wireless services, as well as the procedures for mailing amendments to all subscriber agreements, including

1  amendments to ATTM's arbitration provisions. I am familiar with ATTM's procedures for

2  archiving, retaining, and retrieving true and correct copies of contracts between ATTM and its

3  customers.

4      2.      The following facts are of my own personal knowledge, and if called as a witness

5  I could and would testify competently as to their truth.

6                                **Background**

7      3.      Cingular was formed in 2000 as a joint venture owned 60% by SBC

8  Communications, Inc. and 40% by BellSouth Corporation.

9      4.      In November 2005, SBC Communications, Inc. completed its merger with AT&T

10  Corporation, forming AT&T Inc. AT&T Inc. completed its acquisition of BellSouth Corporation

11  by December 29, 2006, thereby consolidating ownership of Cingular.

12      5.      Cingular Wireless was renamed AT&T Mobility on January 8, 2007.

13                            **Arbitration Provision**

14      6.      Since ATTM began operating in October 2000, ATTM has always included an

15  arbitration provision in the terms and conditions of service that govern its subscriber agreements.

16      7.      In 2006, ATTM revised its arbitration provision to make arbitration more

17  convenient and less expensive for its customers.

18      8.      In creating the 2006 arbitration provision, ATTM consulted with experts,

19  including but not limited to Professor Richard A. Nagareda, a professor at Vanderbilt University

20  Law School whose scholarship focuses on aggregate dispute resolution. ATTM accommodated

21  their comments when finalizing the 2006 arbitration provision.

22      9.      ATTM sent a copy of the 2006 arbitration provision to its current subscribers,

23  including plaintiff Babak Pishvaee, at their billing addresses via first class mail in December

24  2006. Pursuant to the "change in terms" provisions in ATTM's wireless service agreements

25  ("WSA") — including Pishvaee's WSAs — that revised arbitration provision took effect upon

26  receipt. In addition, as of March 2007, new ATTM wireless service agreements —including the

27  new service agreement Pishvaee entered in September 2007 — contain the 2006 arbitration

28

                                    2

                    Declaration of Neal S. Berinhout in Support of Defendant ATTM's
                    Motion to Compel Arbitration and Dismiss Complaint

1 provision.  A true and correct copy of the Notice of Improved Arbitration Clause mailed to

2 subscribers is attached as Exhibit 1.

3   10. ATTM also included a legend on its subscribers' December 2006 and January

4 through March 2007 bills to remind them that the arbitration provision in their contracts had

5 been changed and inviting them to view information about arbitration on ATTM's web site (at

6 http://www.cingular.com/disputeresolution or, later, http://www.att.com/disputeresolution).

7   11. In addition, in January 2007, ATTM modified the language in the revised

8 arbitration provision to make it clear that customers who receive more than the amount of

9 ATTM's last settlement offer are entitled to reimbursement of the expenses incurred in the

10 arbitration in addition to double attorneys' fees.  That clarification has been made to the version

11 of ATTM's provision on ATTM's web site and is included in new ATTM WSAs as of March

12 2007.  A printout of the version of ATTM's provision posted on ATTM's web site (at http://

13 www.att.com/disputeresolution) is attached as Exhibit 2.

14   12. The features of ATTM's new arbitration provision are explained on ATTM's web

15 site at http://www.att.com/disputeresolution and at http://www.att.com/arbitration-information.

16 (For the convenience of current and former customers, those web pages may also be accessed at

17 http://www.cingular.com/disputeresolution   and   http://www.cingular.com/arbitration-informa-

18 tion.) The webpage at http://www.att.com/arbitration-information provides information designed

19 to explain the arbitration process to non-lawyers.  A true and correct copy of that document is

20 attached as Exhibit 3.

21   13. Customers may download from ATTM's website all of the necessary paperwork

22 for initiating an arbitration under the 2006 provision.  Customers may either use the demand

23 form   available   on   the   American   Arbitration   Association's   ("AAA")   website   (at

24 http://www.adr.org)   or   the   simplified   form   provided   by   ATTM   on   its   website   (at

25 http://www.att.com/arbitration-forms).  True and correct copies of these forms are attached as

26 Exhibits 4 and 5.

27

28

3

14.    ATTM's 2006 arbitration provision provides that any arbitrations will be conducted under the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes of the AAA, as modified by the arbitration provision. True and correct copies of the current versions of the AAA Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes are attached as Exhibits 6 and 7.

15.    Many disputes between ATTM and its customers are resolved before a notice of dispute is ever sent to ATTM.  Customers frequently resolve their concerns by calling or e-mailing ATTM's customer care department, which is known at ATTM as the Office of the President.  The vast majority of billing problems, including claims by customers that unauthorized or inaccurate charges have appeared on a bill, are quickly resolved by the Office of the President either by explaining the nature of the charges to the satisfaction of the customer or by eliminating the charges from the bill.  I have instructed personnel in the Office of the President to contact the legal department (and me in particular) whenever they become aware of a pattern of similar complaints so that I can review the complaints and determine whether any changes to ATTM's practices are necessary.  A true and correct copy of the Notice of Dispute form provided by ATTM on its website (at http://www.att.com/arbitration-forms) is attached as Exhibit 8.

16.    One way to measure how successful ATTM's customer care representatives are at resolving customer concerns and complaints is to determine the dollar value of credits "manually added" to customer accounts in response to concerns and complaints.  For example, from October 2006 to September 2007 ATTM representatives have provided over $1 billion in manual credits in response to customer concerns and complaints.  In September 2007 alone, ATTM representatives provided over $119 million in credits.

17.    The cost of acquiring a new customer is quite high, averaging several hundred dollars.  This cost includes various marketing and administrative expenses and the cost of subsidizing the new customer's wireless phone.  In part because of the high cost of acquiring a

4

1  new customer, ATTM generally attempts to accommodate customers who have complaints in

2  order to retain them as customers.  One of the most important metrics by which ATTM and other

3  wireless carriers measure their success is customer "churn," which is the monthly rate at which

4  customers terminate their relationships with the carrier.    By reasonably accommodating

5  customers who have complaints, ATTM may reduce its churn.

6          18.    Under ATTM's 2006 arbitration provision (as well as under previous versions),

7  customers who seek to arbitrate their disputes are required to send ATTM a notice of their

8  dispute.

9          19.    Between January and October 2007, ATTM has received over 500 Notice of

10 Dispute and Arbitration Initiation forms from its customers.

11         20.    ATTM is often able to resolve customers' disputes to their satisfaction shortly

12 after receiving notice of the disputes, thus obviating the need for the customer to commence the

13 arbitration.  In fact, ATTM generally responds to a notice of dispute with a written settlement

14 offer.

15         21.    Under ATTM's 2006 arbitration provision (as well as under the preceding

16 version), subscribers have the option of bringing claims against ATTM in small claims court

17 rather than in arbitration.  In 2005 and 2006, about 850 such claims were brought against ATTM

18 nationwide.   The vast majority of small-claims-court actions against ATTM settled before

19 judgment.  While many of those claims either were settled or resulted in judgments for amounts

20 exceeding $1,000, many subscribers have successfully vindicated claims for small dollar

21 amounts.

22                        **Babak Pishvaee's Service Agreements**

23         22.    As a condition of obtaining wireless service from ATTM and activating wireless

24 phones for use with ATTM's network, customers must agree to a Wireless Service Agreement

25 ("WSA") that sets forth or incorporates by reference the terms and conditions of service.

26         23.    ATTM has revised the terms of its standard WSA from time to time.  When a

27 customer contracts to receive wireless service, he or she does so by accepting the then-current

28                                            5

1   version of the WSA.

2       24.    In the course of the activation process, or upon renewal of a contract, the

3   subscriber receives a copy of the Agreement just completed, the Terms of Service booklet (if

4   applicable), the rate plan, and the applicable feature brochures.

5       25.    In the regular and ordinary course of business, ATTM maintains records that

6   contain information relevant to its customers' accounts.

7       26.    After this litigation was commenced, ATTM employees who report to me

8   retrieved account records relating to the named plaintiff Babak Pishvaee.

9       27.    I can provide details of Pishvaee's account history based on my review of these

10  records.

11      28.    According to ATTM's records, Pishvaee originally subscribed to wireless service

12  from ATTM on or about November 11, 2002, when he activated service for one wireless phone

13  number.  A true and correct copy of Pishvaee's November 2002 WSA, with some information

14  redacted, is attached as Exhibit 9.

15      29.    Pishvaee's November 2002 WSA refers to and incorporates ATTM's Terms and

16  Conditions version number CW700572.  Pishvaee would have been provided with that Terms

17  and Conditions booklet at the time he received the WSA.  A true and correct copy of Terms and

18  Conditions booklet CW700572, which contains the terms of service that are part of Pishvaee's

19  WSA, is attached as Exhibit 10.

20      30.    According to ATTM's records, Pishvaee renewed his service with ATTM on

21  several occasions, including in April 2006.  Pishvaee would have been provided with the Terms

22  of Service booklet in effect on April 28, 2006, at the time he renewed his service.  A true and

23  correct copy of that Terms of Service booklet FMS TC T 0206 0088 E, which contains the terms

24  and conditions of Pishvaee's Agreement, is attached as Exhibit 11.

25      31.    Pishvaee received a copy of ATTM's revised 2006 arbitration provision as an

26  insert to his December 14, 2006 bill.  The first page of that bill also notified him that the

27  arbitration provision in his contract had been revised and directed him to Cingular's website

28

Declaration of Neal S. Berinhout in Support of Defendant ATTM's
Motion to Compel Arbitration and Dismiss Complaint

1 (http://www.cingular.com/disputeresolution) to view more information about arbitration. A true

2 and correct copy of the first page of Pishvaee's December 14, 2006 bill, with some information

3 redacted, is attached as Exhibit 12.

4      32.    The first pages of Pishvaee's January 14, 2007 bill, and the second to last pages of

5 his February 14, 2007 and March 14, 2007 bills, contained the same notification of the revised

6 arbitration provision that his December 2006 bill had contained. True and correct copies of the

7 first page of Pishvaee's January 2007 bill and the second to last pages of his February and March

8 2007 bills, with some information redacted, are attached as Exhibits 13, 14, and 15, respectively.

9      33.    Additionally, according to ATTM's records, Pishvaee activated an iPhone for use

10 on his ATTM account on or about September 11, 2007.

11     34.    Through the iPhone activation process, Pishvaee reaffirmed his agreement to

12 ATTM's recently-revised arbitration provision. Pishvaee, like all iPhone customers, activated

13 his iPhone for use with ATTM's network online, by using the iTunes program. In order to

14 complete the activation process, a customer must check a box that states: "I have read and agree

15 to the AT&T Service Agreement." The service agreement—including the Terms of Service—is

16 provided in a text box immediately above the box that the customer checks to acknowledge his

17 or her acceptance of the agreement. The first sentence of text plainly advised plaintiffs that, by

18 checking the box next to the acknowledgment below, they would be "bound" to "the Terms of

19 Service, including the binding arbitration clause." If the customer does not check the box

20 stating "I have read and agree to the AT&T Service Agreement," the customer is not permitted to

21 activate his or her iPhone for use with ATTM's network. A true and correct copy of screenshots

22 of the iTunes activation process is attached as Exhibit 16.

23     35.    After the customer has activated the iPhone, ATTM sends the customer a copy of

24 his or her agreement, which includes the rate plan terms that the customer has selected and

25 incorporates by reference the ATTM Terms of Service booklet then in effect. ATTM includes a

26 copy of the applicable Terms of Service booklet with the agreement; the booklet reproduces the

27 terms of service that the customer accepted when he or she activated the iPhone. A true and

28

7

Declaration of Neal S. Berinhout in Support of Defendant ATTM's
Motion to Compel Arbitration and Dismiss Complaint

1 | correct copy of that Terms of Service booklet FMS TC T 0307 0097, which contains the terms

2 | and conditions of Pishvaee's Agreement, is attached as Exhibit 17.

3 |   I declare under penalty of perjury that the foregoing is true and correct.  Executed on

4 | November 19, 2007.

5

6 | Neal S. Berinhout

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

Declaration of Neal S. Berinhout in Support of Defendant ATTM's
Motion to Compel Arbitration and Dismiss Complaint

# EXHIBIT 1

Notice of Improved Arbitration Clause



**DISPUTE RESOLUTION BY BINDING ARBITRATION**

**Please read this carefully. It affects your rights.**

**Summary:**
Most customer concerns can be resolved quickly and
to the customer's satisfaction by calling our Customer
Service Department at 1-800-331-0500. **In the unlikely
event that Cingular's Customer Service Department is
unable to resolve a complaint you may have to your
satisfaction (or if Cingular has not been able to resolve
a dispute it has with you after attempting to do so
informally), we each agree to resolve those disputes
through binding arbitration or small claims court
instead of in courts of general jurisdiction.** Arbitration
is more informal than a lawsuit in court. Arbitration
uses a neutral arbitrator instead of a judge or jury,
allows for more limited discovery than in court, and
is subject to very limited review by courts. Arbitrators
can award the same damages and relief that a court
can award. **Any arbitration under this Agreement
will take place on an individual basis; class
arbitrations and class actions are not permitted.**
Cingular will pay all costs of arbitration, no matter
who wins, so long as your claim is not frivolous.
Moreover, in arbitration you are entitled to recover
attorneys' fees from Cingular to at least the same
extent as you would be in court. In addition, under
certain circumstances (as explained below), Cingular
will pay you and your attorney a special premium if
the arbitrator awards you an amount that is greater
than what Cingular has offered you to settle the dispute.

1

**Arbitration Agreement:**

(1) Cingular and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

References to "Cingular," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and Cingular are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

2

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to Cingular should be addressed to: General Counsel, Cingular Wireless LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If Cingular and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by Cingular or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Cingular is entitled.

You may download or copy a form Notice and a form to initiate arbitration at: http://www.cingular.com/arbitration-forms

(3) After Cingular receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, Cingular will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA.

3

The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information, that is designed for non-lawyers, about the arbitration process at http://www.cingular.com/arbitration-information) All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless Cingular and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, Cingular will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse Cingular for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

4

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and

- greater than the value of Cingular's last written settlement offer made before an arbitrator was selected,

then Cingular will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address ("the premium") instead of the arbitrator's award; and

- pay your attorney, if any, twice the amount of attorneys' fees your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If Cingular did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys'

5

fees or costs. Although under some laws Cingular may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, Cingular agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND CINGULAR AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and Cingular agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if Cingular makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require Cingular to adhere to the language in this provision if a dispute between us arises.



8782▲

6

# EXHIBIT 2

### What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing?



**QUESTION:**

What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing?

**ANSWER:**

AT&T Mobility ("AT&T") (formerly Cingular Wireless) is committed to resolving all disputes in a fair, effective, and cost-efficient manner. Accordingly, every customer's Service Agreement provides for disputes to be resolved in binding arbitration or Small Claims Court. AT&T's arbitration provision, which is set forth verbatim below, has been designed to make arbitration as convenient and inexpensive for our customers as possible. Among other things, it specifies that AT&T will bear all of the costs of arbitration (unless an arbitrator determines that a customer's claims are frivolous), and that, under certain circumstances (explained in the arbitration provision), AT&T will pay a premium to you and your attorney if you receive an arbitration award greater than the value of AT&T's settlement offer. This right to attorney's fees supplements any right that you may have under applicable law (as explained in the provision).

As part of AT&T's commitment to the fair, effective, and cost-efficient resolution of all disputes, AT&T has made its current arbitration provision available to all current and former customers – including customers who were customers of Cingular Wireless, the former AT&T Wireless, BellSouth Mobility, Ameritech Mobile, Pacific Bell Wireless, SBMS, SNET Mobility, and SBC Wireless. AT&T will abide by the terms of its current arbitration provision in all instances. In particular, in those rare occasions when AT&T may have a claim against a current or former customer, AT&T will arbitrate that claim or bring it in small claims court, even if a predecessor company's arbitration provision entitles AT&T to pursue such claims in any court that has jurisdiction. Customers whose contracts include arbitration provisions that differ from this current arbitration provision may, of course, arbitrate pursuant to the terms of those contracts if they prefer to do so. Similarly, it you are a former customer whose contract did not include an arbitration provision, you may arbitrate any dispute you may have under the current arbitration provision.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**

**Please read this carefully. It affects your rights.**

**Summary:**

Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 800-331-0500.  **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction**. Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

**Arbitration Agreement:**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the

subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement. References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T Mobility LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled.

You may download or copy a form Notice and a form to initiate arbitration from here:  http://www.wireless.att.com/arbitration-forms.

(3) After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address.  (You may obtain information that is designed for non-lawyers, about the arbitration process at http://www.wireless.att.com/arbitration-information).  All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and greater than the value of AT&T's last written settlement offer made before an arbitrator was selected:

then AT&T will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims

court in the county of your billing address ("the premium") instead of the arbitrator's award; and
- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU **AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

*If you are viewing information on devices or services, please note: content reflects instructions for devices and services purchased from AT&T.*
*Some differences may exist for devices not purchased from AT&T.*



**EXHIBIT 3**

**How to Commence an Arbitration Under AT&T's Current Arbitration Provision**


**QUESTION:**

How to Commence an Arbitration Under AT&T's Current Arbitration Provision

**ANSWER:**

### How to Commence an Arbitration Under AT&T's Current Arbitration Provision

AT&T Mobility ("AT&T") (formerly Cingular Wireless) is committed to customer satisfaction. Part of that commitment is ensuring that any dispute a customer may have is resolved in a fair, effective, and efficient manner. Most of the time that you might have a concern about a bill or our service, that concern can be resolved quickly and to your satisfaction by calling our customer service department at 800-331-0500. If you are still not satisfied, you may have your dispute resolved through binding arbitration before the American Arbitration Association ("AAA"). Alternatively, you may file an action in Small Claims Court.

AT&T has revised its arbitration provision to make the arbitration process as customer-friendly as possible. A copy of the revised arbitration provision is available at http://www.att.com/disputeresolution. This document provides additional information on how you may use those procedures. Customers were notified of the revised arbitration provision in December, 2006, and received a copy of that provision along with their bills in January 2007. Former AT&T customers as well as former customers of AT&T's predecessors (Cingular Wireless, the former AT&T Wireless, BellSouth Mobility, Ameritech Mobile, Pacific Bell Wireless, SBMS, SNET Mobility, and SBC Wireless) are entitled to have any dispute resolved under AT&T's revised arbitration provision.

### What Is Arbitration?

Arbitration is a more informal method of binding dispute resolution than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, has more limited discovery than in court, and is subject to very limited review by courts. Arbitration hearings are typically brief and, at your option, can be done either in person, by telephone, or solely on the basis of documents submitted to the arbitrator. (If you choose an in-person hearing, it will take place in the county (or parish) of your billing address.) You may retain an attorney to represent you in arbitration if you choose. Arbitration under AT&T's arbitration provision will take place on an individual basis. The arbitrator cannot consolidate the claims of more than one person or proceed on a class-wide basis. But arbitration does not affect the substance of your legal claims; arbitrators can award the same damages and relief that a court can award.

Arbitrations under AT&T's arbitration provision will be administered by the AAA, a leading non-profit arbitration provider (http://www.adr.org). The arbitration will be conducting using the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes—as modified by AT&T's arbitration provision to make arbitration less expensive and more convenient for our customers. Because the AAA may update those rules from time to time, and because the applicable rules for any particular arbitration will be the ones in force at the time, please check the AAA's website (http://www.adr.org/arb_med) to see the latest version.

AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances explained below, AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

If you have retained an attorney, he or she may help you answer any further questions you might have about arbitration.

### How Do I Arbitrate A Claim?

You can arbitrate a claim against AT&T by taking the following steps:

1. **Mail A Notice Of Dispute to AT&T's Legal Department.** Before beginning an arbitration against AT&T, you must first notify us of your dispute and allow us an opportunity to resolve it without the need for arbitration. Please write us a note briefly explaining the dispute and identifying the specific relief that you would like. Please provide as much information as you think would be helpful, including dates and specific amounts of money, if possible. Please also include the account holder's name, the account number, the mobile telephone number, and an alternate telephone number at which you may be reached during business hours. For your convenience, you may download a Notice of Dispute form from our website (http://www.att.com/arbitration-forms). Once you have written the note or filled out the Notice, please send it to us **by certified mail** at General Counsel, AT&T Mobility LLC. 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342. Please be sure to keep a copy of the note or Notice for your records.
2. **Wait 30 Days To See Whether The Dispute Can Be Resolved Without Arbitration.** If we have not been able to resolve your dispute to your satisfaction within 30 days from when we received your Notice of Dispute, you may start arbitration proceedings. Please be sure to retain a copy of any written settlement offers that we make, but note that the amount of any settlement offer that you or we make must not be shown to the arbitrator until after the arbitrator has resolved the merits of your claim.
3. **Complete A Demand For Arbitration.** You can begin the arbitration by submitting a Demand for Arbitration, which is a statement containing basic information about the dispute: (a) the names, addresses and phone numbers of the parties involved (you and AT&T, in most cases); (b) a description of the dispute; (c) and a short statement of the relief you are seeking. The AAA

provides a form Demand for Arbitration on its website (at http://www.adr.org/si.asp?id=3477). (There is a separate form for California residents, also available on the AAA's web site (at http://www.adr.org/si.asp?id=3485). As a convenient alternative, we have attached a form Demand that AT&T has created for its customers' use. You don't have to use this form, but it includes spaces for all the necessary information. You may download the form Demand (Arbitration Initiation Form) from our website (http://www.att.com/arbitration-forms)

4.  **Send Us A Copy of Your Demand for Arbitration.** Complete the Demand for Arbitration and make at least four (4) copies. Keep one copy for your records. Send one copy to us at General Counsel, AT&T Mobility LLC. 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342.

5.  **Submit Two Copies Of Your Demand To The AAA.** Send the final two copies of the Demand for Arbitration to the AAA Case Management Center for the state in which your billing address is located. Please be sure to include (1) a copy of AT&T's arbitration provision (you may obtain a copy from our website ()); and (2) the appropriate AAA filing fee. We will promptly reimburse you this amount when we receive a copy of your Demand for Arbitration. The filing fee is currently $125 for claims under $10,000, but the AAA may change the amount of the fee. You may obtain the amount of the fee by consulting the AAA's rules. Those rules may be obtained from the AAA's website (http://www.adr.org/arb_med), or by calling the AAA at 800-778-7879. If you are unable to pay the AAA's filing fee, please inform us by writing a letter to the above address and we will arrange to pay it directly. The contact information for the applicable AAA Case Management Centers is:

| **Western Case Management Center** | **Northeast Case Management Center** |
|---|---|
| Administers cases in AK, AZ, CA, HI, ID, MT, NV, NM, OR, UT, WA, CO, WY | Administers cases in ME, MA, NH, RI, VT, NY, CT, NJ, PA, DE, WV, MI |
| John Bishop | Catherine Shanks |
| Vice President – Case Management Center | Vice President – Case Management Center |
| 6795 N. Palm Avenue, Floor 2 | 950 Warren Avenue |
| Fresno, CA 93704 | East Providence, RI 02914 |
| Telephone:  877-528-0880 | Telephone:  866-293-4053 |
| Fax: 559-490-1919 | Fax: 401-435-6529 |
| E-mail: BishopJ@adr.org | E-mail: ShanksC@adr.org |
| **Central Case Management Center** | **Southeast Case Management Center** |
| Administers cases in AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI | Administers cases in AL, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA, DC |
| Molly Bargenquest | Chauncey Davis |
| Vice President – Case Management Center | Vice President – Case Management Center |
| 1750 Two Galleria Tower | 2200 Century Parkway, Suite 300 |
| 13455 Noel Road | |
| Dallas, TX 75240-6636 | Atlanta, GA 30345-3203 |
| Telephone:  972-702-8222 | Telephone:  404-325-0101 |
| Fax: 972-490-9008 | Fax: 404-325-8034 |
| E-mail: BargenquestM@adr.org | E-mail: DavisCh@adr.org |

The AAA may change this information; please confirm it by calling the AAA at 800-778-7879 or visiting the AAA's web site at http://www.adr.org/sp.asp?id=29019.

6. **Case Manager Assignment.** Once the AAA receives your Demand for Arbitration, the AAA will assign your case to a Case Manager. The Case Manager will then send us both a confirmation letter and give AT&T 10 days to respond to your Demand.

7. **Appointment Of Arbitrator.** If no claim in the arbitration exceeds $75,000, the AAA will appoint an arbitrator and notify us both of that arbitrator's name and qualifications. The AAA requires all arbitrators to check for any past or present relationships with the parties, potential witnesses, and the parties' attorneys. If the arbitrator has any such relationship, the AAA will tell both you and us. If either you or us objects to the AAA's choice of arbitrator, we will have seven days to inform the AAA. Note that all arbitrators must swear an oath for each case promising to be impartial and to abide by the AAA's Code of Ethics for Arbitrators in Commercial Disputes. A copy of that Code may be obtained from the AAA's website (at http://www.adr.org/sp.asp?id=32124).

8. **Choose The Kind Of Hearing You Would Like.** Unless you and we agree to have any arbitration hearings somewhere else, they will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, you may choose whether any hearings are conducted in person or by telephone. Alternatively, you may choose to proceed by a "desk" arbitration, which does not involve a hearing. Instead, the arbitrator resolves the dispute solely on the basis of the documents that you and we submit. Once the AAA has commenced the arbitration, you have 10 days to inform the AAA of your choice of hearing. If you do not make a choice, the AAA will assume that you want a desk arbitration. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA rules. Those rules currently provide for a hearing if the consumer's claim exceeds $10,000, but you and we may agree whether that hearing is in person or by telephone, or whether to forgo the hearing altogether.

9. **Arbitrator's Decision.** Within 14 days from the conclusion of the hearing or from the submission of all written evidence to the arbitrator if you chose a desk arbitration, the arbitrator will render a written decision.

10. **Your Premium.** If the arbitrator grants you relief that exceeds AT&T's last written settlement offer before the arbitrator is appointed, you may be entitled to a special premium. If the arbitrator awards you an amount less than $5,000—or (if it is larger) the maximum claim that may be filed in Small Claims Court in the county of your billing address—then AT&T will pay you the larger of those amounts (the Premium) instead of the arbitrator's award. If AT&T did not make a written offer to settle the dispute, you will be entitled to receive the Premium if the arbitrator awards you any relief at all on the merits.

11. **Your Attorney's Premium.** If you are entitled to the Premium, then AT&T will also pay your attorney, if any, twice the amount of attorneys' fees your attorney reasonably accrued for investigating, preparing, and pursuing your claim in arbitration. Even if you are not entitled to the premium and the attorney premium, AT&T will reimburse you for your reasonable attorneys' fees and expenses if it is required to do so under applicable law. But you may not receive both the attorney premium and an award of attorneys' fees under a statute. Instead, you will receive the greater amount. AT&T will not attempt to collect from you attorneys' fees that it incurs in either pursuing a claim or successfully defending against a claim in arbitration even when permitted to do so under applicable law.

12. **Arbitration Costs In Frivolous Cases.** If the arbitrator not only rules against you, but also rules that either the substance of your claim or the relief you requested in your Demand for Arbitration was either frivolous or brought for an improper purpose, then responsibility for the costs of arbitration will be set by the AAA's rules. For frivolous cases in which your demand is $10,000 or less, your share of the costs is currently limited to $125, though the AAA may change that amount. If the arbitrator makes this determination, you may be required to reimburse AT&T for paying your share of the arbitration costs.

**Questions and Answers Related to the AT&T Mobility Wireless
Arbitration Program Administered by the American Arbitration Association**

*Prepared in consultation with and approved by the American Arbitration Association*

**Q. What is arbitration?**

**A**. Arbitration is a process, not unlike court (but much less formal), where an independent neutral person hears evidence and issues a decision, known as an "award". This award is generally final and binding on the parties in the case.

**Q. What is the American Arbitration Association and what role does it play?**

**A.** The American Arbitration Association (AAA) is a not-for-profit, public service organization committed to the resolution of disputes through the use of arbitration, mediation and other voluntary procedures. Every year, more than 200,000 disputes are resolved by the Association in a range of areas including finance, construction, labor and employment, insurance and technology. The AAA has 30 offices in the United States and Europe.

As an administrative agency, the AAA processes a case from filing to closing, appointing arbitrators, setting hearings, transmitting

documents and scheduling conference calls. The goal is to keep
cases moving in a fair and impartial process until completion.

**Q. What kinds of disputes are covered by the AT&T Mobility
Arbitration Program?**

**A.** The arbitration clause in the contract between you and AT&T
explains what kinds of disputes are covered. The AAA also applies
its Supplementary Procedures for Consumer-Related Disputes to
disputes between you and AT&T. The AAA will have the discretion
to apply or not to apply the Supplementary Procedures and the
parties will be able to bring any disputes concerning the application
or non-application to the attention of the arbitrator. Consumers are
not prohibited from seeking relief in a small claims court for
disputes or claims within the scope of its jurisdiction, even in
consumer arbitration cases filed by the business.

**Q. Who are the arbitrators?**

**A.** Arbitrators are the independent third parties who hear the
evidence and decide the outcomes of cases. They are independent
contractors and not employees of the AAA or of AT&T. Arbitrators
are carefully selected for their expertise and trained extensively by
the AAA. In consumer cases, the AAA will appoint an arbitrator who
is an attorney, unless the parties agree otherwise for example, on a
case in which there are many financial records, the parties may
agree to use an arbitrator who is an accountant instead of an
attorney.

**Q. If the contract says I have to arbitrate my dispute, does
that mean I can't go to court?**

**A.** The AAA's Consumer Due Process Protocol gives either you or
AT&T the option of going to small claims court if the amount of
money you are seeking falls within the limits set for small claims
courts in the state in which you live or operate.

**Q. Do I have to hire an attorney?**

**A.** Either you or AT&T may be represented by an attorney.
However, there is no requirement that you have an attorney to
participate in arbitration.

**Q. Where can I find more information about arbitration?**

**A.** You can review other arbitration information on the AAA's Web
site.

**Q. Why has the AAA developed the Supplementary
Procedures for Consumer-Related Disputes?**

**A.** The AAA developed the Supplementary Procedures for
Consumer-Related Disputes to provide a low-cost, streamlined
process to resolve disputes between consumers and businesses
whose contracts contain a standardized arbitration clause where
those terms and conditions are non-negotiable or primarily non-
negotiable in most or all of its terms, conditions, features, choices.
The Supplementary Procedures are also intended to reinforce the
principles of the Consumer Due Process Protocol.

**Q. What is the Consumer Due Process Protocol?**

**A.** The Consumer Due Process Protocol (Protocol) is a statement of principles and standards aimed at promoting fair procedures that protect consumers in arbitrations. The protocol was developed to address a wide range of consumer transactions - those involving the purchase or lease of goods or services for personal, family or household use. A complete copy of the Protocol can be found on the AAA's Web site.

**Q. What if I am having problems with AT&T? Will the AAA help me before I file for arbitration?**

**A.** No. The AAA is a neutral administrative agency and cannot act on behalf of either the consumer or AT&T, or become involved in a dispute before the filing of a case. If you are attempting to resolve a problem with AT&T, you should contact them directly or seek the assistance of a consumer advocacy group.

**Q. Where can I file my claim?**

**A.** AAA's administrative services are available through the Association's Case Management Centers in Atlanta, Dallas, Fresno and East Providence. Address information can be found on the AAA's Web site at www.adr.org. In-person hearings, if any are needed, can be held at any location convenient to the parties.

**Q. How do I file my claim?**

**A.** To begin the process, either your or AT&T can use the Demand for Arbitration form found on the AAA's Web site. Send the completed form, along with a copy of the arbitration provision in your contract, and the appropriate filing fees and/or deposits to any AAA office. The AAA will notify AT&T, advising them that the AAA has received a consumer case under these supplementary procedures.

**Q. Can AT&T file for arbitration against a consumer?**

**A.** Yes. Either you or AT&T can start an arbitration proceeding.

**Q. Can I have a hearing?**

**A.** Many consumer disputes can be resolved simply through the review of documents. However you may request a hearing. This request should be made no later than ten days after the AAA has initiated the case. You can request either a telephone hearing or an in-person hearing. In-

**Q. Is Mediation available?**

**A.** Mediation is available to assist parties in resolving their disputes. If the parties want to use mediation, they may do so under the Association's Commercial Mediation Rules.

In mediation, an impartial person (the mediator) helps the parties to try and settle their dispute by reaching an agreement together. A mediator does not arbitrate or decide the outcome.

*If you are viewing information on devices or services, please note: content reflects instructions for devices and services purchased from AT&T. Some differences may exist for devices not purchased from AT&T.*

https://cingular.atgnow.com/cng/tutorials/KB72565.html                                      9/17/2007

# EXHIBIT 4

# AMERICAN ARBITRATION ASSOCIATION
# SUPPLEMENTARY PROCEDURES FOR
# CONSUMER-RELATED DISPUTES

| How to file a claim; consumers should: | How to file a claim; businesses should: |
|---|---|
| • Fill out this form and retain one copy for your records.<br>• Mail two copies of this form and your check or money order made payable to the AAA, to the AAA Case Management Center nearest to you. Please consult Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* for the appropriate fee.<br>• Send a copy of this form to the business. | • Fill out this form and retain one copy for your records.<br>• Mail two copies of this form and your check or money order made payable to the AAA, to the AAA Case Management Center nearest to you. Please consult Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* for the appropriate fee.<br>• Send a copy of this form to the consumer by registered mail return receipt requested. |

**1** How is this claim being filed? Check only one.

[ ] By request of the consumer (A copy of the arbitration agreement **must** be attached. A copy of this form **must** also be sent to the business)

[ ] By request of the business (A copy of the arbitration agreement **must** be attached. A copy of this form **must** also be sent to the consumer by registered mail return receipt requested)

-or-

[ ] By mutual agreement ("submission") of the parties (both parties **must** sign this form)

**2** Briefly explain the dispute.

**3** Do you believe there is any money owed to you?   If yes, how much?

**4** Is there any other outcome you want?    [ ] Yes          [ ] No
If yes, what is it?

**5** Preferred hearing locale (if an in-person hearing is held) _____

**6** Fill in the following information

| **Consumer** | **Business** |
|---|---|
| Name of Consumer _____ | Name of Business _____ |
| Address _____ | Address _____ |
| City/State/Zip_____ | City/State/Zip_____ |
| Telephone _____ | Telephone _____ |
| Fax _____ | Fax _____ |
| Signature of Consumer _____ | Signature of Business _____ |
| Representative _____ | Representative _____ |
| Firm _____ | Firm _____ |
| Address _____ | Address _____ |
| City/State/Zip_____ | City/State/Zip_____ |
| Telephone _____ | Telephone _____ |
| Fax _____ | Fax _____ |

**EXHIBIT 5**

**AT&T**
## Consumer Demand for Arbitration before the
## American Arbitration Association

### AMERICAN ARBITRATION ASSOCIATION
### SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES

---

**Instructions on filing a claim:**

1. Please fill out this form and retain one copy for your records.
2. Mail **two** copies of this form and your check or money order to the American Arbitration Association Case Management Center nearest to you. Please consult Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* for the appropriate fee. Information regarding the nearest Case Management Center and the appropriate fee is available at http://www.adr.org or by calling AAA Customer Service at (800) 778-7879. Please make your check or money order payable to the American Arbitration Association.
3. Send a copy of this form and of your check or money order to Cingular at: AT&T Mobility LLC, General Counsel, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342. Upon receipt, AT&T will reimburse you for your filing fee.
4. Please also include the attached copy of AT&T's arbitration provision with each copy of this form.

---

**Your Personal Information:**

Name: _____ Address: _____

City/State/Zip: _____

Tel: _____ Fax: _____

If an in-person hearing is held, the arbitration will take place in the county of your billing address.
Please tell us the county and state to which your bills are sent: _____

**Your Attorney's Information (Please leave blank if you are representing yourself)**

Attorney's Name: _____ Firm: _____

Address: _____ City/State/Zip: _____

Tel: _____ Fax: _____

**Briefly explain the nature of your dispute. You may use additional pages:**




**How much money do you believe you are owed? If none, leave blank:**




**Do you desire any non-monetary outcome? If no, leave blank:**




**Signature: _____ Date: _____**

# EXHIBIT 6

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Commercial Arbitration Rules and Mediation PROCEDURES
(Including Procedures for Large, Complex Commercial Disputes)
Amended and Effective September 1, 2007

Summary of Changes

TABLE OF CONTENTS

IMPORTANT NOTICE
INTRODUCTION
STANDARD ARBITRATION CLAUSE
ADMINISTRATIVE FEES
MEDIATION
LARGE, COMPLEX CASES

COMMERCIAL MEDIATION PROCEDURES
M-1. Agreement of Parties

M-2. Initiation of Mediation
M-3. Representation
M-4. Appointment of the Mediator
M-5. Mediator's Impartiality and Duty to Disclose
M-6. Vacancies
M-7. Date and Responsiblities of the Mediator
M-8. Responsibilities of the Parties
M-9. Privacy
M-10. Confidentiality
M-11. No Stenographic Record
M-12. Termination of Mediation
M-13. Exclusion of Liability
M-14. Interpretation and Application of Procedures
M-15. Deposits
M-16. Expenses

M-17. Cost of Mediation

COMMERCIAL ARBITRATION RULES
R-1. Agreement of Parties
R-2. AAA and Delegation of Duties
R-3. National Roster of Arbitrators
R-4. Initiation under an Arbitration Provision in a Contract
R-5. Initiation under a Submission
R-6. Changes of Claim
R-7. Jurisdiction
R-8. Mediation
R-9. Administrative Conference
R-10. Fixing of Locale
R-11. Appointment from National Roster
R-12. Direct Appointment by a Party

R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
R-14. Nationality of Arbitrator
R-15. Number of Arbitrators
R-16. Disclosure
R-17. Disqualification of Arbitrator
R-18. Communication with Arbitrator
R-19. Vacancies
R-20. Preliminary Hearing
R-21. Exchange of Information
R-22. Date, Time, and Place of Hearing
R-23. Attendance at Hearings
R-24. Representation
R-25. Oaths
R-26. Stenographic Record
R-27. Interpreters
R-28. Postponements
R-29. Arbitration in the Absence of a Party or Representative
R-30. Conduct of Proceedings
R-31. Evidence
R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
R-33. Inspection or Investigation
R-34. Interim Measures
R-35. Closing of Hearing
R-36. Reopening of Hearing
R-37. Waiver of Rules
R-38. Extensions of Time
R-39. Serving of Notice
R-40. Majority Decision
R-41. Time of Award
R-42. Form of Award
R-43. Scope of Award
R-44. Award upon Settlement
R-45. Delivery of Award to Parties
R-46. Modification of Award
R-47. Release of Documents for Judicial Proceedings
R-48. Applications to Court and Exclusion of Liability
R-49. Administrative Fees
R-50. Expenses
R-51. Neutral Arbitrator's Compensation
R-52. Deposits
R-53. Interpretation and Application of Rules
R-54. Suspension for Nonpayment

EXPEDITED PROCEDURES
E-1. Limitation on Extensions
E-2. Changes of Claim or Counterclaim
E-3. Serving of Notices
E-4. Appointment and Qualifications of Arbitrator
E-5. Exchange of Exhibits
E-6. Proceedings on Documents
E-7. Date, Time, and Place of Hearing
E-8. The Hearing
E-9. Time of Award
E-10. Arbitrator's Compensation

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

L-1. Administrative Conference

L-2. Arbitrators

L-3. Preliminary Hearing

L-4. Management of Proceedings

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

ADMINISTRATIVE FEES
Fees
Refund Schedule
Hearing Room Rental

IMPORTANT NOTICE

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA. To ensure that you have the most current information, see our Web Site at www.adr.org.

INTRODUCTION

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on all forms of out-of-court dispute settlement.

Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association*

*under its Commercial Arbitration Rules the following controversy: (describe briefly) We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

In transactions likely to require emergency interim relief, the parties may wish to add to their clause the following language:

*The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to the proceedings.*

These Optional Rules may be found below.

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees.

The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

Mediation

The parties might wish to submit their dispute to mediation prior to arbitration. In mediation, the neutral mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

*If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs.

The key features of these procedures include:

§ a highly qualified, trained Roster of Neutrals;

Case 4:07-cv-03407-CW    Document 23-7    Filed 11/20/2007    Page 6 of 25

§ a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

§ broad arbitrator authority to order and control discovery, including depositions;

§ presumption that hearings will proceed on a consecutive or block basis.

## COMMERCIAL MEDIATION PROCEDURES

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via WebFile at www.adr.org.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

    i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
    ii.   The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
    iii.   A brief statement of the nature of the dispute and the relief requested.
    iv.   Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

### M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

### M-4. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at www.aaamediation.com in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

    i.   Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.
    ii.   If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

    iii.   If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the Model Standards of Conduct for Mediators in effect at the time a mediator is appointed to a case. Where there is a conflict between the Model Standards and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

M-7. Duties and Responsibilities of the Mediator

   i.   The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.
   ii.  The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.
   iii. The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.
   iv.  The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.
   v.   In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.
   vi.  The mediator is not a legal representative of any party and has no fiduciary duty to any party.

M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by

Case 4:07-cv-03407-CW    Document 23-7    Filed 11/20/2007    Page 8 of 25

other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

    i.   Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;
    ii.   Admissions made by a party or other participant in the course of the mediation proceedings;
    iii.   Proposals made or views expressed by the mediator; or
    iv.   The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

### M-12. Termination of Mediation

The mediation shall be terminated:

    i.   By the execution of a settlement agreement by the parties; or
    ii.   By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or
    iii.   By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or
    iv.   When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

## M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-17. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the AAA to invite parties to mediate.

The cost of mediation is based on the hourly mediation rate published on the mediator's AAA profile.  This rate covers

both mediator compensation and an allocated portion for the AAA's services. There is a four-hour minimum charge for a mediation conference. Expenses referenced in Section M-16 may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the agreement to mediate is filed but prior to the mediation conference the cost is $250 plus any mediator time and charges incurred.

The parties will be billed equally for all costs unless they agree otherwise.

If you have questions about mediation costs or services visit our website at www.adr.org or contact your local AAA office.

Conference Room Rental

The costs described above do not include the use of AAA conference rooms. Conference rooms are available on a rental basis. Please contact your local AAA office for availability and rates.

## COMMERCIAL ARBITRATION RULES

R-1. Agreement of Parties*+

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

(b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

(c) Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000, exclusive of claimed interest, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-4 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

(d) All other cases shall be administered in accordance with Sections R-1 through R-54 of these rules.

* The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

+ A dispute arising out of an employer promulgated plan will be administered under the AAA's National Rules for the Resolution of Employment Disputes.

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Commercial Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

(i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

(ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

(iii) The AAA shall confirm notice of such filing to the parties.

(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.

(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.

R-5. Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules. Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

R-6. Changes of Claim

After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA.

After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

### R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Mediation

At any stage of the proceedings, the parties may agree to conduct a mediation conference under the Commercial Mediation Procedures in order to facilitate settlement. The mediator shall not be an arbitrator appointed to the case. Where the parties to a pending arbitration agree to mediate under the AAA's rules, no additional administrative fee is required to initiate the mediation.

### R-9. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters.

### R-10. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

### R-11. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National

Case 4:07-cv-03407-CW     Document 23-7     Filed 11/20/2007     Page 12 of 25

Roster without the submission of additional lists.

(c) Unless the parties agree otherwise when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

R-12. Direct Appointment by a Party

(a) If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

(b) Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-17 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-17(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

(c) If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

(d) If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

(a) If, pursuant to Section R-12, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

(b) If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

(c) If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-11, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

R-14. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

R-15. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the demand or answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

R-16. Disclosure

(a) Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such

obligation shall remain in effect throughout the arbitration.

(b) Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(c) In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-16 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

R-17. Disqualification of Arbitrator

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

(ii) inability or refusal to perform his or her duties with diligence and in good faith, and

(iii) any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-12 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

R-18. Communication with Arbitrator

(a) No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-12 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

(b) Section R-18(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-17(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-17(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-18(a) should nonetheless apply prospectively.

R-19. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

R-20. Preliminary Hearing

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted

by telephone at the arbitrator's discretion.

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

R-21. Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i) the production of documents and other information, and

ii) the identification of any witnesses to be called.

(b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

R-22. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

R-23. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives.

R-24. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

R-25. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-26. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## R-28. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

## R-29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## R-30. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

## R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

R-33. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

R-34. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

R-35. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall b e declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

R-36. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

R-38. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal

service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

R-40. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

R-41. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

R-42. Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the

arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-54. Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

EXPEDITED PROCEDURES

E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the demand for arbitration or counterclaim as provided in Section R-4.

E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

E-3. Serving of Notices

In addition to notice provided by Section R-39(b), the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

E-4. Appointment and Qualifications of Arbitrator

(a) The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

(b) The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the

submission of additional lists.

(c) The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-17. The parties shall notify the AAA within seven days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

E-6. Proceedings on Documents

Where no party's claim exceeds $10,000, exclusive of interest and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. The arbitrator shall establish a fair and equitable procedure for the submission of documents.

E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

E-8. The Hearing

(a) Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

(b) Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-26.

E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 days from the date of the closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

Case 4:07-cv-03407-CW    Document 23-7    Filed 11/20/2007    Page 21 of 25

(a) to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

(b) to discuss the views of the parties about the technical and other qualifications of the arbitrators;

(c) to obtain conflicts statements from the parties; and

(d) to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

L-2. Arbitrators

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

(b) The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the Regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

L-3. Preliminary Hearing

As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the preliminary hearing will be conducted by telephone conference call rather than in person. At the preliminary hearing the matters to be considered shall include, without limitation:

(a) service of a detailed statement of claims, damages and defenses, a statement of the issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the arbitrator(s);

(b) stipulations to uncontested facts;

(c) the extent to which discovery shall be conducted;

(d) exchange and premarking of those documents which each party believes may be offered at the hearing;

(e) the identification and availability of witnesses, including experts, and such matters with respect to witnesses including their biographies and expected testimony as may be appropriate;

(f) whether, and the extent to which, any sworn statements and/or depositions may be introduced;

(g) the extent to which hearings will proceed on consecutive days;

(h) whether a stenographic or other official record of the proceedings shall be maintained;

(i) the possibility of utilizing mediation or other non-adjudicative methods of dispute resolution; and

(j) the procedure for the issuance of subpoenas.

By agreement of the parties and/or order of the arbitrator(s), the pre-hearing activities and the hearing procedures that will govern the arbitration will be memorialized in a Scheduling and Procedure Order.

L-4. Management of Proceedings

(a) Arbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

(b) Parties shall cooperate in the exchange of documents, exhibits and information within such party's control if the arbitrator(s) consider such production to be consistent with the goal of achieving a just, speedy and cost-effective resolution of a Large, Complex Commercial Case.

(c) The parties may conduct such discovery as may be agreed to by all the parties provided, however, that the arbitrator (s) may place such limitations on the conduct of such discovery as the arbitrator(s) shall deem appropriate. If the parties cannot agree on production of documents and other information, the arbitrator(s), consistent with the expedited nature of arbitration, may establish the extent of the discovery.

(d) At the discretion of the arbitrator(s), upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator(s) may order depositions of, or the propounding of interrogatories to, such persons who may possess information determined by the arbitrator(s) to be necessary to determination of the matter.

(e) The parties shall exchange copies of all exhibits they intend to submit at the hearing 10 business days prior to the hearing unless the arbitrator(s) determine otherwise.

(f) The exchange of information pursuant to this rule, as agreed by the parties and/or directed by the arbitrator(s), shall be included within the Scheduling and Procedure Order.

(g) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

(h) Generally hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* when filing a consumer-related claim.

The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred.

Case 4:07-cv-03407-CW    Document 23-7    Filed 11/20/2007    Page 24 of 25

However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

- 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.
- 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.
- 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

Case 4:07-cv-03407-CW    Document 23-7    Filed 11/20/2007    Page 25 of 25

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA235

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

**EXHIBIT 7**



American Arbitration Association
*Dispute Resolution Services Worldwide*

Consumer-Related Disputes Supplementary PROCEDURES
Effective September 15, 2005

About the AAA
The AAA's Consumer Rules
Availability of Mediation
Administrative Fees
Arbitrator's Fees

Glossary of Terms
Claimant
Respondent
ADR Process
Arbitration
Desk Arbitration
Telephone Hearing
In Person Hearing
Mediation
Neutral
Case Manager
ADR Agreement
ADR Program
Independent ADR Institution

Resolution of Consumer-Related Disputes Supplementary Procedures
C-1. Agreement of Parties and Applicability
C-2. Initiation Under an Arbitration Agreement
C-3. Initiation Under a Submission
C-4. Appointment of Arbitrator
C-5. Proceedings on Documents ("Desk Arbitration")
C-6. Expedited Hearing Procedures
C-7. The Award
C-8. Administrative Fees and Arbitrator Fees*
Administrative Fees
Arbitrator Fees
Fees and Deposits to be Paid by the Consumer:
Fees and Deposits to be Paid by the Business:

INTRODUCTION

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court

Case 4:07-cv-03407-CW    Document 23-8    Filed 11/20/2007    Page 3 of 8

for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

## About the AAA

The American Arbitration Association (AAA) is a not-for-profit, private organization. We offer a broad range of conflict management services to businesses, organizations and individuals. We also provide education, training and publications focused on ways of settling disputes out of court.

## The AAA's Consumer Rules

The AAA has developed the Supplementary Procedures for Consumer-Related Disputes for consumers and businesses that want to have their disagreements resolved by arbitrators. People throughout the world can make use of our services.

## Availability of Mediation

Mediation is also available to help parties resolve their disputes. Mediations are handled under AAA's Commercial Mediation Procedures.

## Administrative Fees

The Association charges a fee for its services under these rules. The costs to the consumer and business depend on the size and nature of the claims. A fee schedule is included at the end of this Supplement. In certain cases, fees paid by the consumer are fully refundable if the dispute is settled before the arbitrator takes any action.

## Arbitrator's Fees

Arbitrators get paid for the time they spend resolving disputes. The arbitrator's fee depends on the type of proceeding that is used and the time it takes. The parties make deposits as outlined in the fee schedule at the end of this Supplement. Unused deposits are refunded at the end of the case.

## GLOSSARY OF TERMS

### Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

### Respondent

A Respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute out of court. Mediation and Arbitration are the most widely used ADR processes.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award, but the court's review of arbitration awards is limited.

In a Desk Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No hearing is held.

## Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. Often this is done after the parties have sent in documents for the arbitrator to review. A Telephone Hearing can be cheaper and easier than an In Person Hearing.

## In Person Hearing

During an In Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In Person Hearing is not as formal as going to court.

## Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

## Neutral

A Neutral is a word that is used to describe someone who is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

## Case Manager

The Case Manager is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she only manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Manager is the parties' contact point for almost all aspects of the case outside of any hearings.

## ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

## ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

## Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

## SUPPLEMENTARY PROCEDURES FOR THE RESOLUTION OF CONSUMER-RELATED DISPUTES

C-1. Agreement of Parties and Applicability

(a) The Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement

Case 4:07-cv-03407-CW    Document 23-8    Filed 11/20/2007    Page 5 of 8

between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. The AAA's most current rules will be used when the arbitration is started. If there is a difference between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used. The Commercial Dispute Resolution Procedures may be found on our Web site. They may also be obtained from the Case Manager.

(b) The Expedited Procedures will be used unless there are three arbitrators. In such cases, the Commercial Dispute Resolution Procedures shall apply.

(c) The AAA may substitute another set of rules, such as the Real Estate or the Wireless Industry Arbitration Rules, for the Commercial Dispute Resolution Procedures in some cases.

(d) Parties can still take their claims to a small claims court.

C-2. Initiation Under an Arbitration Agreement

(a) The filing party (the "claimant") must notify the other party (the "respondent"), in writing, that it wishes to arbitrate a dispute. This notification is referred to as the "demand" for arbitration. The demand should:

' briefly explain the dispute,

' list the names and addresses of the consumer and the business,

' specify the amount of money involved,

' state what the claimant wants.

The claimant must also send two copies of the demand to the AAA at the time it sends the demand to the respondent. When sending a demand to the AAA, the claimant must attach a copy of the arbitration agreement from the consumer contract with the business. The claimant must also send the appropriate administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement.

(b) The AAA shall confirm receipt of the demand to the parties.

(c) The respondent may answer the demand and may also file a counterclaim. The answer must be sent to the AAA within ten calendar days after the AAA acknowledges receipt of claimant's demand. The answer must:

' be in writing,

' be sent, in duplicate, to the AAA,

' be sent to the claimant at the same time.

' If the respondent has a counterclaim, it must state the nature of the counterclaim, the amount involved, and the remedy sought.

(d) If no answer is filed within the stated time, the AAA will assume that the respondent denies the claim.

(e) The respondent must also send the appropriate administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement. Payment is due ten calendar days after the AAA acknowledges receipt of claimant's demand.

C-3. Initiation Under a Submission

Where no agreement to arbitrate exists in the contract between the consumer and the business, the parties may agree to arbitrate a dispute. To begin arbitration, the parties must send the AAA a submission agreement. The submission agreement must:

    ' be in writing,

    ' be signed by both parties,

    ' briefly explain the dispute,

    ' list the names and addresses of the consumer and the business,

    ' specify the amount of money involved,

    ' state the solution sought.

The parties should send two copies of the submission to the AAA. They must also send the administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement.

C-4. Appointment of Arbitrator

Immediately after the filing of the submission or the answer, or after the deadline for filing the answer, the AAA will appoint an arbitrator. The parties will have seven calendar days from the time the AAA notifies them, to submit any factual objections to that arbitrator's service.

C-5. Proceedings on Documents ("Desk Arbitration")

Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. The arbitrator may also decide that a hearing is necessary.

The arbitrator will establish a fair process for submitting the documents. Documents must be sent to the AAA. These will be forwarded to the arbitrator.

C-6. Expedited Hearing Procedures

A party may request that the arbitrator hold a hearing. This hearing may be by telephone or in person. The hearing may occur even if the other party does not attend. A request for a hearing should be made in writing within ten calendar days after the AAA acknowledges receipt of a claimant's demand for arbitration. Requests received after that date will be allowed at the discretion of the arbitrator.

In a case where any party's claim exceeds $10,000, the arbitrator will conduct a hearing unless the parties agree not to have one.

Any hearings will be conducted in accordance with the Expedited Procedures of the Commercial Dispute Resolution Procedures. These procedures may be found on our Web site. They may also be obtained from the Case Manager.

C-7. The Award

(a) Unless the parties agree otherwise, the arbitrator must make his or her award within fourteen calendar days from the date of the closing of the hearing. For Desk Arbitrations, the arbitrator has fourteen calendar days from when the AAA sends the final documents to the arbitrator.

(b) Awards shall be in writing and shall be executed as required by law.

Case 4:07-cv-03407-CW    Document 23-8    Filed 11/20/2007    Page 7 of 8

(c) In the award, the arbitrator should apply any identified pertinent contract terms, statutes, and legal precedents. The arbitrator may grant any remedy, relief or outcome that the parties could have received in court. The award shall be final and binding. The award is subject to review in accordance with applicable statutes governing arbitration awards.

## C-8. Administrative Fees and Arbitrator Fees*

Administrative fees and arbitrator compensation deposits are due from the claimant at the time a case is filed. They are due from the respondent at the time the answer is due. The amounts paid by the consumer and the business are set forth below.

> *Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under of oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)

Administrative Fees

Administrative fees are based on the size of the claim and counterclaim in a dispute. They are based only on the actual damages and not on any additional damages, such as attorneys' fees or punitive damages. Portions of these fees are refundable pursuant to the Commercial Fee Schedule.

Arbitrator Fees

For cases in which no claim exceeds $75,000, arbitrators are paid based on the type of proceeding that is used. The parties make deposits as set forth below. Any unused deposits are returned at the end of the case.

Desk Arbitration or Telephone Hearing $250 for service on the case
In Person Hearing $750 per day of hearing

For cases in which a claim or counterclaim exceeds $75,000, arbitrators are compensated at the rates set forth on their panel biographies.

Fees and Deposits to be Paid by the Consumer:

If the consumer's claim or counterclaim does not exceed $10,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125. This deposit is used to pay the arbitrator. It is refunded if not used.

If the consumer's claim or counterclaim is greater than $10,000, but does not exceed $75,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $375. This deposit is used to pay the arbitrator. It is refunded if not used.

If the consumer's claim or counterclaim exceeds $75,000, or if the consumer's claim or counterclaim is non-monetary, then the consumer must pay an Administrative Fee in accordance with the Commercial Fee Schedule. A portion of this fee is refundable pursuant to the Commercial Fee Schedule. The consumer must also deposit one-half of the arbitrator's compensation. This deposit is used to pay the arbitrator. This deposit is refunded if not used. The arbitrator's compensation rate is set forth on the panel biography provided to the parties when the arbitrator is appointed.

Fees and Deposits to be Paid by the Business:

*Administrative Fees:*

If neither party's claim or counterclaim exceeds $10,000, the business must pay $750 and a Case Service Fee of $200 if a

Case 4:07-cv-03407-CW    Document 23-8    Filed 11/20/2007    Page 8 of 8

hearing is held. A portion of this fee is refundable pursuant to the Commercial Fee Schedule.

If either party's claim or counterclaim exceeds $10,000, but does not exceed $75,000, the business must pay $950 and a Case Service Fee of $300 if a hearing is held. A portion of this fee is refundable pursuant to the Commercial Fee Schedule.

If the business's claim or counterclaim exceeds $75,000 or if the business's claim or counterclaim is non-monetary, the business must pay an Administrative Fee in accordance with the Commercial Fee Schedule. A portion of this fee is refundable pursuant to the Commercial Fee Schedule.

*Arbitrator Fees:*

The business must pay for all arbitrator compensation deposits beyond those that are the responsibility of the consumer. These deposits are refunded if not used.

If a party fails to pay its fees and share of the administrative fee or the arbitrator compensation deposit, the other party may advance such funds. The arbitrator may assess these costs in the award.

For more information please contact our customer service department at 1-800-778-7879

Rules, forms, procedures and guides are subject to periodic change and updating.

AAA236

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# EXHIBIT 8

# AT&T — Notice of Dispute

AT&T Mobility ("AT&T"), formerly Cingular Wireless, is committed to resolving its customers' disputes in a fair and efficient manner.  If you are unsatisfied with the resolution that a customer service representative offers for a problem that you are experiencing, you may notify us of your dispute by sending this form to AT&T's legal department.

**Please complete this form in its entirety (printing legibly).  Retain a copy for your records and send the completed form by certified U.S. mail to:**  General Counsel, AT&T Mobility LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342.

An AT&T representative will respond within 30 days of receiving this form.  If the dispute is not resolved to your satisfaction, you may begin arbitration by submitting a Demand for Arbitration to the American Arbitration Association.  We provide further details on our website (at http://www.cingular.com/disputeresolution), as well as a Demand for Arbitration form.

_____          _____
Name of account holder                              Account number

_____          _____
Mobile phone number                                 Additional number at which you may be reached
                                                                  during business hours

Your email address:    _____

Your fax number:       _____

Your billing address:  _____

                       _____

If you are an authorized representative of the account holder, please print your name, your relationship to the account holder, your address, and a phone number at which you may best be reached during business hours:

**Please briefly describe the nature of your dispute and attach any supporting documents that you wish.  If necessary, please use the reverse side.**

**Please briefly describe the relief that you would like from AT&T.**

_____                              _____
Date                                            Signature

# EXHIBIT 9



013400346

# WIRELESS SERVICE AGREEMENT

1.800.331.0500

| Application Date | Activation Date |
|---|---|
| 11-11-02 | 11-11-02 |

| Agent Code | Sales Person |
|---|---|
| LL53A | Juan |

| Other Code # (If Applicable) | Market/Region |
|---|---|

## WIRELESS EQUIPMENT INFORMATION
☐ Sale  ☑ Service Only  ☐ Upgrade Only

| 1st Wireless Number | Unlock Code |
|---|---|
| 2nd Wireless Number | Unlock Code |
| 3rd Wireless Number | Unlock Code |
| 4th Wireless Number | Unlock Code |

## CUSTOMER BILLING INFORMATION

Billing Name/Legal Name (First, M.I., Last)
Babak Pishvaee

Attention Line

Street Address (PO Box Not Acceptable)

| City | State | Zip Code |
|---|---|---|

Billing Address (If Different)

| City | State | Zip Code |
|---|---|---|

E-Mail Address

Social Security Number                      Date of Birth

Drivers License No.                      Exp. Date

## BUSINESS BILLING INFORMATION

☐ Sole Owner   ☐ Partnership   ☐ Corporation

Authorized Person to Sign for Account

| Authorized Individual's Title | Contact Number |
|---|---|
| Tax Exempt Tax ID No. | ☐ FED   ☐ Local |
| | ☐ State   ☐ Other |

## CREDIT AND BILLING ACCOUNT INFORMATION

| Credit Check Number | Advance Payment/Deposit Amount |
|---|---|
| Account Number | $ |

B

## CUSTOMER CHECKLIST

**CINGULAR REMINDS YOU TO USE YOUR PHONE SAFELY WHILE DRIVING. SAFETY IS YOUR MOST IMPORTANT CALL.**

| ☑ Your First Bill | ☑ Inclusive Minutes | ☑ Coverage and Roaming |
|---|---|---|
| ☑ Service Activation | ☑ Optional Features | ☑ Peak and Off Peak Hours |
| ☑ Service Commitment / | ☑ Safety Guidelines | ☑ Equipment Operation |
| ☑ Early Termination Fee | ☑ Insurance | ☑ Full Minute Rounding |
| ☑ Your Price Plan | ☑ Billing Period | ☐ Network Surcharge (If Applicable) |
| | ☐ Long Distance | ☐ Roamer Admin. (If Applicable) |

## SERVICE COMMITMENT  ℞  Customer's Initials

☑ 1-Year   ☐ 2-Year   ☐ Other

**Early Termination Fee of $150**

At the end of the Service Commitment, this Agreement will stay in force pursuant to the Terms and Conditions of this Wireless Service Agreement.

## SERVICE ACTIVATION CHARGE

| Activation Charge (One-Time Charge) | One Payment | Installment Bill (If Applicable) |
|---|---|---|
| $ 36 | $ | $ /mo. |

## MONTHLY PLAN AND PROMOTION*

| Rate Plan | Monthly Service Fee |
|---|---|
| CNPN 500 | $ 39.99 |

| Included Minutes | (peak/anytime) $ (op) | Promotion Min. |
|---|---|---|
| 500 | $ .45 | |

Promotional Offer
3000 N/W /LD   rollover

| Expires | Cost after Expiration |
|---|---|

* For informational purposes only; in case of conflicts rate plan brochures control.

### Optional Features/Rate Plan Options

| Check | Feature Name | Cstmr Initial | Cost Mo. |
|---|---|---|---|
| | Roadside Assistance | | $ |
| | Phone Insurance — $35 deductible per claim applies | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | **TOTAL** | | $ |

| Qty | Code | Item# | Product/Description | ESN/SIM | MSN/IMEI | Net Unit Price |
|---|---|---|---|---|---|---|
| 1 | | | motorola v60i | 89310170106140744505 | 35090669047402 | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| Tax | | | | | | $ |
| TOTAL | | | | | | $ |

**CREDIT CHECK CONSENT AND REPORTING AUTHORIZATION** - I authorize and instruct any person, consumer reporting agency or credit reporting agency to complete and furnish to Cingular Wireless or for Cingular Wireless to compile any information it has on me or the entity on whose behalf I am making this application. I authorize Cingular Wireless to disclose information related to my account(s), including confidential information and payment history, to credit reporting agencies or private credit reporting associations. I also authorize Cingular Wireless to periodically obtain and use my credit report and other credit information from any source including credit reporting agencies, private credit reporting associations, and other third parties, in connection with the provision and offering of wireless and other services. I am hereby notified that a negative credit report reflection on my credit report may be submitted to a credit agency if I fail to fulfill the terms of my credit obligations.

**TERMS AND CONDITIONS** - Other important Terms and Conditions of service for the rate plan, features and/or options selected by you are contained in the Terms and Conditions and rate plan provisions provided to you. The Terms and Conditions and rate plan provisions are incorporated by reference herein. I acknowledge that the Terms and Conditions are on the back of this page or that the Terms and Conditions version number _____ were separately provided to me.

**GUARANTY** - I guarantee, jointly and severally, the prompt and full payment of all sums now or hereinafter due from the entity shown above, and you may proceed directly against me without the need to proceed first against the above referenced entity.

**DOOR-TO-DOOR SALE** - IF THIS IS A DOOR-TO-DOOR SALE, YOU THE BUYER MAY HAVE RIGHTS UNDER APPLICABLE LAW TO CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. IF APPLICABLE, SEE THE ASSOCIATED NOTICE OF CANCELLATION FORM AND EXPLANATION OF THIS RIGHT.

**NETWORK SURCHARGE** - A network surcharge of $_____ per minute or $_____ per call will apply.

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND THE TERMS AND CONDITIONS, (including changes to Terms and Rates, Limitation of Liability and Arbitration) AND THE PLAN PROVISIONS AND CONDITIONS. I AGREE TO BE BOUND THEREBY. If signing on behalf of an entity, I represent that I am a duly authorized representative of the entity shown under "Billing Name" above, and I have submitted this application in the capacity indicated as my "Title" thereunder. If I am representing a corporation, I acknowledge that the execution of this agreement has been authorized by all necessary corporate actions.

| Customer Signature/Authorization: | Sales/Dealer Signature: |
|---|---|

## CINGULAR WIRELESS USE ONLY

| Deposit/Advance Payment _____ | Check # _____ | Date Received _____ |
|---|---|---|
| Purchase _____ | Check # _____ | By _____ |
| Visa/MC/Disc/AMEX Card No. _____ | | Exp. Date _____ |

Suite 1100-CO • 5565 Glenridge Connector • Atlanta, GA 30342

ORIGINAL - CINGULAR          YELLOW - SALES REP          PINK - CUSTOMER          WHITE - OTHER
SVC. AGMT 10/01  W, C, GL, NE                                                    CW700918

# EXHIBIT 10

CW700572 T&C W, C, GL, NE   7/5/01   9:10 AM   Page 1



www.cingular.com
800.331.0500



What do you have to say? SM



SM

Cingular Wireless and the graphic icon are service marks of
Cingular Wireless LLC.
©2001 Cingular Wireless LLC. All rights reserved.

W, C, GL, NE                              CW700572  (7/01)



terms
and
conditions

arbitration shall be in the city where CINGULAR's Mobile telephone Switching Office for your access number is located. Except where prohibited by law, CINGULAR and you agree that no Arbitrator has the authority to: (1) award relief in excess of what this Agreement provides; (2) award punitive damages or any other damages not measured by the prevailing party's actual damages; or (3) order consolidation or class arbitration. The Arbitrator(s) must give effect to the limitations on CINGULAR's liability as set forth in this Agreement, any applicable tariff, law, or regulation. In any arbitration utilizing the rules applicable to large/complex cases, as defined under the WIA Rules, the Arbitrator(s) must also apply the Federal Rules of Evidence, and the losing party may have the award reviewed in accordance with the review procedures set forth in the WIA Rules. You agree that CINGULAR and you each is waiving its respective right to a trial by jury. You acknowledge that arbitration is final and binding and subject to only very limited review by a court. If for some reason this arbitration clause is at some point deemed inapplicable or invalid, you and CINGULAR agree to waive, to the fullest extent allowed by law, any trial by jury. In such case, a judge shall decide the subject dispute or claim. CINGULAR, you and the Arbitrator(s) shall not disclose the existence, content, or results of any arbitration. Judgment on the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, either party may bring an action in small claims court.

**OUT-OF-NETWORK ROAMING** Roamer charges result from using your cellular phone outside your Local Service Area (applicable to select rate plans) and only appear after CINGULAR is notified by the carrier servicing the area in which roaming occurs. Different service rates apply and conditions of service may vary when you roam on another carrier's network. A roamer administration fee may be charged in any month in which one or more roamer charges appear on the bill, and actual charges billed may not be the same as are imposed by the serving carrier. IN ADDITION TO ANY LIMITATIONS OF LIABILITY STATED HEREUNDER, YOU ARE SUBJECT TO THE LIMITATION OF LIABILITY PROVISIONS IMPOSED BY THE ROAMING CARRIER ON THE ROAMING CARRIER'S OWN SUBSCRIBERS. YOU AGREE TO ACCEPT SERVICE ON A ROAMING CARRIER'S NETWORK ON AN "AS-IS" "WHERE-IS" BASIS WITHOUT WARRANTY OF ANY KIND. Certain rate plans require use of wireless telephones programmed with CINGULAR's preferred roaming database. Phones not so programmed or incapable of roaming on the preferred carriers' networks may subject you to higher roaming rates or having your service converted to a different rate plan. Please check with your sales representative or the service plan brochure for details and restrictions.

**MISCELLANEOUS** This Agreement, the signature or rate summary sheet, the terms included in the rate brochure describing your plan, and any documents expressly referred to herein, make up the complete agreement between you and CINGULAR, and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. CINGULAR may assign this Agreement, but you may not assign or transfer this Agreement without CINGULAR's prior written consent. Service is subject to the jurisdiction and regulations of the Federal Communications Commission and state regulatory agencies. Applicable federal and state laws of the state associated with the wireless number will govern this Agreement.

limited solely to the credit set forth above, and such credit will satisfy all of your claims against CINGULAR for interruption of service.

**LIMITATION OF LIABILITY** CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR PERFORMANCE WITH REGARD TO THE SERVICES AND/OR GOODS PROVIDED HEREUNDER. In no event shall CINGULAR be liable, and you hereby release CINGULAR from liability, WHETHER OR NOT DUE TO THE NEGLIGENCE OF CINGULAR, for: (a) any act or omission of any provider of service or facilities other than CINGULAR; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through CINGULAR; (c) any damage or injury caused by, or allegedly resulting from, the presence or use of any wireless telephone or service provided by CINGULAR, including, but not limited to, the presence or use thereof in any vehicle or on any property; (d) claims made against you by third parties; (e) damage caused by any suspension or termination of service by CINGULAR; (f) damages caused by failures or delays in the provision of, or making calls to, 911 or any other emergency service, where such service is available; or, (g) any damage or injury arising from alleged negligence or willful misconduct of any third party, or including, without limitation, any directory assistance or Internet service provider. CINGULAR shall not be liable for any indirect, punitive, special, incidental or consequential losses or damages you or any third party may suffer or incur caused by use of, or inability to make use of, service or equipment provided by or through CINGULAR, such as, but not limited to (a) loss of business, revenue or profits, (b) damages or losses as a result of your inability to fulfill agreements with third parties, (c) claims of personal injuries, or (d) injury to goodwill. CINGULAR's sole liability, if any, for loss or damage arising out of mistakes, omissions, interruptions, errors or any other causes, INCLUDING THE NEGLIGENCE OF CINGULAR, shall be limited to the credit for service interruption for each separate period of interruption as described in the Section on Service Interruption. To the full extent allowed by law, you hereby release, indemnify, and hold CINGULAR and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by CINGULAR or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING FROM IN WHOLE OR IN PART THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of these Terms and Conditions. This obligation shall survive termination of your service with CINGULAR. CINGULAR is not liable to you for changes in operation, equipment or technology that cause your equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH; THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS CONTRACT GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**VOICE MAIL SERVICE** CINGULAR reserves the right to remove voice mail service if the voice mail service is not initialized within a reasonable period after activation. CINGULAR will reactivate your voice mail service thereafter at your request.

**INDEPENDENT ARBITRATION** Please read this paragraph carefully. It affects rights that you may otherwise have. (a) CINGULAR and you shall use our best efforts to settle any dispute or claim arising from or relating to this Agreement. To accomplish this, CINGULAR and you shall negotiate with each other in good faith. If CINGULAR and you do not reach agreement within 30 days, instead of suing in court, CINGULAR and you agree to arbitrate any and all disputes and claims (including but not limited to claims based on or arising from an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement for products or service between you and CINGULAR or any of your or CINGULAR's affiliates or predecessors in interest. The arbitration of any dispute or claim shall be conducted in accordance with the wireless industry arbitration rules ("WIA Rules") as modified by this Agreement and as administered by the American Arbitration Association ("AAA"). The WIA Rules and fee information are available from CINGULAR or the AAA upon request. CINGULAR and you acknowledge that this Agreement evidences a transaction in interstate commerce and that the United States Arbitration Act and Federal Arbitration Law shall govern the interpretation and enforcement of, and proceedings pursuant to, this or a prior agreement. Unless CINGULAR and you agree otherwise, the location of any

CINGULAR Wireless ("CINGULAR" or "we" "us" or "our") will provide its services on the following Terms and Conditions. Service is also subject to CINGULAR's standard business policies, practices and procedures that CINGULAR may change at any time without notice. Every use of the term "you" or "your" in these Terms and Conditions refers to the person or entity that is the customer of record. IMPORTANT NOTICE: THIS AGREEMENT CONTAINS MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE REFER TO THE SECTION ENTITLED "ARBITRATION" FOR DETAILS.

**AVAILABILITY OF LIMITED SERVICE** Service is generally available to wireless telephones equipped for the service when within the range of cell sites located in the service area. Service is furnished for you or your authorized user. CINGULAR will only accept orders, including those that involve the start, change or discontinuance of your service, from you or your authorized agent or other person able to provide certain account information that we require.

**SERVICE COMMITMENT** You have agreed to maintain service for a minimum term, the Service Commitment specified on the signature portion of this Agreement. The Service Commitment begins on the day your service is activated. If you have contracted for a Service Commitment greater than a month, in exchange you have received certain benefits from CINGULAR. You understand and agree that you now have certain contractual obligations and that CINGULAR's damages arising out of a breach thereof will be difficult, if not impossible, to determine. Therefore, if you terminate your service for any reason other than a change of terms, conditions, or rates as set forth below, or if CINGULAR terminates your service for nonpayment or other default before the end of the Service Commitment, you hereby agree to pay CINGULAR, as liquidated damages, and not as a penalty, in addition to all other amounts owed, the termination charge of $150 per wireless phone on the account ("Termination Fee"). AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL NOTICE IS GIVEN TO CINGULAR PURSUANT TO THE TERMINATION PROVISION BELOW. No Termination Fee will be charged for a termination of service with a month-to-month service commitment; provided, however, that there is no proration of the fixed monthly charge if service is terminated on other than the last day of your billing cycle.

**BILLING AND PAYMENT OF CHARGES** You will receive monthly bills that are due in full as shown thereon. Billing cycles may change from time to time. You are responsible for paying all charges for or resulting from services provided under this Agreement. Charges include, without limitation, airtime, roamer, recurring monthly service, administrative, and late payment charges; network surcharges; optional feature charges; toll, collect call and directory assistance charges; any other charges or calls billed to your wireless telephone number; and, applicable taxes and governmental fees, whether assessed directly upon you or upon CINGULAR. You agree that CINGULAR may add its own charges to those charged by third parties. The prices for service on the front of this Agreement do not include applicable taxes, fees, surcharges, or assessments. CINGULAR may add to your bill, and you agree to pay, such applicable taxes, fees, surcharges or assessments. Monthly service and certain feature charges are billed one month in advance. Roamer charges may appear on a bill after the bill for the period in which the roaming occurs. If your rate plan allows included minutes to be applied to roaming minutes, those minutes will be applied against your included minutes in the month in which the roaming calls appear on your bill. (Notwithstanding the foregoing, for PA, DE, NJ and Cecil County (MD), minutes of use are applied against your unused included minutes for the month that the call was made if billing for such use occurs in the same period or in the next bill period. Minutes of use billed more than one bill period after the call occurs and minutes of use in excess of included minutes are billed at the rate in effect for the bill period in which the call appears on the bill.)

You agree to pay for incoming and outgoing calls to and from your wireless telephone. Airtime and other measured usage (chargeable time) is billed in full minute increments and actual airtime and usage is rounded up to the next full minute increment at the end of each call for billing purposes, e.g., CINGULAR charges a full minute of airtime usage for every fraction of the last minute of airtime used on each wireless call. Chargeable time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with CINGULAR's facilities. Chargeable time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by CINGULAR's facilities and the call disconnect signal has been confirmed. All outgoing calls for which CINGULAR receives answer

CW700572 T&C W, C, GL, NE  7/5/01  9:10 AM  Page 7

supervision shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voice mail systems, private branch exchanges, and interexchange switching equipment. Chargeable time may include time for CINGULAR to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time; however, there will be no charged time for unanswered incoming calls, and no charged time for outgoing calls for which answer supervision is not received if chargeable time, including ring time, is under thirty (30) seconds. Chargeable time may also occur from other uses of CINGULAR facilities, including by way of example, voice mail deposits and retrievals, and call transfers. Calls that begin in one period and end in another period are billed at the rates for the period in which the call began. You must notify CINGULAR in writing of any disputed charges within sixty (60) days of the date of the bill containing the disputed charges or you will have waived your right to dispute the charges. If your wireless telephone is lost or stolen, you will be responsible for all charges incurred on your wireless number until you report the theft or loss and provide a police report number to CINGULAR. After you report the theft or loss to CINGULAR, you remain responsible for complying with your other obligations under this Agreement, including, but not limited to, payment of your monthly service fee. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. CINGULAR may require payment by money order, cashier's check or a similarly secure form of payment at its discretion. CINGULAR will charge you (a) up to $30.00 or (b) if less, the highest amount allowed by law, for any check or other instrument tendered by you and returned unpaid by a financial institution for any reason. You agree to pay to CINGULAR the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees and court costs, incurred by CINGULAR in exercising any of its rights and remedies when enforcing any provisions of this Agreement.

**CHANGES TO TERMS, CONDITIONS, RATES, FEES, EXPENSES, AND CHARGES** CINGULAR may increase, reduce or otherwise change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. This includes, without limitation, prime or peak hour periods, rate plans and features, billing practices, late charges, Termination Fees and all other terms and conditions of service, including these Terms and Conditions. CINGULAR will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other such governmentally imposed assessments, fees, and surcharges, whether or not assessed directly upon you, may be increased based upon government or CINGULAR calculations. IF CINGULAR INCREASES YOUR LOCAL AIRTIME RATE, MONTHLY SERVICE CHARGE OR NETWORK SURCHARGE, OR DECREASES THE GEOGRAPHICAL AREA IN WHICH YOUR LOCAL AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OF MAINTENANCE), YOU MAY TERMINATE SERVICE WITHIN THIRTY (30) DAYS OF THE DATE OF THE NOTICE WITHOUT INCURRING A TERMINATION FEE.

**WIRELESS TELEPHONE NUMBER** CINGULAR will assign you a wireless telephone number for your service. Unless pursuant to a specific CINGULAR rate plan, only one wireless telephone unit with a unique electronic serial number (ESN) or one International Mobile Equipment Identifier (IMEI) at any one time may use any one wireless telephone number. You have no property rights in the wireless telephone number and cannot acquire such rights through usage, publication or otherwise. CINGULAR may change this number or assign it to another user in its discretion. In the event number portability becomes effective, your account must first be paid in full in order to request transfer of the number to another carrier.

**WIRELESS TELEPHONE** You are responsible for the installation, operation and maintenance of your wireless telephone. You must ensure that your wireless telephone is compatible with, and will not interfere with, the service of CINGULAR, and that it complies with all applicable laws, rules and regulations. If your wireless phone is intelligent roaming capable, it shall be periodically programmed with default system settings for roaming service that cannot be changed manually. Your wireless telephone may be compatible only with CINGULAR services.

**LONG DISTANCE SERVICE** CINGULAR will provide your long distance service unless CINGULAR makes available other long distance carriers with whom it has contracted to provide long distance service to CINGULAR's customers

and you request one of those long distance carriers. If CINGULAR connects you to a long distance carrier other than the one you requested, CINGULAR is not responsible for charges you incur with another long distance carrier and is only responsible for connecting you to your requested carrier at the earliest opportunity after you have notified CINGULAR. Certain rate plans require use of CINGULAR's long distance service; please check the service plan brochure for details and restrictions.

**ADVANCE PAYMENTS AND/OR DEPOSITS** CINGULAR may require you to make a suitable advance payment for services that will be applied as a credit on your account or a suitable deposit that CINGULAR may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. CINGULAR shall determine the amount of the advance payment and deposit and may require additional advance payments or deposits if it determines that the initial payment was inadequate. This Agreement is conditioned upon our establishment of a credit limit based on your creditworthiness as we determine it, and certain restrictions on service or restrictions on features may apply based on the way we evaluate your creditworthiness. If your account limit goes beyond the limit we set for your account, we may immediately interrupt or suspend service until your account balance is brought below this limit. Additionally any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts, including Equipment accounts, in good standing to maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption and all other available collection remedies.

**LATE PAYMENT CHARGES** You agree that CINGULAR will incur damages, which are difficult to calculate, if you fail to pay your bill by the due date. Therefore, for amounts not paid by the due date, CINGULAR may apply, and you agree to pay, a late payment fee per month equal to $5 or, if less, the highest amount allowed by law as liquidated damages and not as a penalty. Notwithstanding the foregoing, the following late payment fees are charged in the identified markets: 1.5% of the balance carried forward to the next bill in CA, HI, ID, NV, PR, TX, VI and WA; and the greater of $4.95 or 1.5% of the balance carried forward in KS and MO.

**TERMINATION** Either party may terminate this Agreement at any time after your Service Commitment ends by giving at least thirty (30) days notice to the other party. CINGULAR may terminate this Agreement at any time without notice if it ceases to provide service in your home service area. CINGULAR may interrupt or terminate your service without notice for any conduct that it believes violates any of these Terms and Conditions or any terms and conditions of the collateral material regarding your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner to any of our representatives, or if we discover that you are under-age, or if you fail to pay when due any charges owed to CINGULAR or billed on your CINGULAR invoice, whether under this or another agreement or wireless number, or if CINGULAR has cause to believe that your phone is being used for a fraudulent purpose, or if service is used in a way that may adversely affect CINGULAR's service or is otherwise used in violation of applicable governmental rules or regulations, or if you provided inaccurate credit information or CINGULAR believes your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

**SERVICE INTERRUPTION** Service may be temporarily interrupted, delayed or otherwise limited for a variety of reasons, including, but not limited to, transmission limitations caused by atmospheric and other conditions, availability of radio frequency channels, system capacity limitations, coordination with other systems, equipment modifications and repairs, and problems associated with the facilities of interconnecting carriers. There are gaps in Service within the service areas shown on coverage maps. CINGULAR does not guarantee you uninterrupted service. Airtime and other service charges apply to all calls, including involuntarily terminated calls. Subject to the limitations below, if your service is interrupted for 24 continuous hours or more, CINGULAR will issue you, upon request, a credit equal to a prorata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. An interruption is measured from the time you report it to CINGULAR. CINGULAR may require that you request credit in writing. No credit will be given for a service interruption if evidence of the service interruption is, in CINGULAR's opinion, inconclusive or if the service interruption was caused by (a) your negligent or willful actions, (b) the failure of equipment or services not provided by CINGULAR or (c) causes beyond the control of CINGULAR. CINGULAR's liability to you for interruptions, delays and failures in transmission or service is

# EXHIBIT 11

# Terms of Service

## cingular
raising the bar ™

# TABLE OF CONTENTS

| | |
|---|---|
| Terms of Service | **1** |
| Service Commitment; Early Termination Fee | **1-2** |
| 30 Day Cancellation Period/Termination | **2** |
| Charges and Disputes | **2** |
| Billing and Payment | **3-5** |
| Dishonored Checks and Other Instruments | **5** |
| Changes to Terms and Rates | **5-6** |
| Contingent Benefits | **6-7** |
| Equipment | **7** |
| Advance Payments and/or Deposits | **7** |
| Late Payment Charges | **7-8** |
| Service Limitations; Limitation of Liability | **8-9** |
| Account Access | **10** |
| Voicemail Service | **10** |
| Arbitration | **10-12** |
| Credit Reporting Authorization | **12** |
| Miscellaneous | **12-13** |

# T E R M S   O F   S E R V I C E

"Cingular" or "we" "us" or "our" refers to Cingular Wireless LLC, acting on behalf of its FCC-licensed affiliates doing business as Cingular Wireless. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.**

## SERVICE COMMITMENT; EARLY TERMINATION FEE

Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions, or rates as set forth below, you agree to pay us with respect to each Equipment identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee of $175 ("Early Termination Fee"). The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment on which your rate plan is based. AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL EITHER PARTY GIVES NOTICE PURSUANT TO THE TERMINATION PROVISION BELOW.

1

## 30 DAY CANCELLATION PERIOD/TERMINATION

You may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. You will pay for service fees and charges incurred through the termination date, but Cingular will refund your activation fee, if any, if you terminate within three (3) days of activating the service. Also, you may have to return any handsets and accessories purchased with this Agreement. If you terminate after the 30th day but before expiration of the Agreement's Service Commitment, you will pay Cingular an Early Termination Fee for each wireless telephone number associated with the service. Either party may terminate this Agreement at any time after your Service Commitment ends with thirty (30) days notice to the other party. We may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner with any of our representatives, or if we discover that you are under age, or if you fail to make all required payments when due, or if we have reasonable cause to believe that your Equipment is being used for an unlawful purpose or in a way that may adversely affect our service, or if you provided inaccurate credit information or we believe your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

### CHARGES AND DISPUTES

You are responsible for paying all charges for or resulting from services provided under this Agreement. You will receive monthly bills that are due in full as shown thereon. YOU MUST, WITHIN 100 DAYS OF THE DATE OF THE BILL, NOTIFY US IN WRITING AT CINGULAR WIRELESS, BILL DISPUTE, SUITE 1400, 5565 GLENRIDGE CONNECTOR, P.O. BOX 16, ATLANTA, GA 30342 ("CINGULAR'S ADDRESS") OF ANY DISPUTE YOU HAVE WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL AND

2

SERVICE PROVIDED FOR WHICH YOU WERE BILLED, OR THAT YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE. Charges include, without limitation, airtime, roamer, recurring monthly service, activation, administrative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges, any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular. To determine your primary place of use ("PPU") and which jurisdiction's taxes and assessments to collect, you are required to provide us with your residential or business street address. If you do not provide us with such address, or if it falls outside our licensed service area, we may reasonably designate a PPU within the licensed service area for you.

**BILLING AND PAYMENT**
Except as provided below, monthly service and certain other charges are billed one month in advance, and there is no proration of such charges if service is terminated on other than the last day of your billing cycle. Monthly service and certain other charges are billed in arrears if you are a former customer of AT&T Wireless and maintain uninterrupted service on select Cingular rate plans, provided, however, that in either case, if you elect to receive your bills for your Cingular services combined with your landline phone bill (where available) you will be billed in advance as provided above. You agree to pay for incoming and outgoing calls, and data services sent to and from your Equipment. AIRTIME AND OTHER MEASURED USAGE ("CHARGEABLE TIME") ARE BILLED IN FULL-MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE ARE ROUNDED UP TO THE NEXT FULL MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. CINGULAR CHARGES A FULL MINUTE OF AIRTIME

3

WIRELESS CALL. DATA TRANSPORT IS BILLED IN FULL-KILOBYTE INCREMENTS, AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL-KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR BILLING PURPOSES. CINGULAR CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORK OVERHEAD, SOFTWARE UPDATE REQUESTS, AND RE-SEND REQUESTS CAUSED BY NETWORK ERRORS CAN INCREASE MEASURED KILOBYTES. If you select a rate plan that includes a predetermined allotment of Services (for example, a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as a part of such rate plan, any unused allotment of services from one billing cycle will not carry over to any other billing cycle. We may bill you in a format as we determine from time to time. Additional charges may apply for additional copies of your bill, or for detailed information about your usage of Services. Charges for usage of services on networks maintained by other carriers or on networks acquired by Cingular after August 31, 2004 may appear on your bill after the billing cycle in which the usage occurred. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the call disconnect signal has been confirmed. All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time.

4

charges and use may also occur from other uses of our facilities, including by way of example, voice mail deposits and retrievals, and call transfers. Calls that begin in one rate period and end in another rate period may be billed in their entirety at the rates for the period in which the call began. If your wireless phone or other device ("Equipment") is lost or stolen, **you will be responsible for all charges incurred on your phone number until you report the theft or loss and provide a police report number to us**. After you report the theft or loss to us, you remain responsible for complying with your other obligations under this Agreement, including, but not limited to, payment of your monthly service fee. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. We may require payment by money order, cashier's check or a similarly secure form of payment at our discretion.

## DISHONORED CHECKS AND OTHER INSTRUMENTS

We will charge you $30.00 or the highest amount allowed by law, whichever is less, for any check or other instrument (including credit card chargebacks) tendered by you and returned unpaid by a financial institution for any reason. You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts.

## CHANGES TO TERMS AND RATES

We may change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. We will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other governmentally imposed fees, whether or not assessed directly upon you, may be increased

5

based upon the government's own calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU SUBSCRIBE, BEYOND THE LIMITS SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE MATERIALLY DECREASE THE GEOGRAPHICAL AREA IN WHICH YOUR AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL DISCLOSE THE CHANGE AT LEAST ONE BILLING CYCLE IN ADVANCE (EITHER THROUGH A NOTICE WITH YOUR BILL, A TEXT MESSAGE TO YOUR EQUIPMENT, OR OTHERWISE) AND YOU MAY TERMINATE THIS AGREEMENT WITHOUT PAYING AN EARLY TERMINATION FEE OR RETURNING OR PAYING FOR ANY PROMOTIONAL ITEMS, PROVIDED YOUR NOTICE OF TERMINATION IS DELIVERED TO US WITHIN THIRTY (30) DAYS AFTER THE FIRST BILL REFLECTING THE CHANGE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

**CONTINGENT BENEFITS**
You may receive or be eligible for certain rate plans, discounts, features, promotions, and other benefits ("Benefits") through a business or government customer's agreement with us ("Business Agreement"). Any and all such Benefits are provided to you solely as a result of the corresponding Business Agreement and such Benefits may be modified or terminated without notice. If a business or government entity pays your charges or is otherwise liable for the charges, you authorize us to share your account information with that entity and /or its authorized agents. If you are on a rate plan and/or receive certain Benefits tied to a Business Agreement with us, but you are liable for your own charges, then you authorize us to share enough account information with that entity and/or its authorized agents to verify your continuing eligibility for those Benefits and/or rate plan. You may receive Benefits because of your agreement to have the charges for your Service billed ("Joint Billing") by a landline company affiliated with Cingular ("Affiliate") or because you subscribe to certain service provided by an Affiliate. If you cancel Joint

6

Billing for the affiliate service you utilize will be adjusted without notice to a regular tool which you qualify.

### EQUIPMENT

Your Equipment must be compatible with, and not interfere with, our service, and must comply with all applicable laws, rules and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Equipment purchased for use on our network may not function on other networks.

### ADVANCE PAYMENTS AND/OR DEPOSITS

We may require you to make deposits or advance payments for services, which we may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. We may require additional advance payments or deposits if we determine that the initial payment was inadequate. Based on your creditworthiness as we determine it, we may establish a credit limit and restrict service or features. If your account balance goes beyond the limit we set for you, we may immediately interrupt or suspend service until your balance is brought below the limit. Any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts in good standing to maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

### LATE PAYMENT CHARGES

Late payment charges are based on the state to which the area code of the wireless telephone number assigned to you is assigned by the North American Numbering Plan Administration (for area code assignments see

7

http://www.nationalnanpa.com/area_code_maps). You agree that if amounts are not paid by the due date, CINGULAR may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5.00 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, PA, OK, OH, RI, VA, VT, WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

**SERVICE LIMITATIONS; LIMITATION OF LIABILITY**
Service may be interrupted, delayed or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g. 976, 900 and international destinations) or certain websites in our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the Service and may screen and delete information prior to delivery of that information to you. **There are gaps in service within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND.** Airtime and other service charges apply to all calls, including involuntarily terminated calls. CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTIC-ULAR PURPOSE, SUITABILITY, OR PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL CINGULAR BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omis-sions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment,

8

including use in a vehicle; (d) claim against you by third parties; (e) damage or injury caused by a suspension or termination of service by Cingular; or (f) damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. Our liability to you for service failures is limited solely to the credit set forth above. Unless applicable law precludes parties from clauses, Cingular shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through Cingular, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold Cingular and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by Cingular or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of this Agreement. This obligation shall survive termination of your service with Cingular. Cingular is not liable to you for changes in operation, equipment or technology that cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**ACCOUNT ACCESS**
You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you.

**VOICEMAIL SERVICE**
We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

**ARBITRATION**
**Please read this carefully.** It affects your rights. Cingular and you (such references include our respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate all disputes and claims (including ones that already are the subject of litigation) arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between Cingular and you. Notwithstanding the foregoing, either party may bring an individual action in small claims court. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Intent to Arbitrate ("Notice"). The Notice to Cingular should be addressed to: General Counsel, Cingular Wireless, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Arbitration Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If we do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. After Cingular receives notice at the Arbitration Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. All issues are for the arbitra-

to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. The arbitration shall be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and shall be administered by the AAA. The AAA Rules are available at www.adr.org or by writing to the Arbitration Notice Address. Except as otherwise provided for herein, Cingular will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then the payment of all such fees shall be governed by the AAA Rules. In such case, you agree to reimburse Cingular for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules. If the arbitrator grants relief to you that is equal to or greater than the value of your Demand, Cingular shall reimburse you for your reasonable attorneys' fees and expenses incurred for the arbitration. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees and expenses at any time during the proceeding and upon request from either party within 14 days of the arbitrator's ruling on the merits. **You agree that, by entering into this Agreement, you and Cingular are waiving the right to a trial by jury**. Unless Cingular and you agree otherwise, all hearings conducted as part of the arbitration shall take place in the county (or parish) of your billing address. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may

11

to consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void. Notwithstanding any provision in this Agreement to the contrary, we agree that if Cingular makes any change to this arbitration provision (other than a change to the Arbitration Notice Address) during your Service Commitment, you may reject any such change and require Cingular to adhere to the language in this provision.

**CREDIT REPORTING AUTHORIZATION**

You authorize Cingular to: (a) disclose your account information, including your payment history and confidential information, to credit reporting agencies or private credit reporting associations, and (b) periodically obtain and use your credit report and other credit information from any source in connection with Cingular's offering of wireless and other services. You understand that if you fail to fulfill the terms of your credit obligations under this Agreement, Cingular may report your failure to a credit reporting agency.

**MISCELLANEOUS**

This Agreement, the signature or rate summary sheet, the terms included in the rate brochure(s) describing your plan and services, terms of service for products and services not otherwise described herein that are posted on applicable Cingular websites, and any documents expressly referred to herein or therein, make up the complete agreement between you and Cingular, and supersede any and all prior agreements and under- standings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the

12

arbitration clause, if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. Cingular may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law. Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information. You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you. In any event, we reserve the right to contact you by any means regarding customer service related notifications, or other such information. The original version of this Agreement is the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version.

13



79303

Cingular and the graphic icon are registered trademarks of Cingular Wireless, LLC. Raising The Bar is a service mark of Cingular Wireless, LLC. © 2006 Cingular Wireless, LLC. All rights reserved.

FMS TC T 0206 0088 E

# EXHIBIT 12

Page:                1 of 37
Billing Cycle Date: 11/15/06 - 12/14/06
Account Number: ▄▄▄▄▄
Bill Reprint

**How To Contact Us:**
- 1-800-331-0500 or 611 from your cell phone
- For Deaf/Hard of Hearing Customers (TTY/TDD) 1-866-241-6567

Wireless Numbers with Rollover



| | |
|---|---:|
| Previous Balance | 725.83 |
| Payment Posted | -473.35 |
| **PAST DUE BALANCE** **Payable Immediately** | **252.48** |
| Monthly Service Charges | 179.92 |
| Usage Charges | 11.71 |
| Credits/Adjustments/Other Charges | 73.11 |
| Government Fees & Taxes | 25.12 |
| **TOTAL CURRENT CHARGES** Due Jan 04, 2007 Late fees assessed after Jan 14 | **289.86** |

**Total Amount Due  $542.34**

## NOTICE OF DISPUTE RESOLUTION AGREEMENT IN CONTRACT

We are pleased to advise you that Cingular has revised the
ARBITRATION CLAUSE in our standard Wireless Service Agreement
to make it even better for consumers. The revised arbitration clause
can be found at www.cingular.com/disputeresolution.
This revision is effective immediately.

Return the portion below with
payment to Cingular Wireless only.

*P.O. BOX 755*
*ATWATER, CA 95301-0755*

| | |
|---|---|
| Account Number: | ▄▄▄▄▄ |
| Total Amount Due: | $542.34 |
| Amount Paid: | |
| $ | |

*Please do not send correspondence with payment.*

BABAK PISHVAEE

ılıllıllıullıulıllılııullılıllıl

Please Make Check Payable To:

Cingular Wireless
PO Box 60017
Los Angeles, CA 90060-0017

ılıllıllıullıllıllıullıullıllıl

9100000016486980100000000028986000000542340 08

# EXHIBIT 13

Page:           1 of 34
Billing Cycle Date: 12/15/06 - 01/14/07
Account Number:
Bill Reprint

**How To Contact Us:**
- 1-800-331-0500 or 611 from your cell phone
- For Deaf/Hard of Hearing Customers (TTY/TDD)
  1-866-241-6567

Wireless Numbers with Rollover



| | |
|---|---:|
| Previous Balance | 542.34 |
| Payments Posted | -542.34 |
| **BALANCE** | 0.00 |
| Monthly Service Charges | 179.92 |
| Usage Charges | 13.51 |
| Credits/Adjustments/Other Charges | 86.75 |
| Government Fees & Taxes | 25.24 |
| **TOTAL CURRENT CHARGES** | 305.42 |
| Due  Feb 04, 2007 | |
| Late fees assessed after Feb 14 | |

**Total Amount Due  $305.42**

## NOTICE OF DISPUTE RESOLUTION AGREEMENT IN CONTRACT

We are pleased to advise you that Cingular has revised the
ARBITRATION CLAUSE in our standard Wireless Service Agreement
to make it even better for consumers.  The revised arbitration clause
can be found at www.cingular.com/disputeresolution.
This revision is effective immediately.

Return the portion below with
payment to Cingular Wireless only.

*P.O. BOX 755*
*ATWATER, CA 95301-0755*

| | |
|---|---|
| Account Number: | |
| Total Amount Due: | $305.42 |
| Amount Paid: | |
| $ | |

*Please do not send correspondence with payment.*

BABAK PISHVAEE

lldllllldllllllldllllldlllllllllldlllllllllldlllllllll

Total Amount
Due by Feb 04, 2007

Please Make Check Payable To:

Cingular Wireless
PO Box 60017
Los Angeles, CA 90060-0017

lldllllldllllldlllldlllllllldlllllllllldlllllllldllllllll

9100000001648698010000000000305420000003054200 2

**EXHIBIT 14**

Page:                    44 of 45
Billing Cycle Date: 01/15/07 - 02/14/07
Account Number:
Bill Reprint

## Usage Charge Details

User Name: BABAK PISHVAEE

| Summary of Wireless Data | Msg/KB/Min Included In Plan | Msg/KB/Min Used | Billed Msg/KB/Min | Billed Rate | Total Charge |
|---|---|---|---|---|---|
| MEdiaNet1mb INTERNET XPRESS | 1 024 | 0 | | | 0.00 |
| **TOTAL USAGE CHARGES** | | | | | **$0.00** |

### ***This Bill Includes A Past Due Balance***

If payment has already been made, thank you, please disregard. If not, payment
must be made immediately to avoid suspension of service. Please send your
payment, including current charges, in the enclosed envelope. You may also pay
24 hours a day by major credit card or electronic check at 866-CINGULAR. or
www.cingular.com. If your service is suspended a reconnection fee will apply.
If you have questions regarding your account contact us at 800-947-5096.

### NOTICE OF DISPUTE RESOLUTION AGREEMENT IN CONTRACT

We are pleased to advise you that Cingular has revised the
ARBITRATION CLAUSE in our standard Wireless Service Agreement
to make it even better for consumers. The revised arbitration clause
can be found at www.cingular.com/disputeresolution.
This revision is effective immediately.

### Auto Pay Authorization Agreement

If I enroll in AutoPay by phone, I authorize Cingular Wireless
to pay my bill monthly by electronically deducting money from my
bank account. I can cancel authorization by notifying Cingular
at www.cingular.com, calling 1-800-331-0500, or dialing 611 from
my cellphone. If my bank rejects a payment, I may be charged a
return fee up to $30.

### The Easiest Way to Pay Your Bill

Pay your Cingular bill automatically using the bank account,
credit card or debit card of your choice. Enjoy peace of
mind knowing that your bill will be paid on time with no checks,
envelopes or stamps. Enrolling is easy - just go to
www.cingular.com, Log in to My Cingular (or Register if you
don't already have an account) and click on Sign Up for AutoPay
to enroll.

### Early Nights & Weekends calling, 7 PM to 7 AM

Increase your night and weekend calling hours with our Early
Extended Nights and Weekends package. Start your nights at
7pm for only $8.99 ($16.99 for Family Talk accounts). You'll
have 3 extra hours per day, which gives you up to 3,600 more
minutes per mobile per month. Visit www.cingular.com for
additional information.

# EXHIBIT 15

Page:                41 of 42
Billing Cycle Date: 02/15/07 - 03/14/07
Account Number: ▓▓▓▓▓▓
Bill Reprint

Questions? Call 1-800-331-0500 or 611 from your wireless phone.

## Call Detail (Continued)

**User Name: BABAK PISHVAEE**

Rate Code: RM21=Rollover FM 2100, ESM1=Unlimited Expd M2M, UNW9=Unlimited N&W
Rate Period (PD): DT=Daytime, NW=Nwknd
Feature: M2MC=EXPANDED M2M  VM=VOICE MAIL

| Item | Day | Date | Time | Number Called | Call To | Min | Rate Code | Rate Pd | Fea-ture | Airtime Charge | LD/Add'l Charge | Total Charge |
|------|-----|------|------|---------------|---------|-----|-----------|---------|----------|----------------|-----------------|--------------|
| 76 | | 03/14 | 3:46PM | ▓▓▓▓ | BEVERL CA | 2 | ESM1 | DT | M2MC | | | 0.00 |
| | | | Subtotal Minutes | | | 372 | | | | | | 0.00 |
| Totals | | | | | | 372 | | | | | | 0.00 |
| | Interstate Calls Subtotal | | | | 0.00 | | | | | | | |
| | Intrastate Calls Subtotal | | | | 0.00 | | | | | | | |

## Data Detail

**User Name: BABAK PISHVAEE**

Rate Code: TMA2=Text Messaging 50
Rate Period (PD): AT=Anytime
Feature: SMH=SMS $0.1 MO/MT

| Item | Day | Date | Time | To/From | Type | Msg/KB/Min | Rate Code | Rate Pd | Fea-ture | In/Out | Total Charge |
|------|-----|------|------|---------|------|------------|-----------|---------|----------|--------|--------------|
| 1 | MON | 03/12 | 12:05PM | ▓▓▓▓ | MTM Other Txt M | 1 Msg | TMA2 | AT | SMH | Out | 0.00 |
| 2 | TUE | 03/13 | 2:38PM | ▓▓▓▓ | M2M TEXT MESSAG | 1 Msg | TMA2 | AT | SMH | In | 0.00 |
| | | | Subtotal of Msg's | | | 2 Msg | | | | | 0.00 |
| Totals | | | | | | | | | | | 0.00 |
| | Interstate Calls Subtotal | | | | 0.00 | | | | | | |
| | Intrastate Calls Subtotal | | | | 0.00 | | | | | | |

### ***This Bill Includes A Past Due Balance***

If payment has already been made, thank you, please disregard. If not, payment
must be made immediately to avoid suspension of service. Please send your
payment, including current charges, in the enclosed envelope. You may also pay
24 hours a day by major credit card or electronic check at 866-CINGULAR, or
www.cingular.com. If your service is suspended a reconnection fee will apply.
If you have questions regarding your account contact us at 800-947-5096.

### NOTICE OF DISPUTE RESOLUTION AGREEMENT IN CONTRACT

We are pleased to advise you that Cingular has revised the
ARBITRATION CLAUSE in our standard Wireless Service Agreement
to make it even better for consumers. The revised arbitration clause
can be found at www.cingular.com/disputeresolution.
This revision is effective immediately.

### Auto Pay Authorization Agreement

If I enroll in AutoPay by phone, I authorize Cingular Wireless
to pay my bill monthly by electronically deducting money from my
bank account. I can cancel authorization by notifying Cingular
at www.cingular.com, calling 1-800-331-0500, or dialing 611 from
my cellphone. If my bank rejects a payment, I may be charged a
return fee up to $30.

# EXHIBIT 16

# Consumer iTunes Activation Process





Welcome to Your New iPhone



**Let's get started:**

1. Activate your iPhone with AT&T

2. Register and get an iTunes Store Account

3. Put your contacts, music, and more on your iPhone

? Cancel                                                    Continue

Copyright © 2007 Apple Inc. All rights reserved. | Privacy Policies | Terms & Conditions



# Consumer iTunes Activation Process





Are You a New or Existing AT&T (Cingular) Wireless Customer?

**I am an existing AT&T (Cingular) wireless customer:**

- ● Replace a phone on my account with this iPhone.
- ○ Add a new line to my existing account.

**I am a new AT&T wireless customer:**

- ○ Activate one iPhone now.
- ○ Activate two or more iPhones on an Individual or FamilyTalk Plan.

(?)  [ Cancel ]                                    [ Go Back ]  [ Continue ]

Copyright © 2007 Apple Inc. All rights reserved. | Privacy Policies | Terms & Conditions



# Consumer iTunes Activation Process





AT&T (Cingular) Account Information

Please enter your AT&T (Cingular) wireless account information:

Your Current Mobile Number:  `513`  `4100449`

Billing Zip Code* :  `30004`

Last 4 Digits of Social
Security Number* :  `1046`    Why do we
need this?

\* Enter this information for primary account holder.

( ? )  ( Cancel )                                    ( Go Back )  ( Continue )

Copyright © 2007 Apple Inc. All rights reserved. | Privacy Policies | Terms & Conditions



# Consumer iTunes Activation Process



AT&T iPhone Data Plan

A data plan has been created to take advantage of the innovative features of the iPhone. This bundle includes Unlimited Data, Visual Voicemail, and SMS Text Messaging and will replace your existing AT&T (Cingular) data plan or features. Your voice plan will not change.

① iPhone Data Plan is **$20.00** per month. This includes:

| | |
|---|---|
| **Unlimited Data** (Email/Web) | ☐ |
| **Visual Voicemail** | ☐ |
| **SMS Text Messages** | **200** |

**Learn More** ⊕

② Upgrade to even more SMS Text Messages per month:

◉ No Thanks

○ **1500 SMS Text Messages**                    $10.00

○ **Unlimited SMS Text Messages**              $20.00

All plans require a 2-year AT&T service agreement, an activation fee, and are subject to AT&T credit approval. A wireless service plan with AT&T is required to use the wireless phone capabilities of your iPhone.

 at&t

# Consumer iTunes Activation Process





# Consumer iTunes Activation Process





# Consumer iTunes Activation Process





Accept AT&T Service Agreement

By checking "I have read and agree to the service agreement", you will be bound to the following for the two-year term of the agreement:
1) the Terms of Service, including the binding arbitration clause;
2) the "Plan Terms" and other information regarding your Rate Plan contained on the Rate Plan page; and
3) the terms and conditions and other information regarding features provided on the page where you selected your features. Printed materials containing much of this information will also be provided to you.* If you terminate this Agreement before expiration of your Service Commitment, you will pay Cingular an Early Termination Fee of $175 for each wireless telephone number associate with this service. To terminate this agreement, call customer service. If you prefer not to agree to these terms electronically, click cancel and visit one of our stores.

TERMS OF SERVICE:
"AT&T" or "we," "us" or "our" refers to AT&T Mobility LLC acting on behalf of its FCC-licensed affiliates doing business as AT&T. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.

SERVICE COMMITMENT; EARLY TERMINATION FEE
Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with

☑ I have read and agree to the AT&T Service Agreement.

**Printable Version** ⊕

Cancel                                                            Go Back      Continue



# Consumer iTunes Activation Process




Review Your Information

AT&T Billing Address:

NEWGLRR TESTINGBN
5405 WINDWARD PKWY
ALPHARETTA, GA 30004
orttester2@yahoo.com

Changes to wireless phone number: 513-410-0449

AT&T iPhone Data Plan                                        $20.00

iPhone Data Plan + 200 Text          $20.00
Plan includes Unlimited Data (Email/Web), Visual Voicemail, and 200
SMS Text Messages.

New 2-Year AT&T Service Agreement

Visual voicemail requires a new voicemail box. **All current voicemail messages will be erased.** Please listen to
any existing voicemails before clicking Submit.

iPhone is covered by the Apple warranty. If you currently have handset insurance from AT&T it will be removed.

Clicking Submit will modify your wireless service with AT&T and register your iPhone with Apple.






# Consumer iTunes Activation Process



Processing Activation

Please wait while AT&T is processing your activation.
This may take up to 3 minutes.





# Consumer iTunes Activation Process





# EXHIBIT 17

# Terms of
# Service



TABLE OF CONTENTS

| | |
|---|---|
| Terms of Service | 1 |
| Service Commitment; Early Termination Fee | 1 |
| 30-Day Cancellation Period/Termination | 2 |
| Charges and Disputes | 2-3 |
| Unlimited Voice Services | 3 |
| Off-Net Usage | 4 |
| Billing and Payment | 4-6 |
| Dishonored Checks and Other Instruments | 6 |
| Changes to Terms and Rates | 6-7 |
| Contingent Benefits | 7 |
| Equipment | 8 |
| Advance Payments and/or Deposits | 8 |
| Late Payment Charges | 8-9 |
| Service Limitations; Limitation of Liability | 9-10 |
| Account Access | 11 |
| Voicemail Service | 11 |
| Dispute Resolution by Binding Arbitration | 11-12 |
| Arbitration Agreement | 12-15 |
| Miscellaneous | 15-16 |

T E R M S   O F   S E R V I C E

"AT&T" or "we," "us" or "our" refers to AT&T Mobility LLC acting on behalf of its FCC-licensed affiliates doing business as AT&T. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.**

**SERVICE COMMITMENT; EARLY TERMINATION FEE**
Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions, or rates as set forth below, you agree to pay us with respect to each Equipment identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee of $175 ("Early Termination Fee"). The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment on which your rate plan is based. AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL EITHER PARTY GIVES NOTICE PURSUANT TO THE TERMINATION PROVISION BELOW.

**1**

## 30-DAY CANCELLATION PERIOD/TERMINATION

You may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. You will pay for service fees and charges incurred through the termination date, but AT&T will refund your activation fee, if any, if you terminate within three (3) days of activating the service. Also, you may have to return any handsets and accessories purchased with this Agreement. If you terminate after the 30th day but before expiration of the Agreement's Service Commitment, you will pay AT&T an Early Termination Fee for each wireless telephone number associated with the service. Either party may terminate this Agreement at any time after your Service Commitment ends with thirty (30) days notice to the other party. We may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory, or similarly unreasonable manner with any of our representatives, or if we discover that you are under age, or if you fail to make all required payments when due, or if we have reasonable cause to believe that your Equipment is being used for an unlawful purpose or in a way that may adversely affect our service, or if you provided inaccurate credit information or we believe your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

## CHARGES AND DISPUTES

You are responsible for paying all charges for or resulting from services provided under this Agreement. You will receive monthly bills that are due in full as shown thereon. YOU MUST, WITHIN 100 DAYS OF THE DATE OF THE BILL, NOTIFY US IN WRITING AT AT&T, BILL DISPUTE, SUITE 1400, 5565 Glenridge Connector, P.O. BOX 16, ATLANTA, GA 30342 ("AT&T'S ADDRESS") OF ANY DISPUTE YOU HAVE WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL AND ANY SERVICE WE PROVIDED FOR WHICH YOU WERE BILLED,

2

WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE. Charges include, without limitation, airtime, roaming, recurring monthly service, activation, administrative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges, any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon AT&T. To determine your primary place of use ("PPU") and which jurisdiction's taxes and assessments to collect, you are required to provide us with your residential or business street address. If you do not provide us with such address, or if it falls outside our licensed service area, we may reasonably designate a PPU within the licensed service area for you. Subscriber must live and have a mailing address within AT&T's owned network coverage area.

**UNLIMITED VOICE SERVICES**
Unlimited voice services are provided solely for live dialog between two individuals. Unlimited voice services may not be used for conference calling, call forwarding, monitoring services, data transmissions, transmission of broadcasts, transmission of recorded material, or other connections which do not consist of uninterrupted live dialog between two individuals. If AT&T finds that you are using an unlimited voice service offering for other than live dialog between two individuals, AT&T may at its option terminate your service, or change your plan to one with no unlimited usage components. AT&T will provide notice that it intends to take any of the above actions and you may terminate the agreement.

**OFF-NET USAGE**

If your minutes of use (including unlimited services) on other carrier networks ("off-net usage") during any two consecutive months exceeds your off-net usage allowance, AT&T may at its option terminate your service, deny your continued use of other carriers' coverage, or change your plan to one imposing usage charges for off-net usage. Your off-net usage allowance is equal to the lesser of 750 minutes or 40% of the Anytime Minutes included with your plan. AT&T will provide notice that it intends to take any of the above actions and you may terminate the agreement.

**BILLING AND PAYMENT**

Except as provided below, monthly service and certain other charges are billed one month in advance, and there is no proration of such charges if service is terminated on other than the last day of your billing cycle. Monthly service and certain other charges are billed in arrears if you are a former customer of AT&T Wireless and maintain uninterrupted service on select AT&T rate plans, provided, however, that in either case, if you elect to receive your bills for your AT&T services combined with your landline phone bill (where available) you will be billed in advance as provided above. You agree to pay for incoming and outgoing calls, and data services sent to and from your Equipment. AIRTIME AND OTHER MEASURED USAGE ("CHARGEABLE TIME") IS BILLED IN FULL-MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE ARE ROUNDED UP TO THE NEXT FULL-MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. AT&T CHARGES A FULL MINUTE OF AIRTIME USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRELESS CALL. DATA TRANSPORT IS BILLED IN FULL-KILOBYTE INCREMENTS, AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL-KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR BILLING PURPOSES. AT&T CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORK OVERHEAD, SOFTWARE UPDATE REQUESTS, AND RESEND REQUESTS

4

that includes a predetermined allotment of services (for example, a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as a part of such rate plan, any unused allotment of services from one billing cycle will not carry over to any other billing cycle. We may bill you in a format as we determine from time to time. Additional charges may apply for additional copies of your bill, or for detailed information about your usage of services. Charges for usage of services on networks maintained by other carriers or on networks acquired by AT&T after August 31, 2004, may appear on your bill after the billing cycle in which the usage occurred. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the call disconnect signal has been confirmed. All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time. Chargeable Time may also occur from other uses of our facilities, including by way of example, voicemail deposits and retrievals, and call transfers. Calls that begin in one rate period and end in another rate period may be billed in their entirety at the rates for the period in which the call began. If your wireless phone or other device ("Equipment") is lost or stolen, you must contact us immediately to report the Equipment lost or stolen. You may be responsible for all charges incurred on your phone number until you report the theft or loss. You will cooperate with us in the investigation of the loss or theft and will provide a police report number to us if requested. AT&T will take into account the information provided

**5**

by the customer to evaluate on an individual basis whether the grounds exist or further exist
You also remain responsible for paying your monthly service fee if your service is suspended
for nonpayment. We may require payment by money order, cashier's check, or a similarly
secure form of payment at our discretion.

**DISHONORED CHECKS AND OTHER INSTRUMENTS**
We will charge you $30 or the highest amount allowed by law, whichever is less, for
any check or other instrument (including credit card chargebacks) tendered by you and
returned unpaid by a financial institution for any reason. You agree to reimburse us the
fees of any collection agency, which may be based on a percentage at a maximum of 33%
of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in
such collection efforts.

**CHANGES TO TERMS AND RATES**
We may change any terms, conditions, rates, fees, expenses, or charges regarding your
service at any time. We will provide you with notice of such changes (other than changes
to governmental fees, proportional charges for governmental mandates, roaming rates or
administrative charges) either in your monthly bill or separately. You understand and agree
that State and Federal Universal Service fees and other governmentally imposed fees,
whether or not assessed directly upon you, may be increased based upon the government's
or our calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU
SUBSCRIBE, BEYOND THE LIMITS SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE
MATERIALLY DECREASE THE GEOGRAPHICAL AREA IN WHICH YOUR AIRTIME RATE APPLIES
(OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL
DISCLOSE THE CHANGE AT LEAST ONE BILLING CYCLE IN ADVANCE (EITHER THROUGH A
NOTICE WITH YOUR BILL, A TEXT MESSAGE TO YOUR EQUIPMENT, OR OTHERWISE) AND
YOU MAY TERMINATE THIS AGREEMENT WITHOUT PAYING AN EARLY TERMINATION FEE

6

OR FOR USING OR PAYING FOR ANY ADDITIONAL ITEMS, PROVIDED YOUR NOTICE OF TERMINATION IS DELIVERED TO US WITHIN THIRTY (30) DAYS AFTER THE FIRST BILL REFLECTING THE CHANGE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

**CONTINGENT BENEFITS**
You may receive or be eligible for certain rate plans, discounts, features, promotions, and other benefits ("Benefits") through a business or government customer's agreement with us ("Business Agreement"). Any and all such Benefits are provided to you solely as a result of the corresponding Business Agreement, and such Benefits may be modified or terminated without notice. If a business or government entity pays your charges or is otherwise liable for the charges, you authorize us to share your account information with that entity and/or its authorized agents. If you are on a rate plan and/or receive certain Benefits tied to a Business Agreement with us, but you are liable for your own charges, then you authorize us to share enough account information with that entity and/or its authorized agents to verify your continuing eligibility for those Benefits and/or that rate plan. You may receive Benefits because of your agreement to have the charges for your service billed ("Joint Billing") by a landline company affiliated with AT&T ("Affiliate") or because you subscribe to certain service provided by an Affiliate. If you cancel Joint Billing or the Affiliate service your rates will be adjusted without notice to a rate plan for which you qualify.

**7**

**EQUIPMENT**

Your Equipment must be compatible with, and not interfere with, our service, and must comply with all applicable laws, rules, and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Equipment purchased for use on AT&T's system is designed for use exclusively on AT&T's system. You agree that you will not make any modifications to the Equipment or programming to enable the Equipment to operate on any other system. AT&T may in it's sole and absolute discretion modify the programming to enable the operation of the Equipment on other systems. You can get details on AT&T policies for modifying Equipment by calling 1-866-246-4852.

**ADVANCE PAYMENTS AND/OR DEPOSITS**

We may require you to make deposits or advance payments for services, which we may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. We may require additional advance payments or deposits if we determine that the initial payment was inadequate. Based on your creditworthiness as we determine it, we may establish a credit limit and restrict service or features. If your account balance goes beyond the limit we set for you, we may immediately interrupt or suspend service until your balance is brought below the limit. Any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts in good standing to maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

**LATE PAYMENT CHARGES**

Late payment charges are based on the state to which the area code of the wireless telephone number assigned to you is assigned by the North American Numbering Plan

administration (off-area code assignment, see http://www.nationalnanpa.com/area_code_maps).

You agree that for amounts not paid by the due date, AT&T may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, OH, OK, PA, RI, VA, VT WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

**SERVICE LIMITATIONS; LIMITATION OF LIABILITY**

Service may be interrupted, delayed, or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g. 976, 900, and international destinations) or certain web sites at our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the service and may screen and delete information prior to delivery of that information to you. There are gaps in service within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND. Airtime and other service charges apply to all calls, including involuntarily terminated calls. AT&T MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL AT&T BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays, or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment, including use in a vehicle; (d) claims against you by third parties; (e) damage or injury caused by a suspension or termination of service by AT&T; or (f) damage or

**9**

injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. Our liability to you for service failures is limited solely to the credit set forth above. Unless applicable law precludes parties from contracting to so limit liability, and provided such law does not discriminate against arbitration clauses, AT&T shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold AT&T and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by AT&T or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF AT&T, or any violation by you of this Agreement. This obligation shall survive termination of your service with AT&T. AT&T is not liable to you for changes in operation, equipment, or technology that cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**10**

**ACCOUNT ACCESS**
You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you.

**VOICEMAIL SERVICE**
We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**
**Please read this carefully. It affects your rights.**

**Summary:**
Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 800-331-0500. **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will

**11**

pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

**ARBITRATION AGREEMENT**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
- claims that may arise after the termination of this Agreement.

References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us. Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address").

**12**

the Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled. You may download or copy a form Notice and a form to initiate arbitration at: http://www.cingular.com/arbitration-forms.

(3) After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information that is designed for non-lawyers, about the arbitration process at http://www.cingular.com/arbitration-information.) All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration, and arbitrator fees for any arbitration initiated

**13**

in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and
- greater than the value of AT&T's last written settlement offer made before an arbitrator was selected,

then AT&T will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address ("the premium") instead of the arbitrator's award; and
- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

**14**

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provison is found to be unenforceable, then the entirety of this arbitration provison shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

**MISCELLANEOUS**
This Agreement, the signature or rate summary sheet, the terms included in the rate brochure(s) describing your plan and services, terms of service for products and services not otherwise described herein that are posted on applicable AT&T web sites, and any

**15**

documents expressly referred to or incorporated therein make up the complete agreement between you and AT&T, and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the arbitration clause; if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. AT&T may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law. Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information. You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you. In any event, we reserve the right to contact you by any means regarding customer service-related notifications, or other such information. The original version of this Agreement is in the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version.

**16**

**17**


cingular is now

The new at&t

76118

© 2007 AT&T Knowledge Ventures. All rights reserved. AT&T, AT&T logo, Cingular and Cingular logos are trademarks of AT&T Knowledge Ventures and/or AT&T affiliated companies.

FMS TC T 0307 0097 E