UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| BABAK PISHVAEE, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., a Califonia corporation, M-QUBE, INC., a Delaware corporation, and AT&T MOBILITY LLC, formerly known as Cingular Wireless LLC, a Delaware corporation,<br><br>Defendants. | Case No.: C-07-3407<br><br>**DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT** |

I, Richard A. Nagareda, hereby declare as follows:

1. I am a tenured Professor of Law at Vanderbilt University Law School with thirteen years of experience as a teacher and scholar in the area of complex civil litigation—particularly, class actions and other forms of aggregate litigation. In 2005, I was appointed Director of the Law School's Cecil D. Branstetter Litigation and Dispute Resolution Program. In 2006, I was appointed to the Tarkington Chair in Teaching Excellence, a three-year rotating chair. My teaching in recent years has included courses on Complex Litigation, Evidence, Administrative Law, and a year-long Civil Litigation Capstone Seminar for third-year law students interested in advanced study of the civil justice system.

2. Prior to joining the legal academy in 1994, I served as a law clerk for Judge Douglas H. Ginsburg of the United States Court of Appeals for the District of Columbia Circuit. I subsequently practiced law as an Attorney-Advisor in the Office of Legal Counsel of the United States Department of Justice and, thereafter, as a litigation associate with the law firm of Shea & Gardner in Washington, D.C. (now, part of the Goodwin Procter firm). I hold an A.B. degree in political science from Stanford University (1985) and a J.D. degree from The University of Chicago Law School (1988).

3. A copy of my curriculum vitae is attached to this declaration.

4. My articles on class action litigation have appeared in the Columbia Law Review, the Georgetown Law Journal, the Harvard Law Review, the Michigan Law Review, the Texas Law Review, and the UCLA Law Review, among other scholarly journals. In 2003, the American Law Institute appointed me as Associate Reporter for its project on the Principles of the Law of Aggregate Litigation. In 2007, the University of Chicago Press published my scholarly book *Mass Torts in a World of Settlements*.

5. As part of my ongoing scholarly research, I have written an article entitled *Aggregation and its Discontents: Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, which was published in the November 2006 issue of the Columbia Law Review (at 106 COLUM. L. REV. 1872). The issue includes several scholarly articles that, like mine, were prepared for a May 2006 conference sponsored by the Institute for Law & Economic Policy. In July 2006, I posted a preliminary draft of the article on the Social Science Research Network (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=920833). The final version, as it appears in print, differs in only minor respects from the preliminary draft, in keeping with the usual editorial process of law reviews. Apart from a summer research grant from Vanderbilt University Law School, I received no other financial support for the preparation of the article. No individual or organization exercised editorial review over the views expressed in the article.

6. In *Aggregation and its Discontents*, I unite the discussion of three significant debates in the law of aggregate litigation. Two of those debates bear upon matters that I understand to be involved in the present case. The first and most directly pertinent debate concerns challenges to provisions in consumer contracts with providers of goods or services that not only call for arbitration of disputes but also waive the opportunity to conduct the arbitration proceeding on an aggregate basis (or, for that matter, to bring suit by way of a conventional class action or consolidated litigation). Existing commentary and judicial decisions have split over the permissibility of these waivers of class-wide arbitration—in particular, over whether such waivers should be deemed unconscionable as a matter of contract law.

7. In my article, I describe the inquiry that should govern the permissibility of such waivers. I suggest that courts should ground the unconscionability inquiry in the underlying principle—repeatedly stated by the Supreme Court of the United States in its decisions under the Federal Arbitration Act—that, by agreeing to arbitrate disputes, consumers do not forgo the rights of action afforded to them by substantive law. Rather, consumers merely agree to dispute resolution in a more streamlined and informal process, as compared to conventional civil litigation. In short, the key question in a given instance is whether consumers may effectively vindicate their private rights of action in the arbitration process. In keeping with this principle, I argue that waivers of class-wide arbitration are impermissible when they amount, in practical terms, to the effective elimination of consumers' private rights of action—something that legislation might do but that arbitration clauses in private contracts lack authority to do. I go on to discuss the considerations that should bear upon the determination whether a waiver of class-wide arbitration effectively eliminates a private right of action in a given instance, with particular attention to small-stakes consumer claims. I contend that courts should make an informed prediction of the market for legal representation of consumers in the absence of the opportunity to aggregate claims—specifically, that courts should ask whether there are substantial grounds on which to believe that such a market for representation would exist. Relevant considerations for such a prediction include not only the costs associated with the bringing of claims (*e.g.*, filing fees and the costs of the arbitration proceeding) but also the potential financial upside for both consumer and attorney and the applicable regime for attorneys' fees (*e.g.*, whether fee shifting is available and whether the fee would be calculated by the lodestar method).

8. My article places me between two extreme positions in the scholarly literature on waivers of class-wide arbitration. I neither accept that all class waivers are categorically unenforceable when claims are small, nor endorse the view that class waivers are categorically enforceable so long as the arbitration provision does not restrict the menu of remedies available to the consumer. Under the approach set forth in my article, many arbitration provisions with

which I am familiar would likely be unenforceable when claims are small, because they do not otherwise provide a sufficient incentive for consumers and attorneys to pursue such claims.

9. Another part of the article analyzes the contention that class certification can exert an undue, illegitimate pressure on defendants to settle litigation. Among the points I make in this part of the article is that class certification is inappropriate where the legislature has included in substantive law other measures by which to facilitate the bringing of claims on an individual basis: *e.g.*, statutory damages not keyed to the actual losses suffered by consumers. The adding up of statutory damages by way of class certification would amount, I contend, to an inappropriate form of double counting that would disrupt, rather than advance, the remedial scheme of underlying substantive law.

10. After I had completed the last round of changes in the Columbia Law Review editorial process, I was asked by counsel for AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless LLC) to review a revised version of the arbitration clause used in ATTM's consumer contracts ("the 2006 Clause") and to provide my opinion on the permissibility of the 2006 Clause in light of the analysis in my article. I agreed to do so under the standard terms that I use for outside consulting work: a rate of $500 per hour, with a $5000 retainer (against which I apply my initial hours of work).

11. In my opinion, the 2006 Clause should not be deemed unconscionable. The 2006 Clause represents an innovative measure likely to facilitate the fair and efficient resolution of disputes between individual consumers and ATTM. Indeed, I have never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims. Applying the analysis in my article, I conclude that the 2006 Clause reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlements of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle their dispute.

12. As to costs, Paragraph 3 of the 2006 Clause commits ATTM to pay all filing, administration, and arbitrator fees for arbitration. The same Paragraph provides for the possibility of using a streamlined, low-cost hearing process for claims of $10,000 or less, the usual dollar range for the kinds of consumer claims of greatest concern in the debate over waivers of class-wide arbitration.

13. Paragraph 4 of the 2006 Clause provides for a "premium" to both consumers and their attorneys, if any, in the event that the arbitrator finds in favor of the consumer on the merits of the claim and issues an award greater than the value of ATTM's last written settlement offer made before the arbitrator was selected. The premium for the consumer would be at least $5000—the median of the various states' jurisdictional limits for small claims court. My further understanding is that, in setting the premium for the attorney at twice the fees that he or she "reasonably accrues for investigating, preparing, and pursuing [the consumer's] claim in arbitration," Paragraph 4 calls for the use (with doubling) of the lodestar method of fee calculation. The lodestar method decouples the premium for the attorney from the magnitude of the award to the consumer. The lodestar method would calculate the premium, instead, by multiplying the number of hours reasonably spent on the specified activities times a reasonable hourly rate (with further multiplication by two). This approach is in keeping with the longstanding use of the lodestar method in such settings as civil rights litigation, where the law seeks to facilitate the bringing of claims that do not necessarily result in financial awards to individual claimants of a magnitude that otherwise would be likely to induce legal representation.

14. My informed prediction is that the availability of the foregoing premium will drive settlement offers toward levels comparable to those that legislatures have understood to be sufficient to facilitate individual claims in settings involving statutory damages. In economic terms, settlement offers in ATTM arbitrations will need to account not only for the expected value of the consumer's claim (in the manner of conventional settlement offers in the civil justice process) but also the expected value of the premium (*i.e.*, the premium discounted by the

5

Declaration of Richard A. Nagareda in Support of Defendant ATTM's
Motion to Compel Arbitration and Dismiss Complaint

likelihood that it will be triggered). In providing for statutory damages to facilitate individual claims under a variety of statutes, legislatures routinely have selected dollar amounts considerably less—sometimes, by an order of magnitude—than those described in Paragraph 4 of the 2006 Clause. *See, e.g.*, 47 U.S.C. § 227(b)(3)(B) (2000) ($500 in statutory damages per junk fax transmitted in violation of the Telephone Consumer Protection Act of 1991); 47 U.S.C. § 551(f)(2)(A) ($1000 in statutory damages per violation of consumer privacy under the Cable Communications Policy Act of 1984). Paragraph 5 of the 2006 Clause goes on to underscore that the premium described in Paragraph 4 supplements any right to attorney's fees and expenses that consumers already have under applicable law.

15. As I discussed in my article, courts properly, in my view, have exercised their discretion to deny class certification outside the arbitration context where the legislature already has provided for statutory damages to facilitate claiming on an individual basis. The waiver of class-wide arbitration by contract in this case is no more unconscionable than the judicial decisions denying class certification outside the arbitration setting in the presence of statutory damage provisions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 16, 2007.

Richard A. Nagareda

Updated: November 16, 2007

# Richard A. Nagareda

Office:
Vanderbilt University Law School
131 21st Avenue South
Nashville, Tennessee 37203-1181
(615) 322-5250 (office phone)
(615) 322-6631 (fax)
richard.nagareda@law.vanderbilt.edu

Home:
3701 Estes Road
Nashville, Tennessee 37215
(615) 463-8312 (home phone)

## EMPLOYMENT

2001-present
**Vanderbilt University Law School**, Nashville, Tennessee
Professor, since 2001
Director, Cecil D. Branstetter Litigation & Dispute Resolution Program, since 2005
Tarkington Chair in Teaching Excellence (three-year rotating chair), since 2006
Visiting Associate Professor, Fall 2000
Subjects taught: Complex Litigation, Evidence, Administrative Law, Mass Torts Seminar, Civil Litigation Capstone Seminar

1994-2001
**University of Georgia School of Law**, Athens, Georgia
Associate Professor (with tenure), 2000-2001
Associate Professor, 1999-2000
Assistant Professor, 1994-1999
Subjects taught: Administrative Law, Advanced Torts Seminar (Mass Tort Litigation), Criminal Law, Evidence, Supreme Court Seminar

Fall 1997
**University of Texas School of Law**, Austin, Texas
Visiting Assistant Professor
Subjects taught: Administrative Law, Mass Torts Seminar

1991-1994
**Shea & Gardner**, Washington, D.C.
Associate
Practice areas: Products Liability, Toxic Torts, Insurance Coverage

1989-1991
**Office of Legal Counsel**, United States Department of Justice, Washington, D.C.
Attorney-Advisor
Advised White House and federal administrative agencies on constitutional and federal statutory matters

1988-1989         **The Honorable Douglas H. Ginsburg**, United States Court of Appeals
                  for the District of Columbia Circuit, Washington, D.C.
                  Law Clerk

## EDUCATION

J.D. 1988         **The University of Chicago Law School**, Chicago, Illinois
                  Degree awarded *cum laude*
                  Executive Editor, *The University of Chicago Law Review*
                  Order of the Coif
                  Floyd Russell Mechem Prize Scholarship

A.B. 1985         **Stanford University**, Stanford, California
                  Degree awarded with honors in Political Science
                  Firestone Medal for Excellence in Research

## PUBLICATIONS

*Class Action Settlements under Attack* (with Samuel Issacharoff), 156 University of Pennsylvania Law Review (forthcoming 2008)

*Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75 University of Chicago Law Review (forthcoming 2008), pre-publication draft available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1014659

MASS TORTS IN A WORLD OF SETTLEMENT (University of Chicago Press 2007)

*FDA Preemption: When Tort Law Meets the Administrative State*, 1 Journal of Tort Law, issue 1, article 4 (2006) (peer-edited journal from Berkeley Electronic Press), available at http://www.bepress.com/jtl/vol1/iss1/art4

*Aggregation and its Discontents: Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, 106 Columbia Law Review 1872 (2006)

*Restitution, Rent Extraction, and Class Representatives: Implications of Incentive Awards*, 53 UCLA Law Review 1483 (2006)

*Bootstrapping in Choice of Law after the Class Action Fairness Act*, 74 University of Missouri Kansas City Law Review 661 (2006)

*The Allocation Problem in Multiple-Claimant Representations* (with Paul H. Edelman and Charles Silver), 14 Supreme Court Economic Review 95 (2006) (peer-edited journal)

*Gun Litigation in the Mass Tort Context*, in SUING THE GUN INDUSTRY: A BATTLE AT THE

CROSSROADS OF GUN CONTROL AND MASS TORTS 176 (Timothy D. Lytton, ed., University of Michigan Press 2005)

*Administering Adequacy in Class Representation*, 82 Texas Law Review 287 (2003)

*Closure in Damage Class Settlements:* The Godfather *Guide to Opt-Out Rights*, 2003 University of Chicago Legal Forum 141

*The Preexistence Principle and the Structure of the Class Action*, 103 Columbia Law Review 149 (2003)

*Tobacco Litigation*, in THE OXFORD COMPANION TO AMERICAN LAW 801 (Kermit L. Hall, ed. 2002) (entry for legal encyclopedia)

*Autonomy, Peace, and Put Options in the Mass Tort Class Action*, 115 Harvard Law Review 747 (2002)

*Punitive Damage Class Actions and the Baseline of Tort*, 36 Wake Forest Law Review 943 (2001)

*Future Mass Tort Claims and the Rule-Making/Adjudication Distinction*, 74 Tulane Law Review 1781 (2000)

*Compulsion "To Be a Witness" and the Resurrection of Boyd*, 74 New York University Law Review 1575 (1999) (cited and followed in United States v. Hubbell, 530 U.S. 27, 50-51 (2000) (Thomas, J., concurring, joined by Scalia, J.))

*Reconceiving the Right to Present Witnesses*, 97 Michigan Law Review 1063 (1999)

*Outrageous Fortune and the Criminalization of Mass Torts*, 96 Michigan Law Review 1121 (1998)

*In the Aftermath of the Mass Tort Class Action*, 85 Georgetown Law Journal 295 (1996)

*Turning from Tort to Administration*, 94 Michigan Law Review 899 (1996)

Comment, *Ex Parte Contacts and Institutional Roles: Lessons from the OMB Experience*, 55 University of Chicago Law Review 591 (1988)

Comment, *The Appellate Jurisprudence of Justice Antonin Scalia*, 54 University of Chicago Law Review 705 (1987)

**WORK IN PROGRESS**

*Aggregate Litigation Across the Atlantic: American Exceptionalism and Structural Dynamics*
    (article)

*The Law of Aggregate Litigation: Class Actions and Other Multiple-Claimant Lawsuits*
    (casebook under contract with Foundation Press)

Associate Reporter (with Reporter Samuel Issacharoff), American Law Institute, Principles of the Law of Aggregate Litigation, Chapter 2: Aggregate Treatment of Common Issues (Discussion Draft No. 2, published April 6, 2007)

## LEGISLATIVE TESTIMONY

*Finding Solutions to the Asbestos Litigation Problem: The Fairness in Asbestos Compensation Act of 1999, Hearing on S. 758 Before the Subcomm. on Administrative Oversight and the Courts of the Senate Comm. on the Judiciary*, 106th Congress 115-123 (1999)

## ACADEMIC CONFERENCES, WORKSHOPS, AND OTHER PRESENTATIONS

Panelist, *Class Actions in Europe and North America*, New York University School of Law and American Law Institute, Florence, Italy, June 12-14, 2008 (expected)

Panelist, *Class Actions*, Benjamin N. Cardozo School of Law and American Constitution Society, New York, New York, March 28, 2008 (expected)

Panelist, *Asbestos Litigation*, Southwestern Law School, Los Angeles, California, January 18, 2008 (expected)

Panelist, *Fairness to Whom? Perspectives on the Class Action Fairness Act of 2005*, University of Pennsylvania Law School, Philadelphia, Pennsylvania, December 1, 2007 (expected)

Faculty Workshop, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, James E. Rogers College of Law, University of Arizona, Tucson, Arizona, August 30, 2007

Panelist, *Resolving Mass Tort Products Liability Claims*, American Conference Institute, New York, New York, March 28, 2007

Complex Litigation and Dispute Resolution Workshop, *Aggregation and its Discontents: Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, University of Pennsylvania Law School, Philadelphia, Pennsylvania, October 23, 2006

Panelist, *Does Procedure Dominate Substance? Of Class Actions and Pretrial Motions*, Federalist Society and eSapience Center for Law & Business, New York University School of Law, New York, New York, September 14, 2006

4

Faculty Workshop, *FDA Preemption: When Tort Law Meets the Administrative State*, Florida State University College of Law, Tallahassee, Florida, August 31, 2006

Panelist, *The Impact of Tort Litigation on Public Policy and Government Regulation*, Law & Society Association Annual Meeting, Baltimore, Maryland, July 6, 2006

Panelist, *Aggregation and its Discontents: Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, Institute for Law & Economic Policy, Paradise Island, Bahamas, May 5, 2006

Panelist, *Due Process and Class Actions: The 20th Anniversary of* Phillips Petroleum v. Shutts, University of Missouri-Kansas City, Kansas City, Missouri, April 7, 2006

Civil Justice Workshop, *Mass Torts in a World of Settlement, Introduction & Chapter 11: Peacemaking as Governance*, Boalt Hall School of Law, University of California, Berkeley, California, February 23, 2006

Commentator, *Emerging Issues in Class Action Law*, UCLA School of Law, Los Angeles, California, January 26, 2006

Panelist, *Preclusion, Due Process, and Adequacy of Representation*, American Bar Association, Tort Trial & Insurance Practice Section, Washington, D.C., November 11, 2005

Continuing Legal Education Presentation, *Recent Developments on the Confrontation Clause After* Crawford v. Washington, Office of the Federal Public Defender, Nashville, Tennessee, July 12, 2005

Faculty Workshop, *Mass Torts in a World of Settlement, Chapter 12: Peacemaking as Governance*, Vanderbilt University Law School, Nashville, Tennessee, May 3, 2005

Panelist, *Assessing the Medical, Regulatory, and Legal Landscape: The Past, Present, and Future of Cox-2 Inhibitors*, Academic Programs Committee, Vanderbilt University Board of Trust, Nashville, Tennessee, April 28, 2005

Faculty Workshop (with Samuel Issacharoff), *American Law Institute, Principles of the Law of Aggregate Litigation, Chapter 2: Judicial Resolution of Overlapping Common Issues*, Vanderbilt University Law School, Nashville, Tennessee, September 23, 2004

Faculty Workshop, *Gun Litigation in the Mass Tort Context*, Albany Law School, Albany, New York, November 6, 2003 (working conference for book chapter authors)

Faculty Workshop, *Administering Adequacy in Class Representation*, Benjamin N. Cardozo School of Law, New York, New York, October 13, 2003; Northwestern University Law School, Chicago, Illinois, September 25, 2003; Vanderbilt University Law

School, Nashville, Tennessee, September 2, 2003

Panelist, *Mass Tort Class Settlements after* Amchem *and* Ortiz, Association of American Law Schools, Joint Session for Conferences on Civil Procedure and Torts, New York, New York, June 18, 2003

Panelist, *The Right to "Opt-Out" of Class Action Suits*, University of Chicago Law School, Chicago, Illinois, November 1, 2002

Faculty Workshop, *The Preexistence Principle and the Structure of the Class Action*, Vanderbilt University Law School, Nashville, Tennessee, July 23, 2002

Panelist, Engle v. R.J. Reynolds Tobacco Co.: *Lessons in State Class Actions, Punitive Damages, and Jury Decision-Making*, Wake Forest University School of Law, Winston-Salem, North Carolina, September 28, 2001

Panelist, *Self-Incrimination and Document Subpoenas*, Colorado Bar Association Annual Meeting, Section on Criminal Law, Vail, Colorado, September 21, 2001

Panelist, *Toxic Torts: Issues of Mass Litigation, Case Management, and Ethics*, Marshall-Wythe School of Law, College of William & Mary, Williamsburg, Virginia, March 24, 2001

Faculty Workshop, *Coordinating Substance and Procedure in the Mass Tort Class Action*, Vanderbilt University Law School, Nashville, Tennessee, October 31, 2000

Panelist, *Class Actions in the Gulf South*, Tulane University School of Law, New Orleans, Louisiana, March 31, 2000

Panelist, *Insurance Class Actions*, Section on Insurance Law, Association of American Law Schools Annual Meeting, Washington, D.C., January 7, 2000

Panelist, *Defining Injury: Mass Torts and the Courts in the Popular Imagination*, Law & Society Association Annual Meeting, Chicago, Illinois, May 29, 1999

Faculty Workshop, *Reconceiving the Right to Present Witnesses*, George Mason University School of Law, Arlington, Virginia, March 2, 1999

Faculty Workshop, *"Switching Institutions" in Mass Tort Litigation*, Marshall-Wythe School of Law, College of William & Mary, Williamsburg, Virginia, November 9, 1998

Faculty Workshop, *Outrageous Fortune and the Criminalization of Mass Torts*, University of Texas School of Law, Austin, Texas, October 24, 1997

**PROFESSIONAL SERVICE**

Advisory Board, Journal of Tort Law, Berkeley Electronic Press, 2006-present

Special Advisor, Executive Committee, Litigation Practice Group, Federalist Society, 2006-present

Member, Executive Committee, Section on Evidence, Association of American Law Schools, 2001-2004

## LAW SCHOOL SERVICE (VANDERBILT UNIVERSITY LAW SCHOOL)

Director, Cecil D. Branstetter Litigation & Dispute Resolution Program, 2005-present

Member, Dean Search Committee (by appointment of university provost), Fall 2004

Chair, Faculty Appointments Committee (Entry-Level), 2007-2008

Member, Faculty Appointments Committee (Entry-Level), 2006-2007

Member, Faculty Appointments Committee, Fall 2002

Member, Student-Faculty Relations Committee, 2001-2002

Chair, Tenure Committee for Associate Professor Herwig Schlunk, 2003-2004

Member, Committee to Review Assistant Professor Christopher Yoo, 2001-2002

Faculty Advisor, Federalist Society, 2002-present

## LAW SCHOOL SERVICE (UNIVERSITY OF GEORGIA SCHOOL OF LAW)

Member, Student Affairs Committee, 1994-2001 (Chair, Subcommittee on Judicial Clerkships, 1995-2001)

Member, Faculty Seminars and Special Programs Committee, 1994-1999, 2000-2001

Member, Faculty Recruitment Committee, 1999-2000

Member, Ad Hoc Committee to Review Student Honor Code, 1996-1999

Faculty Advisor, *Georgia Law Review*, 2000-2001

Faculty Advisor, Federalist Society, 1994-2001

## DEPOSITION TESTIMONY

*In re* Federal-Mogul Global, Inc., No. 01-10578 (JFK) (Bankr. D. Del.) (expert witness on asbestos-related reorganization plan)

Coneff v. New Cingular Wireless Services, Inc., No. C06-0944 RSM (W.D. Wash.) (expert witness in support of motion to compel arbitration)

Hercules, Inc. v. OneBeacon America Ins. Co. et al., No. 02C-11-237 SCD (Super. Ct., New Castle County, Del.) (expert witness in asbestos insurance coverage litigation)

*In re* Pittsburgh Corning Corp., No. 00-22876 JFK (Bankr. W.D. Pa.) (expert witness on asbestos-related reorganization plan)

ASARCO, Inc. et al. v. Allstate Ins. Co. et al., No. 01-2680-D (105th Jud. Dist. Ct., Nueces County, Tex.) (expert witness in asbestos insurance coverage litigation)

## AWARDS

Hartman Outstanding Professor Award (Vanderbilt University Law School, second- and third-year classes, 2001-2002 academic year)

Student Bar Association Faculty Book Award "to the faculty member who most effectively conveys his knowledge and understanding of what the law is and inspires his students to think analytically and critically about what the law can become" (University of Georgia School of Law, Class of 2000)

Phi Delta Phi and John C. O'Byrne Memorial Faculty Award "in appreciation of significant contributions furthering student-faculty relations" (University of Georgia School of Law, Class of 1996)