Donald M. Falk (State Bar No. 150256)
dfalk@mayerbrownrowe.com
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

MICHAEL J. STORTZ (State Bar No. 139386)
michael.stortz@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendant
AT&T MOBILITY LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| BABAK PISHVAEE, individually, and on behalf of a class of similarly situated individuals,<br><br>       Plaintiff,<br><br>v.<br><br>VERISIGN, INC., a California corporation, M-QUBE, INC., a Delaware corporation, and AT&T MOBILITY LLC, formerly known as Cingular Wireless LLC, a Delaware corporation,<br><br>       Defendants. | Case No.: C-07-3407<br><br>**DECLARATION OF MICHAEL J. STORTZ IN SUPPORT OF DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT** |

I, Michael J. Stortz, do hereby declare:

1. I am a partner with the law firm of Drinker Biddle & Reath LLP, and I am one of the counsel for defendant AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless LLC). I have personal knowledge of the matters stated herein, and, if called upon, I could and would testify thereto.

2.   On November 14, 2007, I sent a letter to counsel for plaintiff Babak Pishvaee, informing him that, pursuant to Mr. Pishvaee's service agreement with ATTM, he is subject to a contractual obligation either to arbitrate any claims arising out of or relating to the agreement with ATTM or to pursue his claims in small claims court.

3.   A true and correct copy of this letter (and its accompanying enclosures) is attached hereto as Exhibit 1 to this Declaration.

4.   On November 15, 2007, I received a letter from Mr. Pishvaee's counsel acknowledging receipt of my letter, and indicating that Mr. Pishvaee would not comply with his agreement to arbitrate his claims with ATTM.

5.   A true and correct copy of the November 15 letter from Mr. Pishvaee's counsel is attached hereto as Exhibit 2.

6.   On November 19, 2007, I sent a second letter to counsel for Mr. Pishvaee.  This letter notified counsel that, because Mr. Pishvaee would not pursue his claims in accordance with his arbitration agreement, ATTM had no choice but to file a motion to compel arbitration.

7.   A true and correct copy of my November 19 letter is attached as Exhibit 3.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 1ᐱ, 2007.

Michael J. Stortz

Declaration of Michael J. Stortz in Support of Defendant ATTM's
Motion to Compel Arbitration and Dismiss Complaint

# EXHIBIT 1

# DrinkerBiddle&Reath
### L L P

Michael J. Stortz
415-591-7500
mjstortz@dbr.com

*Law Offices*

50 Fremont Street

20TH Floor

San Francisco, CA

94105-2235

415-591-7500

415-591-7510 fax

www.drinkerbiddle.com

PHILADELPHIA

NEW YORK

WASHINGTON

LOS ANGELES

CHICAGO

PRINCETON

FLORHAM PARK

BERWYN

WILMINGTON

**VIA E-MAIL AND FIRST CLASS MAIL**

November 14, 2007

William M. Audet
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105

Re:    *Pishvaee v. Verisign, Inc.*, No. C-07-3407 PVT (N.D. Cal.)

Dear Mr. Audet:

On behalf of defendant AT&T Mobility LLC ("ATTM"), formerly Cingular Wireless LLC, I write to advise you that your client, Babak Pishvaee, has agreed to arbitrate his dispute with ATTM—or, in the alternative, to proceed in small claims court—pursuant to the Terms and Conditions of his ATTM service.  Accordingly, ATTM hereby requests that your client honor his agreement.

In November 2002, Mr. Pishvaee activated his service with ATTM by signing a Wireless Service Agreement ("WSA") that was accompanied by, and incorporated by reference, a set of Terms and Conditions.  A printout of Mr. Pishvaee's WSA and a copy of the Terms and Conditions that he would have received are attached at Tab 1.  The Terms and Conditions contain an arbitration provision, which states in part: "[ATTM] and you agree to arbitrate any and all disputes and claims … arising out of or relating to this Agreement . . . ."

Since then, Mr. Pishvaee has renewed his service with ATTM on a number of occasions, most recently in April 2006.  At that time, Mr. Pishavee was required to agree to the then-current Terms of Service (attached at Tab 2), which contained an arbitration provision as well.

In December 2006, pursuant to the change-in-terms provision in the Terms of Service, ATTM revised its arbitration agreements with all of its customers (including Mr. Pishvaee).  ATTM sent all of the customers whom it bills on a monthly basis, including your client, a copy of the revised arbitration provision with their December 2006 bills.  A copy of the revised arbitration provision is attached at Tab 3.

After the December 2006 bills were mailed, Cingular further revised the arbitration provision to make a minor clarification.  The current provision, including this recent amendment, is available at http://www.att.com/disputeresolution and is attached at Tab 4.

*Established*
*1849*

SFI\391831\1

DrinkerBiddle&Reath
LLP

William M. Audet
November 14, 2007
Page 2


        Because Mr. Pishvaee contractually agreed not to pursue claims in courts of
general jurisdiction, ATTM requests that he dismiss his lawsuit and pursue his claims in
either arbitration or small claims court.  If he does not do so by November 18, 2007,
Cingular will have no choice but to file a motion to compel arbitration.


                                        Very truly yours,

                                        Michael J. Stortz

MJS
Enclosure

**TAB 1**

CW700572 T&C W, C, GL, NE  7/5/01  9:10 AM  Page 1





What do you have to say?ᴴᴹ

www.cingular.com
800.331.0500



SM

Cingular Wireless and the graphic icon are service marks of
Cingular Wireless LLC.
©2001 Cingular Wireless LLC. All rights reserved.

W, C, GL, NE                        CW700572 (7/01)



terms
and
conditions

arbitration shall be in the city where CINGULAR's Mobile telephone Switching Office for your access number is located. Except where prohibited by law, CINGULAR and you agree that no Arbitrator has the authority to: (1) award relief in excess of what this Agreement provides; (2) award punitive damages or any other damages not measured by the prevailing party's actual damages; or (3) order consolidation or class arbitration. The Arbitrator(s) must give effect to the limitations on CINGULAR's liability as set forth in this Agreement, any applicable tariff, law, or regulation. In any arbitration utilizing the rules applicable to large/complex cases, as defined under the WIA Rules, the Arbitrator(s) must also apply the Federal Rules of Evidence, and the losing party may have the award reviewed in accordance with the review procedures set forth in the WIA Rules. You agree that CINGULAR and you each is waiving its respective right to a trial by jury. You acknowledge that arbitration is final and binding and subject to only very limited review by a court. If for some reason this arbitration clause is at some point deemed inapplicable or invalid, you and CINGULAR agree to waive, to the fullest extent allowed by law, any trial by jury. In such case, a judge shall decide the subject dispute or claim. CINGULAR, you and the Arbitrator(s) shall not disclose the existence, content, or results of any arbitration. Judgment on the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, either party may bring an action in small claims court.

**OUT-OF-NETWORK ROAMING** Roamer charges result from using your cellular phone outside your Local Service Area (applicable to select rate plans) and only appear after CINGULAR is notified by the carrier servicing the area in which roaming occurs. Different service rates apply and conditions of service may vary when you roam on another carrier's network. A roamer administration fee may be charged in any month in which one or more roamer charges appear on the bill, and actual charges billed may not be the same as are imposed by the serving carrier. IN ADDITION TO ANY LIMITATIONS OF LIABILITY STATED HEREUNDER, YOU ARE SUBJECT TO THE LIMITATION OF LIABILITY PROVISIONS IMPOSED BY THE ROAMING CARRIER ON THE ROAMING CARRIER'S OWN SUBSCRIBERS. YOU AGREE TO ACCEPT SERVICE ON A ROAMING CARRIER'S NETWORK ON AN "AS-IS" "WHERE-IS" BASIS WITHOUT WARRANTY OF ANY KIND. Certain rate plans require use of wireless telephones programmed with CINGULAR's preferred roaming database. Phones not so programmed or incapable of roaming on the preferred carriers' networks may subject you to higher roaming rates or having your service converted to a different rate plan. Please check with your sales representative or the service plan brochure for details and restrictions.

**MISCELLANEOUS** This Agreement, the signature or rate summary sheet, the terms included in the rate brochure describing your plan, and any documents expressly referred to herein, make up the complete agreement between you and CINGULAR, and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. CINGULAR may assign this Agreement, but you may not assign or transfer this Agreement without CINGULAR's prior written consent. Service is subject to the jurisdiction and regulations of the Federal Communications Commission and state regulatory agencies. Applicable federal and state laws of the state associated with the wireless number will govern this Agreement.

limited solely to the credit set forth above, and such credit will satisfy all of your claims against CINGULAR for interruption of service.

**LIMITATION OF LIABILITY** CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR PERFORMANCE WITH REGARD TO THE SERVICES AND/OR GOODS PROVIDED HEREUNDER. In no event shall CINGULAR be liable, and you hereby release CINGULAR from liability, WHETHER OR NOT DUE TO THE NEGLIGENCE OF CINGULAR, for: (a) any act or omission of any provider of service or facilities other than CINGULAR; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through CINGULAR; (c) any damage or injury caused by, or allegedly resulting from, the presence or use of any wireless telephone or service provided by CINGULAR, including, but not limited to, the presence or use thereof in any vehicle or on any property; (d) claims made against you by third parties; (e) damage caused by any suspension or termination of service by CINGULAR; (f) damages caused by failures or delays in the provision of, or making calls to, 911 or any other emergency service, where such service is available; or, (g) any damage or injury arising from alleged negligence or willful misconduct of any third party, or including, without limitation, any directory assistance or Internet service provider. CINGULAR shall not be liable for any indirect, punitive, special, incidental or consequential losses or damages you or any third party may suffer or incur caused by use of, or inability to make use of, service or equipment provided by or through CINGULAR, such as, but not limited to (a) loss of business, revenue or profits, (b) damages or losses as a result of your inability to fulfill agreements with third parties, (c) claims of personal injuries, or (d) injury to goodwill. CINGULAR's sole liability, if any, for loss or damage arising out of mistakes, omissions, interruptions, errors or any other causes, INCLUDING THE NEGLIGENCE OF CINGULAR, shall be limited to the credit for service interruption for each separate period of interruption as described in the Section on Service Interruption. To the full extent allowed by law, you hereby release, indemnify, and hold CINGULAR and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by CINGULAR or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING FROM IN WHOLE OR IN PART THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of these Terms and Conditions. This obligation shall survive termination of your service with CINGULAR. CINGULAR is not liable to you for changes in operation, equipment or technology that cause your equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH;THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS CONTRACT GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**VOICE MAIL SERVICE** CINGULAR reserves the right to remove voice mail service if the voice mail service is not initialized within a reasonable period after activation. CINGULAR will reactivate your voice mail service thereafter at your request.

**INDEPENDENT ARBITRATION** Please read this paragraph carefully. It affects rights that you may otherwise have. (a) CINGULAR and you shall use our best efforts to settle any dispute or claim arising from or relating to this Agreement. To accomplish this, CINGULAR and you shall negotiate with each other in good faith. If CINGULAR and you do not reach agreement within 30 days, instead of suing in court, CINGULAR and you agree to arbitrate any and all disputes and claims (including but not limited to claims based on or arising from an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement for products or service between you and CINGULAR or any of your or CINGULAR's affiliates or predecessors in interest. The arbitration of any dispute or claim shall be conducted in accordance with the wireless industry arbitration rules ("WIA Rules") as modified by this Agreement and as administered by the American Arbitration Association ("AAA"). The WIA Rules and fee information are available from CINGULAR or the AAA upon request. CINGULAR and you acknowledge that this Agreement evidences a transaction in interstate commerce and that the United States Arbitration Act and Federal Arbitration Law shall govern the interpretation and enforcement of, and proceedings pursuant to, this or a prior agreement. Unless CINGULAR and you agree otherwise, the location of any

CINGULAR Wireless ("CINGULAR" or "we" "us" or "our") will provide its services on the following Terms and Conditions. Service is also subject to CINGULAR's standard business policies, practices and procedures that CINGULAR may change at any time without notice. Every use of the term "you" or "your" in these Terms and Conditions refers to the person or entity that is the customer of record. IMPORTANT NOTICE: THIS AGREEMENT CONTAINS MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE REFER TO THE SECTION ENTITLED "ARBITRATION" FOR DETAILS.

**AVAILABILITY OF LIMITED SERVICE** Service is generally available to wireless telephones equipped for the service when within the range of cell sites located in the service area. Service is furnished for you or your authorized user. CINGULAR will only accept orders, including those that involve the start, change or discontinuance of your service, from you or your authorized agent or other person able to provide certain account information that we require.

**SERVICE COMMITMENT** You have agreed to maintain service for a minimum term, the Service Commitment specified on the signature portion of this Agreement. The Service Commitment begins on the day your service is activated. If you have contracted for a Service Commitment greater than a month, in exchange you have received certain benefits from CINGULAR. You understand and agree that you now have certain contractual obligations and that CINGULAR's damages arising out of a breach thereof will be difficult, if not impossible, to determine. Therefore, if you terminate your service for any reason other than a change of terms, conditions, or rates as set forth below, or if CINGULAR terminates your service for nonpayment or other default before the end of the Service Commitment, you hereby agree to pay CINGULAR, as liquidated damages, and not as a penalty, in addition to all other amounts owed, the termination charge of $150 per wireless phone on the account ("Termination Fee"). AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL NOTICE IS GIVEN TO CINGULAR PURSUANT TO THE TERMINATION PROVISION BELOW. No Termination Fee will be charged for a termination of service with a month-to-month service commitment; provided, however, that, there is no proration of the fixed monthly charge if service is terminated on other than the last day of your billing cycle.

**BILLING AND PAYMENT OF CHARGES** You will receive monthly bills that are due in full as shown thereon. Billing cycles may change from time to time. You are responsible for paying all charges for or resulting from services provided under this Agreement. Charges include, without limitation, airtime, roamer, recurring monthly service, administrative, and late payment charges; network surcharges; optional feature charges; toll, collect call and directory assistance charges; any other charges or calls billed to your wireless telephone number; and, applicable taxes and governmental fees, whether assessed directly upon you or upon CINGULAR. You agree that CINGULAR may add its own charges to those charged by third parties. The prices for service on the front of this Agreement do not include applicable taxes, fees, surcharges, or assessments. CINGULAR may add to your bill, and you agree to pay, such applicable taxes, fees, surcharges or assessments. Monthly service and certain feature charges are billed one month in advance. Roamer charges may appear on a bill after the bill for the period in which the roaming occurs. If your rate plan allows included minutes to be applied to roaming minutes, those minutes will be applied against your included minutes in the month in which the roaming calls appear on your bill. (Notwithstanding the foregoing, for PA, DE, NJ and Cecil County (MD), minutes of use are applied against your unused included minutes for the month that the call was made if billing for such use occurs in the same period or in the next bill period. Minutes of use billed more than one bill period after the call occurs and minutes of use in excess of included minutes are billed at the rate in effect for the bill period in which the call appears on the bill.)

You agree to pay for incoming and outgoing calls to and from your wireless telephone. Airtime and other measured usage (chargeable time) is billed in full minute increments and actual airtime and usage is rounded up to the next full minute increment at the end of each call for billing purposes, e.g., CINGULAR charges a full minute of airtime usage for every fraction of the last minute of  airtime used on each wireless call. Chargeable time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with CINGULAR's facilities. Chargeable time ends after you press END (or similar key), but until your wireless telephone's signal of call disconnect is received by CINGULAR's facilities and the call disconnect signal has been confirmed. All outgoing calls for which CINGULAR receives answer

CW700572 T&C W, C, GL, NE  7/5/01  9:10 AM  Page 7

supervision shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voice mail systems, private branch exchanges, and interexchange switching equipment. Chargeable time may include time for CINGULAR to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time; however, there will be no charged time for unanswered incoming calls, and no charged time for outgoing calls for which answer supervision is not received if chargeable time, including ring time, is under thirty (30) seconds. Chargeable time may also occur from other uses of CINGULAR facilities, including by way of example, voice mail deposits and retrievals, and call transfers. Calls that begin in one period and end in another period are billed at the rates for the period in which the call began. You must notify CINGULAR in writing of any disputed charges within sixty (60) days of the date of the bill containing the disputed charges or you will have waived your right to dispute the charges. If your wireless telephone is lost or stolen, you will be responsible for all charges incurred on your wireless number until you report the theft or loss and provide a police report number to CINGULAR. After you report the theft or loss to CINGULAR, you remain responsible for complying with your other obligations under this Agreement, including, but not limited to, payment of your monthly service fee. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. CINGULAR may require payment by money order, cashier's check or a similarly secure form of payment at its discretion. CINGULAR will charge you (a) up to $30.00 or (b) if less, the highest amount allowed by law, for any check or other instrument tendered by you and returned unpaid by a financial institution for any reason. You agree to pay to CINGULAR the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees and court costs, incurred by CINGULAR in exercising any of its rights and remedies when enforcing any provisions of this Agreement.

**CHANGES TO TERMS, CONDITIONS, RATES, FEES, EXPENSES, AND CHARGES** CINGULAR may increase, reduce or otherwise change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. This includes, without limitation, prime or peak hour periods, rate plans and features, billing practices, late charges, Termination Fees and all other terms and conditions of service, including these Terms and Conditions. CINGULAR will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other such governmentally imposed assessments, fees, and surcharges, whether or not assessed directly upon you, may be increased based upon government or CINGULAR calculations. IF CINGULAR INCREASES YOUR LOCAL AIRTIME RATE, MONTHLY SERVICE CHARGE OR NETWORK SURCHARGE, OR DECREASES THE GEOGRAPHICAL AREA IN WHICH YOUR LOCAL AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OF MAINTENANCE), YOU MAY TERMINATE SERVICE WITHIN THIRTY (30) DAYS OF THE DATE OF THE NOTICE WITHOUT INCURRING A TERMINATION FEE.

**WIRELESS TELEPHONE NUMBER** CINGULAR will assign you a wireless telephone number for your service. Unless pursuant to a specific CINGULAR rate plan, only one wireless telephone unit with a unique electronic serial number (ESN) or one International Mobile Equipment Identifier (IMEI) at any one time may use any one wireless telephone number. You have no property rights in the wireless telephone number and cannot acquire such rights through usage, publication or otherwise. CINGULAR may change this number or assign it to another user in its discretion. In the event number portability becomes effective, your account must first be paid in full in order to request transfer of the number to another carrier.

**WIRELESS TELEPHONE** You are responsible for the installation, operation and maintenance of your wireless telephone. You must ensure that your wireless telephone is compatible with, and will not interfere with, the service of CINGULAR, and that it complies with all applicable laws, rules and regulations. If your wireless phone is intelligent roaming capable, it shall be periodically programmed with default system settings for roaming service that cannot be changed manually. Your wireless telephone may be compatible only with CINGULAR services.

**LONG DISTANCE SERVICE** CINGULAR will provide your long distance service unless CINGULAR makes available other long distance carriers with whom it has contracted to provide long distance service to CINGULAR's customers

and you request one of those long distance carriers. If CINGULAR connects you to a long distance carrier other than the one you requested, CINGULAR is not responsible for charges you incur with another long distance carrier and is only responsible for connecting you to your requested carrier at the earliest opportunity after you have notified CINGULAR. Certain rate plans require use of CINGULAR's long distance service; please check the service plan brochure for details and restrictions.

**ADVANCE PAYMENTS AND/OR DEPOSITS** CINGULAR may require you to make a suitable advance payment for services that will be applied as a credit on your account or a suitable deposit that CINGULAR may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. CINGULAR shall determine the amount of the advance payment and deposit and may require additional advance payments or deposits if it determines that the initial payment was inadequate. This Agreement is conditioned upon our establishment of a credit limit based on your creditworthiness as we determine it, and certain restrictions on service or restrictions on features may apply based on the way we evaluate your creditworthiness. If your account limit goes beyond the limit we set for your account, we may immediately interrupt or suspend service until your account balance is brought below this limit. Additionally any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts, including Equipment accounts, in good standing to maintain service. If one account is past due or over the limit, all accounts in your name are subject to interruption and all other available collection remedies.

**LATE PAYMENT CHARGES** You agree that CINGULAR will incur damages, which are difficult to calculate, if you fail to pay your bill by the due date. Therefore, for amounts not paid by the due date, CINGULAR may apply, and you agree to pay, a late payment fee per month equal to $5 or, if less, the highest amount allowed by law as liquidated damages and not as a penalty. Notwithstanding the foregoing, the following late payment fees are charged in the identified markets: 1.5% of the balance carried forward to the next bill in CA, HI, ID, NV, PR, TX, VI and WA; and the greater of $4.95 or 1.5% of the balance carried forward in KS and MO.

**TERMINATION** Either party may terminate this Agreement at any time after your Service Commitment ends by giving at least thirty (30) days notice to the other party. CINGULAR may terminate this Agreement at any time without notice if it ceases to provide service in your home service area. CINGULAR may interrupt or terminate your service without notice for any conduct that it believes violates any of these Terms and Conditions or any terms and conditions of the collateral material regarding your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner to any of our representatives, or if we discover that you are under-age, or if you fail to pay when due any charges owed to CINGULAR or billed on your CINGULAR invoice, whether under this or another agreement or wireless number, or if CINGULAR has cause to believe that your phone is being used for a fraudulent purpose, or if service is used in a way that may adversely affect CINGULAR's service or is otherwise used in violation of applicable governmental rules or regulations, or if you provided inaccurate credit information or CINGULAR believes your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

**SERVICE INTERRUPTION** Service may be temporarily interrupted, delayed or otherwise limited for a variety of reasons, including, but not limited to, transmission limitations caused by atmospheric and other conditions, availability of radio frequency channels, system capacity limitations, coordination with other systems, equipment modifications and repairs, and problems associated with the facilities of interconnecting carriers. There are gaps in Service within the service areas shown on coverage maps. CINGULAR does not guarantee you uninterrupted service. Airtime and other service charges apply to all calls, including involuntarily terminated calls. Subject to the limitations below, if your service is interrupted for 24 continuous hours or more, CINGULAR will issue you, upon request, a credit equal to a prorata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. An interruption is measured from the time you report it to CINGULAR. CINGULAR may require that you request credit in writing. No credit will be given for a service interruption if evidence of the service interruption is, in CINGULAR's opinion, inconclusive or if the service interruption was caused by (a) your negligent or willful actions, (b) the failure of equipment or services not provided by CINGULAR or (c) causes beyond the control of CINGULAR. CINGULAR's liability to you for interruptions, delays and failures in transmission or service is

013400346

✕ cingular™
WIRELESS

W I R E L E S S   S E R V I C E   A G R E E M E N T

1.800.331.0500

| Application Date | Activation Date |
|---|---|
| 11-11-02 | 1-11-02 |

| Agent Code | Sales Person |
|---|---|
| LL53A | Juan |

| Other Code # (If Applicable) | Market/Region |
|---|---|

### CUSTOMER BILLING INFORMATION

Billing Name/Legal Name (First, M.I., Last)
Babak Pishavaee

Attention Line

333
333

| City | State | Zip Code |
|---|---|---|
| | | 333 |
| | | 333 |
| | | 333 333 |
| 333 | 333 | |

### BUSINESS BILLING INFORMATION

☐ Sole Owner   ☐ Partnership   ☐ Corporation

Authorized Person to Sign for Account

| Authorized Individual's Title | Contact Number |
|---|---|
| | ( ) |

| Tax Exempt Tax ID No. | ☐ FED | ☐ Local |
|---|---|---|
| | ☐ State | ☐ Other |

### CREDIT AND BILLING ACCOUNT INFORMATION

| Credit Check Number | Advance Payment/Deposit Amount $ |
|---|---|
| Account Number | 333   B |

### CUSTOMER CHECKLIST

CINGULAR REMINDS YOU TO USE YOUR PHONE SAFELY WHILE DRIVING.
SAFETY – YOUR MOST IMPORTANT CALL.

| | | |
|---|---|---|
| ☑ Your First Bill | ☑ Inclusive Minutes | ☑ Coverage and Roaming |
| ☑ Service Activation | ☑ Optional Features | ☑ Peak and Off Peak Hours |
| ☑ Service Commitment / | ☑ Safety Guidelines | ☑ Equipment Operation |
| Early Termination Fee | ☑ Insurance | ☑ Full Minute Rounding |
| ☑ Your Price Plan | ☑ Billing Period | ☑ Network Surcharge (If Applicable) |
| | ☑ Long Distance | ☑ Roamer Admin. (If Applicable) |

### WIRELESS EQUIPMENT INFORMATION

☐ Sale   ☐ Service Only   ☐ Upgrade Only

| | 333 |
|---|---|
| 2nd Wireless Number | Unlock Code |
| 3rd Wireless Number | Unlock Code |
| 4th Wireless Number | Unlock Code |

### SERVICE COMMITMENT   ☐ Customer's Initials

☑ 1-Year   ☐ 2-Year   ☐ Other

Early Termination Fee of $150

At the end of the Service Commitment, this Agreement will stay in force pursuant to the Terms and Conditions of this Wireless Service Agreement.

### SERVICE ACTIVATION CHARGE

| Activation Charge (One-Time Charge) | One Payment | Installment Bill If Applicable |
|---|---|---|
| $ 36 | $ | $            /mo. |

### MONTHLY PLAN AND PROMOTION*

| Rate Plan | Monthly Service Fee |
|---|---|
| CNPN 500 | $ 39 99 |

| Included Minutes | Price per Add'l Min. | Promotion Min. |
|---|---|---|
| 500 | (peak/anytime) $ .45   (opt) $ | (opt) |

Promotional Offer
3000 N/W /LD rollover

| Expires | Cost after Expiration |
|---|---|
| | $ |

* For informational purposes only; in case of conflicts rate plan brochure controls.

| Optional Features/Rate Plan Options | | | |
|---|---|---|---|
| Check | Feature Name | Cstmr Initial | Cost Mo. |
| | Roadside Assistance | | $ |
| | Phone Insurance (see brochure for details) $35 deductible per claim applies | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| TOTAL | | | $ |

| Qty | Code | Items | Product/Description | ESN/SIM | MSN/IMEI | Net Unit Price |
|---|---|---|---|---|---|---|
| 1 | | | Motorola V60 ? | 89310170106140744505 | 35090669044022 | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| Tax | | | | | | $ |
| TOTAL | | | | | | $ |

**CREDIT CHECK CONSENT AND REPORTING AUTHORIZATION** - I authorize and instruct any person, consumer reporting agency or credit reporting agency to complete and furnish to Cingular Wireless or for Cingular Wireless to compile any information it has on me or the entity on whose behalf I am making this application. I authorize Cingular Wireless to disclose information related to my account(s), including confidential information and payment history, to credit reporting agencies or private credit reporting associations. I also authorize Cingular Wireless to periodically obtain and use my credit report and other credit information from any source including credit reporting agencies, private credit reporting associations, and other third parties, in connection with the provision and offering of wireless and other services. I am hereby notified that a negative credit report reflection on my credit report may be submitted to a credit agency if I fail to fulfill the terms of my credit obligations.

**TERMS AND CONDITIONS** - Other important Terms and Conditions of service for the rate plan, features and/or options selected by you are contained in the Terms and Conditions and rate plan provisions provided to you. The Terms and Conditions and rate plan provisions are incorporated by reference herein. I acknowledge that the Terms and Conditions are on the back of this page or that the Terms and Conditions version number _____ were separately provided to me.   **CUSTOMER'S INITIALS** _____

**GUARANTY** - I guarantee, jointly and severally, the prompt and full payment of all sums now or hereinafter due from the entity shown above, and I may proceed directly against me without the need to proceed first against the above referenced entity.

**DOOR-TO-DOOR SALE** - IF THIS IS A DOOR-TO-DOOR SALE, YOU THE BUYER MAY HAVE RIGHTS UNDER APPLICABLE LAW TO CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. IF APPLICABLE, SEE THE ASSOCIATED NOTICE OF CANCELLATION FORM AND EXPLANATION OF THIS RIGHT.

**NETWORK SURCHARGE** - A network surcharge of $_____ per minute or $_____ per call will apply.

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND THE TERMS AND CONDITIONS, (including changes to Terms and Rates, Limitation of Liability and Arbitration) AND THE PLAN PROVISIONS AND CONDITIONS. I AGREE TO BE BOUND THEREBY. If signing on behalf of an entity, I represent that I am a duly authorized representative of the entity shown under "Billing Name" above, and I have submitted this application in the capacity indicated as my "Title" thereunder, if I am representing a corporation, I acknowledge that the execution of this agreement has been authorized by all necessary corporate actions.

| Customer Signature/Authorization: | Sales/Dealer Signature: |
|---|---|
| | Juan Mena |

### CINGULAR WIRELESS USE ONLY

| Deposit/Advance Payment _____ | Check # _____ | Date Received _____ |
|---|---|---|
| Purchase _____ | Check # _____ | By _____ |
| Visa/MC/Disc/AMEX Card No. _____ | | Exp. Date _____ |

S u i t e   1 1 0 0 - C O   •   5 5 6 5   G l e n r i d g e   C o n n e c t o r   •   A t l a n t a ,   G A   3 0 3 4 2

**TAB 2**





Terms of Service

X cingular
raising the bar.‥all™

# TABLE OF CONTENTS

| | |
|---|---|
| Terms of Service | 1 |
| Service Commitment; Early Termination Fee | 1-2 |
| 30 Day Cancellation Period/Termination | 2 |
| Charges and Disputes | 2 |
| Billing and Payment | 3-5 |
| Dishonored Checks and Other Instruments | 5 |
| Changes to Terms and Rates | 5-6 |
| Contingent Benefits | 6-7 |
| Equipment | 7 |
| Advance Payments and/or Deposits | 7 |
| Late Payment Charges | 7-8 |
| Service Limitations; Limitation of Liability | 8-9 |
| Account Access | 10 |
| Voicemail Service | 10 |
| Arbitration | 10-12 |
| Credit Reporting Authorization | 12 |
| Miscellaneous | 12-13 |

# TERMS OF SERVICE

"Cingular" or "we" "us" or "our" refers to Cingular Wireless LLC, acting on behalf of its FCC-licensed affiliates doing business as Cingular Wireless. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.**

## SERVICE COMMITMENT; EARLY TERMINATION FEE

Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions, or rates as set forth below, you agree to pay us with respect to each Equipment identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee of $175 ("Early Termination Fee"). The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment on which your rate plan is based. AFTER YOUR SER-VICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL EITHER PARTY GIVES NOTICE PURSUANT TO THE TERMINATION PROVISION BELOW.

1

**30 DAY CANCELLATION PERIOD/TERMINATION**

You may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. You will pay for service fees and charges incurred through the termination date, but Cingular will refund your activation fee, if any, if you terminate within three (3) days of activating the service. Also, you may have to return any handsets and accessories purchased with this Agreement. If you terminate after the 30th day but before expiration of the Agreement's Service Commitment, you will pay Cingular an Early Termination Fee for each wireless telephone number associated with the service. Either party may terminate this Agreement at any time after your Service Commitment ends with thirty (30) days notice to the other party. We may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner with any of our representatives, or if we discover that you are under age, or if you fail to make all required payments when due, or if we have reasonable cause to believe that your Equipment is being used for an unlawful purpose or in a way that may adversely affect our service, or if you provided inaccurate credit information or we believe your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

**CHARGES AND DISPUTES**

You are responsible for paying all charges for or resulting from services provided under this Agreement. You will receive monthly bills that are due in full as shown thereon. YOU MUST, WITHIN 100 DAYS OF THE DATE OF THE BILL, NOTIFY US IN WRITING AT CINGULAR WIRELESS, BILL DISPUTE, SUITE 1400, 5565 GLENRIDGE CONNECTOR, P.O. BOX 16, ATLANTA, GA 30342 ("CINGULAR'S ADDRESS") OF ANY DISPUTE YOU HAVE WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL AND

2

ANY SERVICE WE PROVIDED FOR WHICH YOU WERE BILLED, OR YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE. Charges include, without limitation, airtime, roamer, recurring monthly service, activation, administrative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges, any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular. To determine your primary place of use ("PPU") and which jurisdiction's taxes and assessments to collect, you are required to provide us with your residential or business street address. If you do not provide us with such address, or if it falls outside our licensed service area, we may reasonably designate a PPU within the licensed service area for you.

## BILLING AND PAYMENT

Except as provided below, monthly service and certain other charges are billed one month in advance, and there is no proration of such charges if service is terminated on other than the last day of your billing cycle. Monthly service and certain other charges are billed in arrears if you are a former customer of AT&T Wireless and maintain uninterrupted service on select Cingular rate plans, provided, however, that in either case, if you elect to receive your bills for your Cingular services combined with your landline phone bill (where available) you will be billed in advance as provided above. You agree to pay for incoming and outgoing calls, and data services sent to and from your Equipment. AIRTIME AND OTHER MEASURED USAGE ("CHARGEABLE TIME") ARE BILLED IN FULL-MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE ARE ROUNDED UP TO THE NEXT FULL MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. CINGULAR CHARGES A FULL MINUTE OF AIRTIME

3

USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRELESS CALL. DATA TRANSPORT IS BILLED IN FULL-KILOBYTE INCREMENTS, AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL-KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR BILLING PURPOSES. CINGULAR CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORK OVERHEAD, SOFTWARE UPDATE REQUESTS, AND RE-SEND REQUESTS CAUSED BY NETWORK ERRORS CAN INCREASE MEASURED KILOBYTES. If you select a rate plan that includes a predetermined allotment of Services (for example, a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as a part of such rate plan, any unused allotment of services from one billing cycle will not carry over to any other billing cycle. We may bill you in a format as we determine from time to time. Additional charges may apply for additional copies of your bill, or for detailed information about your usage of Services. Charges for usage of services on networks maintained by other carriers or on networks acquired by Cingular after August 31, 2004 may appear on your bill after the billing cycle in which the usage occurred. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the call disconnect signal has been confirmed. All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time.

4

Chargeable Time may also occur from other uses of our facilities, including by way of example, voice mail deposits and retrievals, and call transfers. Calls that begin in one rate period and end in another rate period may be billed in their entirety at the rates for the period in which the call began. If your wireless phone or other device ("Equipment") is lost or stolen, **you will be responsible for all charges incurred on your phone number until you report the theft or loss and provide a police report number to us.** After you report the theft or loss to us, you remain responsible for complying with your other obligations under this Agreement, including, but not limited to, payment of your monthly service fee. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. We may require payment by money order, cashier's check or a similarly secure form of payment at our discretion.

## DISHONORED CHECKS AND OTHER INSTRUMENTS

We will charge you $30.00 or the highest amount allowed by law, whichever is less, for any check or other instrument (including credit card chargebacks) tendered by you and returned unpaid by a financial institution for any reason. You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts.

## CHANGES TO TERMS AND RATES

We may change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. We will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other governmentally imposed fees, whether or not assessed directly upon you, may be increased

5

based upon the government's or our calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU SUBSCRIBE, BEYOND THE LIMITS SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE MATERIALLY DECREASE THE GEOGRAPHI-CAL AREA IN WHICH YOUR AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL DISCLOSE THE CHANGE AT LEAST ONE BILLING CYCLE IN ADVANCE (EITHER THROUGH A NOTICE WITH YOUR BILL, A TEXT MESSAGE TO YOUR EQUIPMENT, OR OTHERWISE) AND YOU MAY TER-MINATE THIS AGREEMENT WITHOUT PAYING AN EARLY TERMINATION FEE OR RETURNING OR PAYING FOR ANY PROMOTIONAL ITEMS, PROVIDED YOUR NOTICE OF TERMINATION IS DELIVERED TO US WITHIN THIRTY (30) DAYS AFTER THE FIRST BILL REFLECTING THE CHANGE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

**CONTINGENT BENEFITS**

You may receive or be eligible for certain rate plans, discounts, features, promotions, and other benefits ("Benefits") through a business or government customer's agreement with us ("Business Agreement"). Any and all such Benefits are provided to you solely as a result of the corresponding Business Agreement and such Benefits may be modified or terminated without notice. If a business or government entity pays your charges or is otherwise liable for the charges, you authorize us to share your account information with that entity and/or its authorized agents. If you are on a rate plan and/or receive certain Benefits tied to a Business Agreement with us, but you are liable for your own charges, then you authorize us to share enough account information with that entity and/or its authorized agents to verify your continuing eligibility for those Benefits and/or rate plan. You may receive Benefits because of your agreement to have the charges for your Service billed ("Joint Billing") by a landline company affiliated with Cingular ("Affiliate") or because you subscribe to certain service provided by an Affiliate. If you cancel Joint

6

Billing or the Affiliate service your rates will be adjusted without notice to a rate plan for which you qualify.

**EQUIPMENT**

Your Equipment must be compatible with, and not interfere with, our service, and must comply with all applicable laws, rules and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Equipment purchased for use on our network may not function on other networks.

**ADVANCE PAYMENTS AND/OR DEPOSITS**

We may require you to make deposits or advance payments for services, which we may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. We may require additional advance payments or deposits if we determine that the initial payment was inadequate. Based on your creditworthiness as we determine it, we may establish a credit limit and restrict service or features. If your account balance goes beyond the limit we set for you, we may immediately interrupt or suspend service until your balance is brought below the limit. Any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts in good standing to maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

**LATE PAYMENT CHARGES**

Late payment charges are based on the state to which the area code of the wireless telephone number assigned to you is assigned by the North American Numbering Plan Administration (for area code assignments see

7

http://www.nationalnanpa.com/area_code_maps). You agree that for amounts not paid by the due date, CINGULAR may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5.00 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, PA, OK, OH, RI, VA, VT, WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

## SERVICE LIMITATIONS; LIMITATION OF LIABILITY

Service may be interrupted, delayed or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g. 976, 900 and international destinations) or certain websites in our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the Service and may screen and delete information prior to delivery of that information to you. **There are gaps in service within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND.** Airtime and other service charges apply to all calls, including involuntarily terminated calls. CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTIC-ULAR PURPOSE, SUITABILITY, OR PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL CINGULAR BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omis-sions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment,

8

including use in a vehicle; (d) claim against you by third parties; (e) damage or injury caused by a suspension or termination of service by Cingular; or (f) damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. Our liability to you for service fail-ures is limited solely to the credit set forth above. Unless applicable law precludes parties from clauses, Cingular shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through Cingular, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold Cingular and its officers, directors, employ-ees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by Cingular or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of this Agreement. This obligation shall survive termination of your service with Cingular. Cingular is not liable to you for changes in operation, equipment or technology that cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

9

## ACCOUNT ACCESS

You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you.

## VOICEMAIL SERVICE

We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

## ARBITRATION

**Please read this carefully.** It affects your rights. Cingular and you (such references include our respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate all disputes and claims (including ones that already are the subject of litigation) arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between Cingular and you. Notwithstanding the foregoing, either party may bring an individual action in small claims court. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Intent to Arbitrate ("Notice"). The Notice to Cingular should be addressed to: General Counsel, Cingular Wireless, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Arbitration Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If we do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. After Cingular receives notice at the Arbitration Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. All issues are for the arbitra-

10

tor to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. The arbitration shall be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and shall be administered by the AAA. The AAA Rules are available at www.adr.org or by writing to the Arbitration Notice Address. Except as otherwise provided for herein, Cingular will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then the payment of all such fees shall be governed by the AAA Rules. In such case, you agree to reimburse Cingular for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules. If the arbitrator grants relief to you that is equal to or greater than the value of your Demand, Cingular shall reimburse you for your reasonable attorneys' fees and expenses incurred for the arbitration. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees and expenses at any time during the proceeding and upon request from either party within 14 days of the arbitrator's ruling on the merits. **You agree that, by entering into this Agreement, you and Cingular are waiving the right to a trial by jury.** Unless Cingular and you agree otherwise, all hearings conducted as part of the arbitration shall take place in the county (or parish) of your billing address. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may

11

not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void. Notwithstanding any provision in this Agreement to the contrary, we agree that if Cingular makes any change to this arbitration provision (other than a change to the Arbitration Notice Address) during your Service Commitment, you may reject any such change and require Cingular to adhere to the language in this provision.

## CREDIT REPORTING AUTHORIZATION

You authorize Cingular to: (a) disclose your account information, including your payment history and confidential information, to credit reporting agencies or private credit reporting associations, and (b) periodically obtain and use your credit report and other credit information from any source in connection with Cingular's offering of wireless and other services. You understand that if you fail to fulfill the terms of your credit obligations under this Agreement, Cingular may report your failure to a credit reporting agency.

## MISCELLANEOUS

This Agreement, the signature or rate summary sheet, the terms included in the rate brochure(s) describing your plan and services, terms of service for products and services not otherwise described herein that are posted on applicable Cingular websites, and any documents expressly referred to herein or therein, make up the complete agreement between you and Cingular, and supersede any and all prior agreements and under-standings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the

12

arbitration clause; if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. Cingular may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law. Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information. You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you. In any event, we reserve the right to contact you by any means regarding customer service related notifications, or other such information. The original version of this Agreement is the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version.

13



79303

Cingular and the graphic icon are registered trademarks of Cingular Wireless, LLC. Raising The Bar is a
service mark of Cingular Wireless, LLC. © 2006 Cingular Wireless, LLC. All rights reserved.

FMS TC T 0206 0088 E

**TAB 3**

Notice of Improved Arbitration Clause

## ✕ cingular
WIRELESS

### DISPUTE RESOLUTION BY BINDING ARBITRATION

**Please read this carefully. It affects your rights.**

**Summary:**
Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our Customer Service Department at 1-800-331-0500. **In the unlikely event that Cingular's Customer Service Department is unable to resolve a complaint you may have to your satisfaction (or if Cingular has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** Cingular will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from Cingular to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), Cingular will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what Cingular has offered you to settle the dispute.

1

**Arbitration Agreement:**

(1) Cingular and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

References to "Cingular," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and Cingular are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

2

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to Cingular should be addressed to: General Counsel, Cingular Wireless LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If Cingular and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by Cingular or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Cingular is entitled.

You may download or copy a form Notice and a form to initiate arbitration at: http://www.cingular.com/arbitration-forms

(3) After Cingular receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, Cingular will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA.

3

The AAA Rules are available online at www.adr.org, by
calling the AAA at 1-800-778-7879, or by writing to
the Notice Address. (You may obtain information, that
is designed for non-lawyers, about the arbitration
process at http://www.cingular.com/arbitration-information)
All issues are for the arbitrator to decide, including
the scope of this arbitration provision, but the arbitrator
is bound by the terms of this Agreement. Unless Cingular
and you agree otherwise, any arbitration hearings will
take place in the county (or parish) of your billing address.
If your claim is for $10,000 or less, we agree that you
may choose whether the arbitration will be conducted
solely on the basis of documents submitted to the
arbitrator, through a telephonic hearing, or by an
in-person hearing as established by the AAA Rules.
If your claim exceeds $10,000, the right to a hearing
will be determined by the AAA Rules. Except as
otherwise provided for herein, Cingular will pay all
AAA filing, administration and arbitrator fees for any
arbitration initiated in accordance with the notice
requirements above. If, however, the arbitrator finds
that either the substance of your claim or the relief
sought in the Demand is frivolous or brought for
an improper purpose (as measured by the standards
set forth in Federal Rule of Civil Procedure 11(b)),
then the payment of all such fees will be governed by
the AAA Rules. In such case, you agree to reimburse
Cingular for all monies previously disbursed by it that
are otherwise your obligation to pay under the
AAA Rules.

(4) If, after finding in your favor in any respect on
the merits of your claim, the arbitrator issues you
an award that is:

4

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and

- greater than the value of Cingular's last written settlement offer made before an arbitrator was selected,

then Cingular will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address ("the premium") instead of the arbitrator's award; and

- pay your attorney, if any, twice the amount of attorneys' fees your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If Cingular did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys'

5

fees or costs. Although under some laws Cingular may
have a right to an award of attorneys' fees and expenses
if it prevails in an arbitration, Cingular agrees that it will
not seek such an award.

(6) The arbitrator may award injunctive relief only in
favor of the individual party seeking relief and only
to the extent necessary to provide relief warranted
by that party's individual claim. **YOU AND CINGULAR
AGREE THAT EACH MAY BRING CLAIMS AGAINST
THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL
CAPACITY, AND NOT AS A PLAINTIFF OR CLASS
MEMBER IN ANY PURPORTED CLASS OR
REPRESENTATIVE PROCEEDING.** Further, unless
both you and Cingular agree otherwise, the arbitrator
may not consolidate more than one person's claims,
and may not otherwise preside over any form of a
representative or class proceeding. If this specific
proviso is found to be unenforceable, then the entirety
of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement
to the contrary, we agree that if Cingular makes any
change to this arbitration provision (other than a change
to the Notice Address) during your Service Commitment,
you may reject any such change and require Cingular
to adhere to the language in this provision if a dispute
between us arises.



8782▲                                                        6

**TAB 4**

**What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing?** 

**QUESTION:**

What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing?

**ANSWER:**

AT&T Mobility ("AT&T") (formerly Cingular Wireless) is committed to resolving all disputes in a fair, effective, and cost-efficient manner. Accordingly, every customer's Service Agreement provides for disputes to be resolved in binding arbitration or Small Claims Court. AT&T's arbitration provision, which is set forth verbatim below, has been designed to make arbitration as convenient and inexpensive for our customers as possible. Among other things, it specifies that AT&T will bear all of the costs of arbitration (unless an arbitrator determines that a customer's claims are frivolous), and that, under certain circumstances (explained in the arbitration provision), AT&T will pay a premium to you and your attorney if you receive an arbitration award greater than the value of AT&T's settlement offer. This right to attorney's fees supplements any right that you may have under applicable law (as explained in the provision).

As part of AT&T's commitment to the fair, effective, and cost-efficient resolution of all disputes, AT&T has made its current arbitration provision available to all current and former customers – including customers who were customers of Cingular Wireless, the former AT&T Wireless, BellSouth Mobility, Ameritech Mobile, Pacific Bell Wireless, SBMS, SNET Mobility, and SBC Wireless. AT&T will abide by the terms of its current arbitration provision in all instances. In particular, in those rare occasions when AT&T may have a claim against a current or former customer, AT&T will arbitrate that claim or bring it in small claims court, even if a predecessor company's arbitration provision entitles AT&T to pursue such claims in any court that has jurisdiction. Customers whose contracts include arbitration provisions that differ from this current arbitration provision may, of course, arbitrate pursuant to the terms of those contracts if they prefer to do so. Similarly, it you are a former customer whose contract did not include an arbitration provision, you may arbitrate any dispute you may have under the current arbitration provision.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**

**Please read this carefully. It affects your rights.**

**Summary:**

Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 800-331-0500. **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

**Arbitration Agreement:**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the

subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement. References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T Mobility LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled.

You may download or copy a form Notice and a form to initiate arbitration from here:   http://www.wireless.att.com/arbitration-forms.

(3) After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address.  (You may obtain information that is designed for non-lawyers, about the arbitration process at http://www.wireless.att.com/arbitration-information).  All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and greater than the value of AT&T's last written settlement offer made before an arbitrator was selected:

then AT&T will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims

court in the county of your billing address ("the premium") instead of the arbitrator's award; and
- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU **AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

*If you are viewing information on devices or services, please note: content reflects instructions for devices and services purchased from AT&T.*
*Some differences may exist for devices not purchased from AT&T.*

# EXHIBIT 2

Audet & Partners, LLP

Attorneys-at-Law

221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556
www.audetlaw.com

November 15, 2007

**VIA E-MAIL**
**mjstortz@dbr.com**

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235

Re:    *Pishvaee v. VeriSign, Inc., et al.*

Dear Mr. Stortz:

We have your letter of November 14, 2007.

Based on applicable law and the facts of this dispute, my client is unwilling to 'dismiss' the pending class action lawsuit against your client or to unilaterally agree to arbitrate this consumer class action.  With respect to your request for arbitration, please advise whether your client will agree to proceed with class-wide arbitration.  Your client's response to this question will better allow us to formulate our response on the issue of arbitration.

If you have any questions, please feel free to call.  I look forward to your response.

Very truly yours,

William M. Audet

**EXHIBIT 3**

# DrinkerBiddle&Reath
L L P

Michael J. Stortz
415-591-7500
mjstortz@dbr.com

*Law Offices*

50 Fremont Street
20TH Floor
San Francisco, CA
94105-2235

415-591-7500
415-591-7510 fax
www.drinkerbiddle.com

PHILADELPHIA
NEW YORK
WASHINGTON
LOS ANGELES
CHICAGO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

**VIA E-MAIL AND FIRST CLASS MAIL**

November 19, 2007

William M. Audet
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105

Re:    *Pishvaee v. Verisign, Inc.*, No. C-07-3407 PVT (N.D. Cal.)

Dear Mr. Audet:

Thank you for your letter of November 15, 2007, in response to my letter of the previous day.  I understand your letter to constitute a refusal by your client, Babak Pishvaee, to arbitrate his dispute in accordance with his agreement with defendant AT&T Mobility LLC ("ATTM").  ATTM cannot agree to your client's request "to proceed with class-wide arbitration."  As you are aware, the arbitration agreement between your client and ATTM does not authorize arbitration on a class-wide basis.

In light of your client's refusal to honor his agreement to arbitrate, ATTM has no choice but to file a motion to compel arbitration.  We will do so shortly.

Very truly yours,

Michael J. Stortz

MJS

*Established*
*1849*

SF1\392037\1