1  RONALD L. JOHNSTON (State Bar No. 57418)
   ronald.johnson@aporter.com
2  ANGEL L. TANG (State Bar No. 205396)
   angel.tang@aporter.com
3  ARNOLD & PORTER LLP
   777 S. Figueroa Street, Suite 4400
4  Los Angeles, CA 90017
   (213) 243-4000
5
   JAMES COOPER (Admitted *Pro Hac Vice*)
6  james.cooper@aporter.com
   LAURA RIPOSO VANDRUFF (Admitted *Pro Hac Vice*)
7  laura.vandruff@aporter.com
   ARNOLD & PORTER LLP
8  555 12th St., NW
   Washington, DC 20004
9  (202) 942-5000

10 Attorneys for Defendants
   m-Qube, Inc. & VeriSign, Inc.
11

12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15                   **SAN JOSE DIVISION**

16

17 BABAK PISHVAEE, individually, and on      )  Case No. C-07-3407-JW
   behalf of a class of similarly situated    )
18 individuals,                               )  **DEFENDANT M-QUBE, INC. AND**
                                              )  **VERISIGN, INC'S NOTICE OF MOTION**
19            Plaintiff,                       )  **AND MOTION TO DISMISS OR, IN THE**
                                              )  **ALTERNATIVE TO COMPEL**
20    v.                                      )  **ARBITRATION, MEMORANDUM OF**
                                              )  **POINTS AND AUTHORITIES IN SUPPORT**
21 VERISIGN, INC., a California corporation,   )  **THEREOF**
   M-QUBE, INC., a Delaware corporation,      )
22 and AT&T MOBILITY LLC, formerly            )  **[Filed Concurrently With Proposed Order]**
   known as Cingular Wireless LLC, a          )
23 Delaware corporation,                      )  Date:  Tuesday February 4, 2008
                                              )  Time:  9:00 a.m.
24            Defendants.                      )  Place: Courtroom 8
                                              )
25 _____ )  Judge:  Hon. James Ware

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

INTRODUCTION ................................................................................................. 1

I.    PLAINTIFF HAS NOT PLED ADEQUATE FACTS TO DEMONSTRATE HE
      HAS STANDING TO PURSUE ANY OF HIS CAUSES OF ACTION ............................... 2

II.   PLAINTIFF HAS FAILED TO ALLEGE ADEQUATELY ANY CAUSE OF
      ACTION AGAINST VERISIGN .................................................................... 3

III.  PLAINTIFF'S CLAIM UNDER THE CONSUMER LEGAL REMEDIES ACT
      FAILS AS A MATTER OF LAW .................................................................. 4

      A.    Plaintiff Has Failed to Allege a Consumer Transaction Between Plaintiff
            and m-Qube or VeriSign ..................................................................... 4

      B.    Plaintiff's CLRA Claim Fails To Identify Any False Or Misleading
            Representations By Defendants ......................................................... 7

      C.    Plaintiff's Claim Also Fails Because Plaintiff Has Failed to Allege
            Causation and Damages in Support of His CLRA Claim ........................... 8

IV.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS BARRED AS A MATTER
      OF LAW .............................................................................................. 9

      A.    Plaintiff's Unjust Enrichment Claim Is Barred Because The Subject
            Matter Of Plaintiff's Claim Is Governed By A Valid Contract ................... 9

      B.    Plaintiff's Claim For Unjust Enrichment Fails Because Any Benefit
            Conferred Upon Defendants Was Incidental To Plaintiff's Performance Of
            An Obligation Under His Wireless Service Contract ............................... 11

V.    PLAINTIFF'S CLAIMS UNDER SECTIONS 17200 AND 17500 OF THE
      CALIFORNIA BUSINESS AND PROFESSIONS CODE FAIL AS A MATTER
      OF LAW BECAUSE HE FAILS TO ALLEGE INJURY IN FACT OR
      CAUSATION........................................................................................ 12

      A.    Plaintiff Cannot Meet the Injury in Fact or Loss of Money or Property
            Requirements of the UCL ................................................................. 13

      B.    Plaintiff Cannot Meet the Causation Requirement of the UCL ................. 13

VI.   PLAINTIFF'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
      SHOULD BE DISMISSED ..................................................................... 16

      A.    Plaintiff's Claim for Declaratory Relief Should be Dismissed Because
            Plaintiff has Not Pled a Justiciable Claim Against m-Qube or VeriSign ...... 16

- i -

1
2

B.      Plaintiff's Claim for Injunctive Relief Should be Dismissed Because
        Compensatory Damages Would Remedy Plaintiff's Claims ...................................... 17

VII.    IN THE ALTERNATIVE, PLAINTIFF SHOULD BE COMPELLED TO
        ARBITRATE HIS CLAIMS AGAINST M-QUBE AND VERISIGN
        PURSUANT TO HIS ARBITRATION AGREEMENT WITH AT&T
        MOBILITY ......................................................................................................................... 17

CONCLUSION .......................................................................................................................... 21

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

3

Page(s)

**CASES**

4

*Abrego Abrego v. The Dow Chemical Co.*,
    443 F.3d 676 (9th Cir. 2006)...........................................................................18

5

6

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...............................................................9

7

*Augustine v. FIA Card Services, N.A.*,
    485 F. Supp. 2d 1172 (E.D. Cal. 2007)................................................................7

8

9

*Babb v. Super. Ct.*,
    3 Cal. 3d 841 (1971) .........................................................................................16

10

*Bachilla v. Pacific Bell Telephone Co., No. Civ. S-07-739*,
    2007 WL 2825924 (E.D. Cal. Sept. 25, 2007).....................................................18

11

12

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990)................................................................................2

13

*Bell Atl. Corp. v. Twombly*,
    127 S.Ct. 1955 (2007) ..........................................................................................2

14

15

*Bitter v. Borton, Petrini & Conron*,
    Nos. H022431, H022032, 2002 WL 557844 (Cal. Ct. App. Apr. 15, 2002) ...........8

16

*Boston Telecomm. Group v. Deloitte Touche Tohmatsu*,
    278 F. Supp. 2d 1041 (N.D. Cal. 2003) ..............................................................19

17

18

*Britton v. Co-Op Banking Group*,
    4 F.3d 742 (9th Cir. 1993)...................................................................................19

19

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996)..................................................................................2

20

21

*California Medical  Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001) ...............................................................9, 10, 11, 12

22

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (Cal. Ct. App. 2002) ...................................................................16

23

24

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994)..................................................................................2

25

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006)............................................................................19

26

27

*Curtis v. Kushner*,
    No. 1:06-CV-00045, 2007 WL 2572117 (E.D. Cal. Sept. 5, 2007).......................4

28

*Daghlian v. DeVry University, Inc.*,
    461 F. Supp. 2d 1121 (C.D. Cal. 2006) ................................................................. 12

*Emery v. Visa International Service Association*,
    95 Cal. App. 4th 952 (2002) ..................................................................... 14, 15

*Faigman v. AT&T Mobility LLC, No. C 06-04622*,
    2007 WL 2088561 (N.D. Cal. July 18, 2007) ............................................... 7, 8

*First Nationwide Sav. v. Perry*,
    11 Cal. App. 4th 1657 (1992) ........................................................................ 9

*Freeman v. Mattress Gallery*,
    Nos. E039614, E039615, 2007 WL 3300717 (Cal. Ct. App. Nov. 8, 2007) ........... 12, 13

*Goodwin v. Anheuser-Busch Cos., No. BC310105*,
    2005 WL 280330 (Cal. Super. Ct. Jan. 28, 2005) ......................................... 7, 8

*Government Computer Sales Inc., v. Dell Marketing*,
    199 Fed. Appx. 636 (9th Cir. 2006) ............................................................ 18

*Grigson v. Creative Artists Agency, LLC*,
    210 F.3d 524 (5th Cir. 2000) ...................................................................... 20

*Hawkins v. KPMG LLP*,
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................. 19, 21

*Hill v. GE Power Systems, Inc.*,
    282 F.3d 343 (5th Cir. 2002) ...................................................................... 20

*In re Firearm Cases*,
    126 Cal. App. 4th 959 (2005) .................................................................. 15, 16

*Kleffman v. Vonage Holdings Corp., No. CV 07-2406*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ............................................. 4, 5

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................... 4, 12

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ...................................................................... 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 3

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) .................................................................... 19

*Major-Blakeney Corp. v. Jenkins*,
    121 Cal. App. 2d 325 (1951) .................................................................. 11, 12

*McAdams v. Monier, Inc.*,
    151 Cal. App. 4th 667 (2007) ................................................................... 3, 12

- iv -

*Meyer v. Sprint Spectrum L.P.*,
    150 Cal. App. 4th 1136 (2007) ............................................................... 12, 13

*N. Side Prop. Owners' Ass'n v. Hillside Mem.'l Park*,
    70 Cal. App. 2d 609 (1945).......................................................................... 17

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)......................................................................... 2

*Nordberg v. Trilegant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................ 5, 6, 7, 8, 9

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998)....................................................................... 18

*Pence v. Andrus*,
    586 F.2d 733 (9th Cir. 1978)......................................................................... 3

*People v. Pac. Land Research Co.*,
    20 Cal.3d 10 (1977) .................................................................................... 9

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................................................... 3

*Schauer v. Mandarin Gems of Cal., Inc.*,
    125 Cal. App. 4th 949 (2005) .................................................................. 5, 6, 7

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ................................................................................... 3

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
    279 F.3d 817 (9th Cir. 2002)......................................................................... 3

*Snyder v. Talon, No. CV 93-2722*,
    1993 WL 597121 (C.D. Cal. Oct. 29, 1993) ..................................................... 4

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988)....................................................................... 21

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)......................................................................... 2

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
    10 F.3d 753 (11th Cir. 1993)....................................................................... 19

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
    368 F.3d 1053 (9th Cir. 2004)...................................................................... 21

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003)........................................................................ 5

*Townsend v. Columbia Operations*,
    667 F.2d 844 (9th Cir. 1982)....................................................................... 18

- v -

*Vess v. Ciba-Geigy Corp. USA, No. Civ. 00-CV-1839B*,
    2001 WL 290333 (S.D. Cal. Mar. 9, 2001) ............................................................. 8

*Von Grabe v. Sprint*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) .............................................................. 4, 5

*Wal-Noon Corp. v. Hill*,
    45 Cal. App. 3d 605 (1975)...................................................................... 10, 11

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal. App. 4th 746 (Cal. App. 4 Dist. 2003) ...................................................... 9

## STATUTES AND RULES

9 U.S.C. § 3 .................................................................................................... 18

Cal. Civ. Code § 1761(d) ................................................................................ 5

Cal. Civ. Code § 1770 ............................................................................... 4, 7, 8

Cal. Civ. Code § 1780(a) ............................................................................ 4, 8

Cal. Civ. Code § 1782(a) ................................................................................ 4

Cal. Civ. Code § 3368 ................................................................................... 16

Cal Civ. Code §§ 1750 et. seq.......................................................................... 4

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1, 2, 7

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE THAT, as soon as counsel may be heard, defendants VeriSign, Inc.

4   and m-Qube, Inc. will move, and hereby do move, the Court for an order pursuant to Federal Rule of

5   Civil Procedure 12(b)(6) dismissing all counts against VeriSign and m-Qube (Count I under the

6   Consumer Legal Remedies Act, Count II under sections 17200 and 17500 of the Business and

7   Professions Code, Count III for unjust enrichment, and Count IV for Declaratory and Injunctive

8   Relief) without leave to amend, on the grounds that each of the counts fails to state a claim upon

9   which relief can be granted.  In the alternative, m-Qube, Inc. and VeriSign, Inc. will move, and hereby

10  do move, the Court to compel arbitration and dismiss this litigation.

11       This Motion is based on the Notice of Motion, the accompanying Memorandum of Points and

12  Authorities, all pleadings, papers and records on file herein, any matter of which the Court may take

13  judicial notice, and such oral argument as may be presented at the hearing on these Motions.

14

15  Dated:  November 20, 2007              Respectfully submitted,
                                           ARNOLD & PORTER LLP
16

17                                         By: /s/ Angel L. Tang
                                           Ronald L. Johnston
18                                         Angel L. Tang
                                           777 S. Figueroa Street, Suite 4400
19                                         Los Angeles, CA 90017
                                           (213) 243-4000
20

21                                         *Admitted Pro Hac Vice*:
                                           James Cooper
22                                         Laura Riposo VanDruff
                                           555 12th Street, NW
23                                         Washington, D.C. 20004
                                           (202) 942-5000
24

25                                         *Attorneys for Defendants*
                                           *VeriSign, Inc. and m-Qube, Inc.*

26

27

28

---

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff's Complaint[1] alleges very little with respect to the Plaintiff himself.  It appears from the Complaint that Plaintiff has a cellular phone which operates on the AT&T Mobility network by virtue of a contract between Plaintiff and AT&T (or its predecessor Cingular).  If Plaintiff has a billing dispute with AT&T, which is not directly alleged but might be inferred, the nature and amount of that dispute and the status of Plaintiff's efforts to remedy his concerns pursuant to his service contract with AT&T are left out of his Complaint.  Accordingly, defendants m-Qube and VeriSign are left to guess at what the particular bases of Plaintiff's claims -- and m-Qube and VeriSign's roles in such claims -- might be.

As a general matter, cellular telephones are capable of transmitting and receiving text or graphic messages sent by computers or by other cellular phones.  There are third-party services, as the Complaint alleges, *see* Compl. ¶ 12, that create or license such "mobile content" and sell it to consumers who wish to receive the content over their mobile phones.  Consumers are billed for this content by their cellular service provider as part of their regular cellular phone bill.  *Id.* ¶ 16.  m-Qube's business is, in part, to provide a distribution channel between these third-party "content providers" and cellular network operators such as AT&T.  *Id.* ¶¶ 12-13.  That distribution channel carries both the third-party services' content and their billing messages to the cellular operator.  *Id.*  m-Qube is, in other words, a processor of mobile content traffic.

Plaintiff does not allege that he had any agreement or any contact whatsoever with m-Qube or VeriSign.  Because the Complaint includes no direct allegations regarding Plaintiff's particular situation, it likewise does not include any reference to any statements or knowledge of m-Qube's or VeriSign's that pertains to the circumstances of Plaintiff's Complaint.  As a consequence, each of Plaintiff's claims are missing essential elements.  Plaintiff's claims against m-Qube and VeriSign should be dismissed in their entirety.

---

[1] As used herein, "Complaint" refers to Plaintiff's First Amended Complaint filed on September 21, 2007.

1

## <u>ARGUMENT</u>

2          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency

3   of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Such motions should be granted if

4   plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

5   *Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007). "Dismissal can be based on the lack of a cognizable

6   legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

7   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although "allegations of material fact are

8   taken as true and construed in the light most favorable to the nonmoving party," *Cahill v. Liberty Mut.*

9   *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), a court need not accept as true (1) allegations that are

10  conclusory, (2) legal conclusions, (3) unwarranted deductions of fact, and (4) unreasonable inferences.

11  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness*

12  *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

13          Here, the Complaint fails for a variety of independent reasons set forth below.

14  **I.    PLAINTIFF HAS NOT PLED ADEQUATE FACTS TO DEMONSTRATE HE HAS
15         STANDING TO PURSUE ANY OF HIS CAUSES OF ACTION**

16          Plaintiff alleges in a conclusory fashion that m-Qube and VeriSign unlawfully profited from

17  processing the bills of cellular phone customers for premium mobile content not authorized by the

18  current owner of the phone number. *See, e.g.*, Compl. ¶ 17. But he fails to plead any facts alleging

19  that <u>he</u> was billed for unauthorized mobile content, that <u>he</u> paid these charges, or that <u>he</u> was not

20  refunded for any overcharges. Indeed, notwithstanding allegations quoting comments apparently

21  placed on an internet message board, *see* Compl. ¶ 15, Plaintiff does not allege a single fact relating to

22  his use of or charges for mobile content. As a result, he has failed to provide "enough facts to state a

23  claim to relief that is plausible on its face." *Bell Atlantic*, 127 S.Ct. at 1960 (2007); *see also Balistreri*,

24  901 F.2d at 699 (holding that when plaintiff fails to allege sufficient facts to assert a cognizable legal

25  theory the action should be dismissed).

26

27

28

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

1        Plaintiff cannot bring a claim purely in a representative capacity.[2]  In order to have standing to

2   bring any of his class claims, he must allege injury to himself.[3]  *See Schlesinger v. Reservists Comm.*

3   *to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is

4   essential that a plaintiff must be a part of that class, that is, he must possess the same interest and

5   suffer the same injury shared by all members of the class he represents."); *Lujan v. Defenders of*

6   *Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that in order to have standing a plaintiff must properly

7   allege injury in fact).  The burden to establish standing is on the plaintiff.[4]  Because Plaintiff here has

8   failed to allege any facts related to any personal injury, Plaintiff's Complaint should be dismissed in its

9   entirety.  *See, e.g.*, *Raines*, 521 U.S. at 817-24, 830 (vacating the decision by district court that denied

10  a motion to dismiss and ordering court to dismiss the complaint for failing to allege a cognizable

11  injury under the standing doctrine).

12
13  ## II.     PLAINTIFF HAS FAILED TO ALLEGE ADEQUATELY ANY CAUSE OF ACTION AGAINST VERISIGN

14       In his Complaint, Plaintiff makes no mention of VeriSign with respect to any of his allegations.

15  He does not directly allege any claim against VeriSign, nor does he allege any vicarious or other form

16  of indirect liability.  In fact, the only mention of VeriSign in the entire Complaint comes in the

17  description of the parties.  *See* Compl. ¶¶ 1, 5-6.  As a result, Plaintiff's claims against VeriSign

18  should be dismissed.  *See Curtis v. Kushner*, No. 1:06-CV-00045, 2007 WL 2572117, at *3 (E.D. Cal.

---

[2]  *See, e.g., Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) ( "[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (holding that if a named plaintiff does not have a claim "she cannot represent others who may have such a claim").

[3]  As noted below in Section V, following Proposition 64, Sections 17200 and 17500 of the California Business and Professions Code no longer allow actions by private parties in a representative capacity.  It is well-settled that the plaintiff must allege injury in fact and causation with respect to himself.  *See McAdams v. Monier, Inc.*, 151 Cal. App. 4th 667, 677 (2007) (" To start with, plaintiff, as the class representative must meet the standing requirements of section 17204; that is, he must have suffered injury in fact and have lost money or property as a result of the alleged [harm].").

[4]  *See, e.g., Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) ("The party seeking to invoke the jurisdiction of the federal courts has the burden of alleging specific facts sufficient to satisfy" the standing requirements); *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997) (plaintiffs must satisfy standing requirements "based on the complaint").

- 3 -

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

1  Sept. 5, 2007) (dismissing claims against several defendants because plaintiff had made no allegations

2  with respect to the liability of those defendants); *Snyder v. Talon*, No. CV 93-2722, 1993 WL 597121,

3  at *5 n.1 (C.D. Cal. Oct. 29, 1993) (granting motion to dismiss without leave to amend when plaintiff

4  failed to make any allegations regarding a particular party) (citing *Borezka v. United States*, 739 F.2d

5  444, 446-48 (9th Cir. 1984)).

6
7  **III.    PLAINTIFF'S CLAIM UNDER THE CONSUMER LEGAL REMEDIES ACT FAILS AS A MATTER OF LAW**

8       The Consumer Legal Remedies Act ("CLRA"), Cal Civ. Code §§ 1750 et. seq., does not reach

9  the conduct alleged in the Complaint and therefore should be dismissed with prejudice under Rule

10  12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's claim under the CLRA fails for each of

11  the following reasons: (1) there was no consumer transaction between Plaintiff and either m-Qube or

12  VeriSign; (2) Plaintiff has failed to identify any false or misleading claim made by m-Qube or

13  VeriSign; and (3) Plaintiff has failed to allege adequately causation and damages.[5]

14
15       **A.    Plaintiff Has Failed to Allege a Consumer Transaction Between Plaintiff and m-Qube or VeriSign**

16       Under the CLRA, only a "consumer" may state a cause of action.  Cal. Civ. Code § 1780(a);

17  *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406, 2007 WL 1518650, at *4 (C.D. Cal. May 23,

18  2007) (holding that plaintiff's cause of action under the CLRA "fails quickly because only a

19  'consumer' may bring CLRA claims."); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *Von*

20  *Grabe*, 312 F. Supp. 2d at 1303.  The CLRA defines a "consumer" as an individual "who seeks or

21
22  ─────────────
[5] Where a plaintiff seeks damages under the CLRA, the statute requires that he or she must first provide at least 30 days' notice "of the particular alleged violations" of Cal. Civ. Code § 1770 and

23  demand "that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770."  Cal. Civ. Code § 1782(a).  Notice must be in writing, and the statute

24  requires that it be "sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California."  *Id.*  The failure to provide notice in an action seeking damages and injunctive relief warrants a dismissal of plaintiff's

25  CLRA claim.  *See, e.g., Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (dismissing CLRA damages claim where plaintiff failed to provide requisite notice); *Von Grabe v.*

26  *Sprint*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (holding that "substantial compliance" with § 1782 was required and dismissing plaintiff's CLRA claim with prejudice).  Here, Plaintiff

27  acknowledges that he failed to provide notice in the manner specified by the statute, *see* Compl. ¶ 35, providing a separate basis on which the Court should dismiss Plaintiff's CLRA claim.

28

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

1    acquires, by purchase or lease, any goods or services for personal, family or household purposes."

2    Cal. Civ. Code § 1761(d).  In addition, the CLRA defines transaction as "*an agreement* between a

3    consumer and any other person, whether or not the agreement is a contract enforceable by action, and

4    includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code § 1761(e)

5    (emphasis added).

6         Interpreting these provisions, California courts have made clear that there must be a consumer

7    transaction directly between the plaintiff and the defendant in order for a claim to be actionable under

8    the CLRA.  *See Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005) (holding

9    that plaintiff was not a "consumer" within the meaning of the statute where plaintiff's ownership of

10   defendant's goods "was not acquired as a result of her own *consumer transaction with defendant*")

11   (emphasis added); *Kleffman*, 2007 WL 1518650, at *4 (holding that [plaintiff] is not a "consumer"

12   because he could not allege that he acquired or sought any products or services offered by the

13   defendant and stating "[i]t is not enough that the plaintiff is a consumer of just any goods or services;

14   rather, the plaintiff must have acquired or attempted to acquire the goods or services *in the transaction*

15   *at issue*") (emphasis added); *Nordberg v. Trilegant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal.

16   2006) (holding that one plaintiff could not bring a claim under the CLRA because his claim failed to

17   meet the requirement of a consumer transaction).

18        In *Schauer*, a divorced wife brought an action under the CLRA, alleging that the defendant-

19   jeweler had misrepresented the quality of the engagement ring to plaintiff's ex-husband who had

20   bought the ring.  Plaintiff's ex-husband subsequently gave plaintiff the ring.  Defendant argued that

21   plaintiff was not a "consumer" within the meaning of the CLRA because although the transaction

22   between defendant and her ex-husband may have affected plaintiff, a transaction is only within the

23   scope of the CLRA if it is a consumer transaction between the plaintiff and the defendant.  The court

24   agreed, holding that because there was no consumer transaction between plaintiff and the defendant,

25   "she did not fall within the parameters of consumer remedies under the Act."  *Schauer*, 125 Cal. App.

26   4th at 960.

27        In *Nordberg v. Trilegant Corp.*, another California court held that in the absence of an

28   agreement between a plaintiff and a defendant, plaintiff's claims "are not actionable under the CLRA."

- 5 -

1    *Nordberg*, 445 F. Supp. 2d at 1096.  More particularly, in *Nordberg*, plaintiffs brought a claim under

2    the CLRA, alleging that they were wrongfully enrolled in defendant's membership programs for goods

3    and services.  Plaintiffs alleged that they had no knowledge of being enrolled in defendant's programs

4    until they received charges on their bank and credit card statements.  *Id.* at 1096.  After noticing these

5    unauthorized charges, one plaintiff, Nordberg, contacted defendants, and defendants agreed to stop the

6    charges.  *Id.* at 1096-97.  By contrast, another plaintiff, Smith, did not enter into any agreement with

7    the defendant regarding her membership status or the propriety of any refund.  *Id.*  Under these facts,

8    this District held that Nordberg had satisfied the transaction requirement of the CLRA, and when

9    defendants continued to charge Nordberg contrary to their promises, her claim came within the scope

10   of the CLRA.  *Id.* at 1096-97.  However, the court held that Smith had not met the transaction

11   requirement of the CLRA because there was no agreement between Smith and the defendants.  *Id.* at

12   1097.  As a result, the court held that Smith failed to state a claim with the scope of the CLRA.  *Id.*

13           Here, the principles set forth in *Schauer* and *Nordberg* preclude a finding that Plaintiff properly

14   alleged any kind of consumer transaction between himself and either m-Qube or VeriSign.  Nowhere

15   in the Complaint does Plaintiff allege any kind of transaction -- consumer or otherwise -- between

16   himself and either m-Qube or VeriSign.  In fact, he does not allege that he had any contact with m-

17   Qube or VeriSign.  Rather, to the extent Plaintiff alleges any transaction involving himself, it is

18   between Plaintiff and his wireless service provider.  *See* Compl. ¶ 16 ("When the carrier sends its

19   usual monthly bill to the cell phone subscriber, it includes the charges for such mobile content.").  As a

20   result, Plaintiff fails both parts of the consumer transaction requirement.  He is not a "consumer" with

21   respect to m-Qube or VeriSign because he never "sought to acquire or acquired" anything from

22   defendants m-Qube or VeriSign.  Moreover, there was no transaction at all between Plaintiff and m-

23   Qube or VeriSign.  As a result, the CLRA simply does not reach Plaintiff's claims.  m-Qube and

24   VeriSign are third-parties to the only conceivable consumer transaction that Plaintiff alleges.  As

25   California courts have made clear, the absence of a direct consumer transaction between a plaintiff and

26   a defendant is fatal to a claim under the CLRA.  *See Schauer*, 125 Cal. App. 4th at 960; *Nordberg*, 445

27   F. Supp. 2d at 1096.  Accordingly, Plaintiff's claim under the CLRA against m-Qube and VeriSign

28   should be dismissed.

- 6 -

1

2

**B.**     **Plaintiff's CLRA Claim Fails To Identify Any False Or Misleading Representations By Defendants**

3

Plaintiff's CLRA claim should also be dismissed because he fails to allege any purportedly

4

false or misleading representation or advertising that induced him to enter into a transaction regulated

5

by the CLRA.  *See Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172, 1174-75 (E.D. Cal.

6

2007) (dismissing plaintiff's CLRA claim because she had "not plead facts to support a claim of

7

misrepresentation"); *Goodwin v. Anheuser-Busch Cos.*, No. BC310105, 2005 WL 280330, at *5 (Cal.

8

Super. Ct. Jan. 28, 2005) (dismissing plaintiffs' CLRA claims because they failed to identify any false

9

or misleading advertising).  This district has held that plaintiffs are required to provide a heightened

10

degree of specificity in pleading CLRA claims.  *See Nordberg*, 445 F. Supp. 2d at 1097-98;

11

*Faigman v. AT&T Mobility LLC*, No. C 06-04622, 2007 WL 2088561, at *4 (N.D. Cal. July 18, 2007).

12

That is, plaintiffs must allege some factual basis for their allegations under the CLRA.  *See Faigman*,

13

2007 WL 2088561, at *4 (stating "while the requirements of Rule 9(b) were not strictly applicable to a

14

CLRA claim, plaintiffs were 'still required to provide some specificity in their pleadings to put

15

defendants on notice of the charges leveled against them'") (quoting *Nordberg*, 445 F. Supp. 2d at

16

1097).

17

Here, Plaintiff does not meet the general pleading standards for Federal Rule of Civil

18

Procedure 8, let alone the heightened pleading standards required for CLRA claims.  Plaintiff alleges

19

that defendants have violated four provisions of Cal. Civ. Code § 1770.  Compl. ¶¶ 31, 33.  Those

20

provisions provide as follows:

21

> (a) The following unfair methods of competition and unfair or
> deceptive acts or practices undertaken by any person in a transaction

22

> intended to result or which results in the sale or lease of goods or
> services to any consumer are unlawful:

23

24

> (1) Passing off goods or services as those of another.

25

> (2) Misrepresenting the source, sponsorship, approval, or certification
> of goods or services.

26

> (3) Misrepresenting the affiliation, connection, or association with, or
> certification by, another.

27

. . .

28

- 7 -

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

Cal. Civ. Code § 1770. All four of these provisions on their face require that a defendant make some type of representation to the plaintiff. Nowhere in the Complaint does Plaintiff allege that m-Qube or VeriSign made any kind of representation to him. In fact, the Complaint does not allege any contact of any kind between Plaintiff and m-Qube or VeriSign. This failure to allege an essential element of Plaintiff's CLRA claim would preclude Plaintiff's claims even under ordinary pleading requirements. But given the heightened pleading standards this Court has held are applicable to CLRA claims, Plaintiff has clearly failed to plead a CLRA claim with sufficient specificity. *See, e.g.*, *Bitter v. Borton, Petrini & Conron*, Nos. H022431, H022032, 2002 WL 557844, at *8 (Cal. Ct. App. Apr. 15, 2002) ("[T]his cause of action [under the Consumer Legal Remedies Act] is defective because plaintiffs do not allege that [the defendant] made any misrepresentations to them."); *Goodwin*, 2005 WL 280330, at *5 (dismissing plaintiff's claim because plaintiff did not identify any statement or advertising by the defendant that was false or misleading); *Vess v. Ciba-Geigy Corp. USA*, No. Civ. 00-CV-1839B, 2001 WL 290333, at *16 (S.D. Cal. Mar. 9, 2001), *aff'd in relevant part*, 317 F.3d 1097 (9th Cir. 2003) (applying the heightened pleading standards to plaintiffs' CLRA claims and dismissing these claims because plaintiff failed to point to misleading statements by the defendant). Plaintiff's CLRA claim should, therefore, be dismissed.

### C.    Plaintiff's Claim Also Fails Because Plaintiff Has Failed to Allege Causation and Damages in Support of His CLRA Claim

The CLRA requires a plaintiff to show causation and damages in order to state a claim. *See* Cal. Civ. Code § 1780(a) (stating that plaintiff must show "*damages as a result* of the use or employment by any person of a method, act, or practice declared to be unlawful by [California Civil Code] section 1770") (emphasis added); *Nordberg*, 445 F. Supp. 2d at 1097 (holding that to state a claim under the CLRA, a plaintiff must allege the existence of a material misrepresentation and its casual relationship to the harm suffered by the plaintiff); *Faigman*, 2007 WL 2088561, at *6 ("Relief under the CLRA is therefore 'specifically limited to those who suffer damage, *making a causation a necessary element of proof*.'") (emphasis added) (quoting *Wilens v. TD Waterhouse Group, Inc.*, 120

- 8 -

Cal. App. 4th 746, 754 (Cal. App. 4 Dist. 2003)).[6]  In *Nordberg*, this District recently analyzed the requirements for bringing a claim under the CLRA and concluded that in order to bring a claim under the CLRA, a plaintiff must allege the existence of a material misrepresentation and its causal relationship to the harm suffered by the plaintiff.  *Nordberg*, 455 F. Supp. 2d at 1097.

Plaintiff has not alleged any material misrepresentation on the part of either m-Qube or VeriSign.  As noted above, he has not alleged any contact whatsoever with m-Qube or VeriSign.  Given the foregoing, Plaintiff cannot allege that any representation by m-Qube or VeriSign caused any damage he may have suffered, and his CLRA claim should be dismissed.

## IV.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS BARRED AS A MATTER OF LAW

Plaintiff's Complaint also seeks to plead a claim of unjust enrichment.  Compl. ¶¶ 50-53.  Unjust enrichment is an equitable claim that provides restitution for benefits unjustly retained.  *See, e.g.*, *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992).  Plaintiff's claim for unjust enrichment should be dismissed for two independently sufficient reasons.  First, an unjust enrichment claim is barred as a matter of law when the subject matter of the claim is governed by a contract.  Second, when the alleged benefit conferred upon a defendant is incidental to plaintiff's performance of a duty to another, that benefit is insufficient to serve as the basis for an unjust enrichment claim.

### A.    Plaintiff's Unjust Enrichment Claim Is Barred Because The Subject Matter Of Plaintiff's Claim Is Governed By A Valid Contract

It is well-settled that when there is an express contract governing the subject matter of a party's claims, an unjust enrichment claim is barred as a matter of law.  *See California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights."); *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975) ("There cannot be a

---

[6]  *See also People v. Pac. Land Research Co.*, 20 Cal.3d 10, 18 n. 7 (1977) ("Reliance and actual damages must be shown."); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) (noting that unlike other California consumer protection statutes, CLRA requires plaintiffs to show reliance on alleged misrepresentations).

1    valid, express contract and an implied contract, each embracing the same subject matter.").  This rule

2    applies not only in direct contractual situations, but also when a contract governs the subject matter of

3    the suit between a party to the contract and a third party.  *See California Medical*, 94 Cal. App. 4th at

4    172-74.  The rationale for this rule is that when there is an actual contract governing the subject matter

5    of a plaintiff's claims, a court cannot "-- under the guise of equity jurisprudence -- substitute the

6    court's own concepts of fairness regarding that subject in the place of the parties' own contract."  *Id.*

7    (quoting *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419-20

8    (1996)).

9           In *California Medical*, a physicians' association (as the assignee of claims by a group of

10   physicians) brought a claim against providers of health care service plans to recover payments that

11   insolvent intermediaries failed to make for services provided to enrollees in the defendants' health care

12   service plans.  *Id.* at 156-57.  There was no contractual relationship between the plaintiff-physicians

13   and the defendant health service plans.  *Id.* at 161 n.11.  However, there were agreements between the

14   defendants and the intermediaries, and agreements between the defendants and the enrollees that

15   governed the respective rights of the parties involved in the litigation.  *Id.* at 172.  In this third-party

16   context, the court held that "as a matter of law, a quasi-contractual action for unjust enrichment does

17   not lie where, as here, express binding agreements exist and define the parties' rights."  *Id.*  That is, the

18   physicians' association could not proceed with its claim "because the subject matter of the claim, to

19   wit, whether Physicians were entitled to compensation from the defendants, was governed by the

20   express contracts including the Defendant-Enrollee and Defendant-Intermediary Agreements."  *Id.* at

21   172-73.

22          Here, leaving aside the fact that Plaintiff has not alleged any facts supporting his contention

23   that he in particular was overcharged, Plaintiff's allegations relate solely to the performance of his

24   wireless service contract.  *See* Compl. ¶ 51 (alleging that the benefit conferred derives from the

25   "causing [of] Plaintiff and the Class of cellular telephone customers to be billed by *their cellular*

26   *carriers* for mobile content services") (emphasis added).  As a result, Plaintiff's contract with his

27   wireless service provider governs the terms of this lawsuit.  That is, to the extent that any benefit was

28   conferred, it was conferred because of an overcharge on Plaintiff's wireless service contract.  Because

- 10 -

this contract governs the subject matter of Plaintiff's cause of action, an unjust enrichment claim is barred as a matter of law.  *See California Medical*, 94 Cal. App. 4th at 172; *Wal-Noon Corp.*, 45 Cal. App. 3d at 613.  The fact that the contract is between Plaintiff and a cellular service provider, to which defendants m-Qube and VeriSign are third-parties is of no moment.  *See California Medical*, 94 Cal. App. 4th at 172-73 (holding in a third-party situation that, when a contract governs the terms of plaintiff's claims, an unjust enrichment claim is barred as a matter of law).  Fundamentally, Plaintiff's claim here, to the extent he alleges any, is for a refund under a his wireless service contract.  A claim for unjust enrichment under such circumstances is barred as a matter of California law, and Plaintiff's claim should be dismissed.

### B.    Plaintiff's Claim For Unjust Enrichment Fails Because Any Benefit Conferred Upon Defendants Was Incidental To Plaintiff's Performance Of An Obligation Under His Wireless Service Contract

When a plaintiff acts pursuant to a duty to *one party*, any incidental benefit conferred upon *a third party* defendant does not constitute unjust enrichment.  *See California Medical*, 94 Cal. App. 4th at 174 ("[Plaintiffs'] quasi-contract claim must also fail because under the circumstances alleged here, any benefit conferred upon defendants by [plaintiffs] was simply an incident to [plaintiffs] performance of their own obligations."); *Major-Blakeney Corp. v. Jenkins*, 121 Cal. App. 2d 325, 340-41 (1951) ("A person who, incidentally to the performance of his own duty or to the protection or improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution."); 1 Witkin, Summary of Cal. Law, Contracts, § 97, pp. 126-127 (9th ed. 1987) ("[W]here the plaintiff acts in performance of his own duty or in protection or improvement of his own property, any incidental benefit conferred on the defendant is not unjust enrichment.").

Plaintiff does not allege any facts regarding whether he was overcharged by a cellular service provider.  But even were he to amend his complaint to add such allegations, Plaintiff would only be able to allege that he was overcharged under the terms of his wireless service plan.  The fact that any such payment to his wireless service provider incidentally benefited m-Qube would be insufficient to state a claim for unjust enrichment under California law.  *California Medical*, 94 Cal. App. 4th at 174; *Major-Blakeney*, 121 Cal. App. 2d at 340-41.  Other than this potential incidental benefit, Plaintiff has

- 11 -

1    not -- and cannot -- allege any benefit he provided to m-Qube or VeriSign.  For this reason, Plaintiff's

2    unjust enrichment claim should be dismissed by this Court.

3    **V.    PLAINTIFF'S CLAIMS UNDER SECTIONS 17200 AND 17500 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE FAIL AS A MATTER OF LAW BECAUSE HE FAILS TO ALLEGE INJURY IN FACT OR CAUSATION**

4

5            Plaintiff alleges violations under section 17200 and 17500 of the California Business and

6    Professions Code (collectively, "UCL claims").  *See* Compl. ¶¶ 36-49.  Those sections prohibit any

7    entity from engaging in or threatening to engage in "unfair competition" (see Cal. Bus. & Prof. Code

8    § 17201) or any act prohibited by Chapter I (commencing with § 17500) of Part 3 of Division 7 of the

9    Business and Professions Code.  "Unfair competition" is defined as "any unlawful, unfair or

10   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  *Id.*

11   § 17200.

12           In 2004, California voters passed Proposition 64.  This Proposition "amended the California

13   Business and Professions Code to bar persons from suing as 'private attorneys general' or on behalf

14   others absent a showing that they themselves suffered injury as a result of the allegedly unfair business

15   practice."  *Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1154 (C.D. Cal. 2006).

16   Following Proposition 64, California courts have held that in order to a claim under Sections 17200

17   and 17500, the plaintiff must adequately allege injury in fact, the loss of money or property, and

18   causation.  *See Freeman v. Mattress Gallery*, Nos. E039614, E039615, 2007 WL 3300717, at *6 (Cal.

19   Ct. App. Nov. 8, 2007) ("In order to have standing an individual plaintiff must plead facts supporting

20   each of three elements of the Business and Professions Code 17204: (1) injury in fact, (2) loss of

21   money or property, and (3) causation."); *McAdams*, 151 Cal. App. 4th at 677 (2007) (holding that

22   injury in fact, loss of money or property, and causation are required elements of a UCL claim);

23   *Meyer v. Sprint Spectrum L.P.*, 150 Cal. App. 4th 1136, 1144 (2007) (holding that plaintiff's claim

24   under the UCL failed because he was unable to allege either injury in fact, causation, or loss of money

25   or property); *Laster*, 407 F. Supp. 2d at 1194 ("The language of the UCL, as amended by Proposition

26   64, makes clear that a showing of causation is required as to each representative plaintiff.").  Plaintiff

27   cannot meet the injury in fact or causation requirements.

28

1

2

**A.    Plaintiff Cannot Meet the Injury in Fact or Loss of Money or Property Requirements of the UCL**

3       Plaintiff does not make any factual allegations demonstrating an injury in fact or loss of money

4  or property.  In particular, Plaintiff does not allege that he was charged for unauthorized premium text-

5  messaging services, whether he paid these overcharges to AT&T Mobility, or whether he was

6  refunded for any overcharges.  Plaintiff cannot fail to plead such minimal required allegations in order

7  to obscure the issue of whether he has suffered any injury in fact or loss of money or property.  *See*

8  *Freeman*, 2007 WL 3300717, at *6; *Meyer*, 150 Cal. App. 4th at 1138.

9       In *Freeman*, plaintiff alleged violations of the UCL based upon alleged deceptive advertising

10 on the part of a mattress retailer.  The court dismissed plaintiff's UCL claim because plaintiff had not

11 alleged "that he purchased a mattress."  *Freeman*, 2007 WL 3300717 at *6.  As a result, plaintiff's

12 "first amended complaint simply [did] not contain any allegation that [plaintiff] suffered an injury in

13 fact or that he personally lost money or property as a result of [defendant's] alleged wrongful

14 conduct."  *Id.*  Similarly, in *Meyer v. Sprint Spectrum LLC*, plaintiffs brought an action against a

15 cellular service provider based upon alleged illegal and unconscionable terms in a wireless service

16 contract.  150 Cal. App. 4th at 1138.  The court dismissed plaintiffs' action because they had not

17 alleged any injury in fact:

18                 [P]laintiffs here have not suffered any injury in fact.  They have not
                   been required to pay any money out of their own pockets (other than
19                 the fees they paid for their cellular telephone service), they have not
                   lost money or property, and they have not been denied any money that
20                 they can allege is rightfully theirs.

21 *Id.* at 1143.  For the same reason, this Court should dismiss Plaintiff's UCL claims here because he has

22 not alleged that he was required to pay any money other than for his cellular service, that he lost any

23 money or property, or that he has been denied any money that is rightfully his.

24     **B.    Plaintiff Cannot Meet the Causation Requirement of the UCL**

25      Even were plaintiff able to allege an injury, he could still not adequately allege that either m-

26 Qube or VeriSign was the cause of his injury.  Plaintiff concedes in his complaint that any billing that

27 would be the basis of an injury would have come from his wireless service provider.  Compl. ¶ 16

28 (noting that a "cell phone subscriber" receives a monthly bill from its wireless service carrier rather

- 13 -

than m-Qube).  The conduct alleged on the part of m-Qube in the Complaint is the processing of these bills:

> M-Qube generates its revenue [] primarily by transactions for which it, in concert with mobile content providers and Cingular, charges cell-phone subscribers.  Each time one of its content-provider partners issues a charge for its services . . . Cell phone[] accounts function similar to credit card accounts without any security features.

*Id.* ¶ 14.

In a similar factual situation, a California court in *Emery v. Visa International Service Association*, 95 Cal. App. 4th 952 (2002), held that an entity could not be liable under sections 17200 and 17500 merely for processing the bills that reflected the allegedly unlawful conduct.  In *Emery*, plaintiff brought an action against a credit card company that alleged, among other things, that Visa was liable under Sections 17200 and 17500 for the processing of credit card bills related to allegedly illegal lottery ticket purchases.  The court rejected plaintiff's Section 17200 and 17500 claims as "fatally flawed" because they did not allege any conduct on the part of the defendant that violated those sections.  The court stated:

> We need go no further than to remind plaintiff that his unfair practices claim under section 17200 cannot be predicated on vicarious liability. The concept of vicarious liability has no application to actions brought under the unfair business practices act.  A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500.

*Id.* at 960 (internal citations and quotations omitted).  Moreover, the court noted that "VISA merely makes available a payment system to member financial institutions, which merchants can use, and adjusts credit transactions among those members."  *Id.*  Thus, the fact that VISA made its payment system available to third-parties was not sufficient to make it liable for the activities of those third-parties that use its processing service.  *Id.* at 962.  The court summarized the plaintiff's allegations as follows:

> In essence, plaintiff ascribes vicarious liability to VISA for its failure to police millions of merchants who allow payment with a VISA bank card.  While such expansive responsibility may be plaintiff's idea of needed social policy, he fails to present evidence of any viable theory of agency.  In the absence of sufficient evidence to raise a genuine triable issue of fact, his lawsuit fails, along with his misguided notion of consumerism.

- 14 -

1    *Id.* at 960.

2    The facts here are analogous. Plaintiff alleges that m-Qube's role as a billing processor is akin

3    to a credit card processor. *See* Compl. ¶ 14 ("Cell phone[] accounts function similar to credit card

4    accounts."). m-Qube has no contract or agreement with Plaintiff. Rather, m-Qube "merely made a

5    payment system available" to content providers and cellular network operators which, as the *VISA*

6    court recognized, is not sufficient to subject m-Qube to liability under the UCL.

7    In other similar contexts, courts applying the sections 17200 and 17500 have rejected attempts

8    to impose expansive notions of liability on parties that are not directly involved in the conduct that

9    gave rise to the underlying allegation. For example, in *In re Firearm Cases*, 126 Cal. App. 4th 959

10    (2005), a California court rejected the claims of cities and counties that brought an action against gun

11    manufacturers, distributors, and retailers, alleging that they distributed firearms in a manner that

12    enabled criminals to acquire them. The court rejected plaintiff's claim, stating:

13
> Plaintiff's legal theory of expanding UCL liability to those who profit
14 > from downstream dealer sale of guns that end up in criminals['] hands
> is creative and thought provoking. But based on the evidence
15 > presented, we conclude that endorsing the theory in this case would
> stretch the already expansive boundaries of the UCL beyond any
16 > principled reading of the statute.

17    *Id.* at 972. In particular, the court concluded that plaintiff could not meet the causation requirement of

18    the UCL. *Id.* at 985. It held that the plaintiff was required to "show some connection between

19    conduct by defendants and the alleged harm []. Even in a UCL unfairness case, there must be such a

20    connection. Without evidence of a causative link between the unfair act and the injuries and damages,

21    unfairness by itself merely exists as a will-o'-the-wisp legal principle." *Id.* at 978. Moreover, the

22    connection alleged between the defendants' conduct and the harm was too remote to meet the

23    causation requirement because the only conduct alleged on the part of the defendants was the

24    distribution of the firearms. Like in *VISA*, the court in *In re Firearms* held that the defendant gun

25    manufacturers could not be held liable for the injuries caused by third-parties merely because they

26    were involved in the distribution stream: "Although the boundaries of Section 17200 are broad and

27    sometimes difficult to define, in this case we find no evidence of a connection between potentially

28    errant gun retailers and any unfair practices [on the part] of the defendants." *Id.* at 986.

- 15 -

1  Here, Plaintiff has alleged no injury to himself.  Moreover, he has not alleged any conduct on

2  the part of m-Qube[7] other that the processing of the bills for content that was allegedly sent by third-

3  party content providers.  As the *VISA* and *In re Firearms* courts held, such allegations are too remote

4  and "would stretch the already expansive boundaries of the UCL beyond any principled reading of the

5  statute."  *Id* at 972.  As a result, this Court should dismiss Plaintiff's claims under Section 17200 and

6  17500 of the California Business and Professions Code.

7
8  **VI.    PLAINTIFF'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
       **SHOULD BE DISMISSED**

9  Plaintiff's Complaint also seeks to plead a cause of action for declaratory and injunctive relief.

10  Compl. ¶¶ 54-58.  The purpose of declaratory relief is to determine a party's rights before those rights

11  may be invaded.  *See Babb v. Super. Ct.*, 3 Cal. 3d 841, 848 (1971).  Similarly, injunctive relief is an

12  extraordinary remedy that, when necessary to protect a plaintiff's legal right, may require a defendant

13  to refrain from engaging in certain conduct.  *See* CAL. CIV. CODE § 3368.  Neither declaratory nor

14  injunctive relief would be proper in this case, and the Court should dismiss Plaintiff's claim.

15
16  **A.    Plaintiff's Claim for Declaratory Relief Should be Dismissed Because Plaintiff**
       **has Not Pled a Justiciable Claim Against m-Qube or VeriSign**

17  Declaratory relief is available only where there is an actual controversy that turns on the

18  adjudication of future rights.  *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (Cal. Ct. App. 2002).

19  Because Plaintiff's substantive claims for relief fail for the reasons described herein, plaintiff's claim

20  for declaratory relief should also be dismissed.  *See id.* (reasoning that the "'actual, present

21  controversy' [requirement] would be illusory if plaintiff could meet it simply by pointing to the very

22  lawsuit in which he or she seeks that relief.") (quoting 5 Witkin, Summary of Cal. Law, Pleadings, §

23  817, p. 273 (9th ed. 1987)).  Plaintiff has not pleaded a justiciable claim against defendants m-Qube or

24  VeriSign.  Among other things, Plaintiff has not alleged that he engaged in any consumer transaction

25  with m-Qube or VeriSign.[8]  Moreover, Plaintiff has not alleged that he was overcharged by a cellular

---

7  In addition, as noted in Section II, Plaintiff has not made any allegations regarding VeriSign.

8  As described in Sections III.B and III.C, *supra*, Plaintiff has also failed to identify any allegedly
   false or misleading claim made by m-Qube or VeriSign, and Plaintiff has failed to adequately allege
   <span style="float:right">(Footnote Cont'd on Following Page)</span>

DEFENDANTS M-QUBE AND VERISIGN'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION
CASE NO. C 07-3407-JW

1  service provider.[9]  Were Plaintiff to amend his complaint to add such an allegation, his claim would

2  essentially be one for a refund under his contract with his cellular service provider, a claim to which

3  neither m-Qube or VeriSign would be a proper party.  Because Plaintiff's Consumer Legal Remedies

4  Act, unjust enrichment, and UCL claims against m-Qube and VeriSign fail, Plaintiff's claim for

5  declaratory relief should also be dismissed.

6         **B.**  **Plaintiff's Claim for Injunctive Relief Should be Dismissed Because**
7               **Compensatory Damages Would Remedy Plaintiff's Claims**

8        A plaintiff is not entitled to injunctive relief when other legal remedies, including

9  compensatory damages, are available.  *See*, *e.g.*, *N. Side Prop. Owners' Ass'n v. Hillside Mem.'l Park*,

10  70 Cal. App. 2d 609, 615 (1945) ("Where a party has an adequate remedy at law he may not resort to a

11  court of equity for injunctive relief.") (citations omitted).  Plaintiff's complaint seeks, *inter alia*,

12  "economic, monetary, actual, consequential, and compensatory damages" from defendants.  Compl.

13  Prayer for Relief.  As described herein, Plaintiff's claim for damages claim is fundamentally a claim

14  for a refund under his contract with his cellular service provider, and an award of such damages would

15  make Plaintiff whole.  Whether Plaintiff is able to recover such damages through the arbitration

16  processes required by Plaintiff's Wireless Service Agreement, described in Section VII, *infra*, or

17  through this litigation, Plaintiff's access to damages defeat his claim for injunctive relief.

18  Accordingly, Plaintiff's claim for injunctive relief should be dismissed.

19  **VII.**  **IN THE ALTERNATIVE, PLAINTIFF SHOULD BE COMPELLED TO**
20        **ARBITRATE HIS CLAIMS AGAINST M-QUBE AND VERISIGN PURSUANT TO**
      **HIS ARBITRATION AGREEMENT WITH AT&T MOBILITY**

21        As AT&T Mobility's Motion to Compel Arbitration demonstrates, Plaintiff has agreed to

22  arbitration as part of his wireless service contract.  For the reasons stated in support of AT&T

23  Mobility's motion, the arbitration agreements that plaintiff has entered into with AT&T Mobility are

24

25  _____
(Footnote Cont'd From Previous Page)

26  causation and damages. These defects also defeat Plaintiff's claims under the Consumer Legal
Remedies Act.

27  [9]  As described in Section V.B, *supra*, plaintiff has also failed to allege that he paid any money
directly to defendants m-Qube or VeriSign.  This defect also defeats plaintiff's UCL claims.

28

valid and enforceable.  *See* Memorandum of Points and Authorities in Support of Motion of Defendant AT&T Mobility LLC to Compel Arbitration and to Dismiss Litigation Pursuant to the Federal Arbitration Act "AT&T Motion to Compel").  In addition, these arbitration agreements require that Plaintiff arbitrate his claims as an individual action, rather than as class or representative actions.  *Id.* m-Qube and VeriSign expressly incorporate those arguments and join in them.

> Plaintiff's arbitration agreement with AT&T Mobility states:

> Cingular and you shall use our best efforts to settle any dispute or claim arising out of or relating to this Agreement.  To accomplish this, Cingular and you shall negotiate with each other in good faith.  If Cingular and you do not reach agreement in 30 days, instead of suing in court, Cingular and you agree to arbitrate any and all disputes claims (including but not limited to claims based on or arising from for an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement or any prior Agreement between you Cingular.

*See* Cingular Wireless Service Agreement (attached to the Declaration of Neal S. Berinhout submitted with AT&T's Motion to Compel as Exhibits 1 and 2).[10]  This arbitration provision requires Plaintiff to arbitrate his claims against m-Qube and VeriSign as a parties alleged to have billed Plaintiff through Plaintiff's wireless service bill.[11]   It is well-settled that under "ordinary contract" principles, "nonsignatories can enforce arbitration agreements as third-party beneficiaries to those agreements."

---

[10]  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) ("We therefore hold that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."); *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982) (holding that four documents containing alleged misrepresentations, although not literally incorporated within the complaint, may be considered on a motion to dismiss); *Government Computer Sales Inc., v. Dell Marketing*, 199 Fed. Appx. 636, 638 (9th Cir. 2006) ("a court may consider a document on a motion to dismiss if that document is integral to the plaintiff's claims and its authenticity is not in dispute, even if the plaintiff elects not to attach that document to its complaint."); *Bachilla v. Pacific Bell Telephone Co.*, No. Civ. S-07-739, 2007 WL 2825924, at *5 n.6 (E.D. Cal. Sept. 25, 2007) ("Because Plaintiffs' claims rest on the terms of the [document attached], and because its authenticity is not disputed by the parties, it is proper for the court to consider the [document] in ruling on the motion to dismiss.")

[11]  As demonstrated herein, Plaintiff should be required to arbitrate his claims against m-Qube and VeriSign.  However, even if Plaintiff were not compelled to arbitrate his claims against m-Qube and VeriSign, at a minimum, the action in the district court should be stayed pending the arbitration of the claims asserted against AT&T Mobility.  *See* 9 U.S.C. § 3 ("*[i]f any suit* or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . *shall* on application of one of the parties stay the trial of the

(Footnote Cont'd on Following Page)

- 18 -

*Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *see also Britton v. Co-Op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993) (holding that an arbitration agreement can be invoked by a third-party beneficiary).  As a result, where the arbitration agreement at issue is intended to benefit a nonsignatory, that third party may invoke the clause and compel arbitration.

Moreover, even where a nonsignatory to an arbitration agreement may not be a third-party beneficiary to the contract, the nonsignatory may nevertheless invoke the arbitration provision and compel arbitration under principles of equitable estoppel.  Equitable estoppel supports arbitration of claims asserted against a nonsignatory third party "when the [plaintiff] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the [other] signatories to the contract." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006) (quotation omitted); *see also Comer*, 436 F.3d at 1101 (acknowledging equitable estoppel principles apply to arbitration agreements and citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)). Arbitration should be compelled "where a lawsuit against non-signatories is inherently bound up with claims against a signatory . . . in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration." *Hawkins*, 423 F. Supp. 2d at 1050; *see also Boston Telecomm. Group v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1048 (N.D. Cal. 2003) (noting that nonsignatory defendant who allegedly made misrepresentations on behalf of signatory to arbitration clause had "standing to compel arbitration") (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002)).

Court have also have recognized that equitable estoppel principles prohibit a plaintiff from proceeding in court against a nonsignatory when the allegations are intertwined with claims asserted against a signatory to an arbitration agreement.  *See, e.g.*, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) ("arbitration proceedings [between the two signatories] would be rendered meaningless" unless the plaintiff was prevented from pursuing "interdependent" allegations against a

---

(Footnote Cont'd From Previous Page)

action until such arbitration has been had in accordance with the terms of the agreement . . .") (emphasis added).

1    third-party nonsignatory) (quotation omitted); *Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 349 (5th

2    Cir. 2002) (equitable estoppel test met where signatory and nonsignatory allegedly "worked in tandem

3    to misappropriate [plaintiff's] trade secrets" and to commit fraud); *Grigson v. Creative Artists Agency,*

4    *LLC*, 210 F.3d 524, 528 (5th Cir. 2000) (arbitration should be compelled against nonsignatory

5    because, if interrelated claims against nonsignatory and signatory proceed in two different forums, the

6    signatory will experience an inequitable "resulting loss, *inter alia*, of time and money because of its

7    required participation in the [non-arbitration] proceeding").

8         Both theories apply here to m-Qube and VeriSign. The arbitration agreements at issue are

9    clearly drafted and intended to benefit third-parties, such as m-Qube and VeriSign, that provide

10   content and services to the wireless carriers' customers.  Pursuant to such provisions, m-Qube and

11   VeriSign -- even as nonsignatories to the contracts -- have standing as third-party beneficiaries to

12   invoke the arbitration clause and to compel Plaintiff to arbitrate his claims against them.  Even if m-

13   Qube and VeriSign were held not to be third party beneficiaries to the arbitration agreement, equitable

14   estoppel requires Plaintiff to arbitrate his claim.

15        Plaintiff's allegations against m-Qube and VeriSign strongly support the conclusion that m-

16   Qube and VeriSign are third party beneficiaries to the agreements.  Plaintiff alleges that all m-Qube

17   and VeriSign's conduct was interrelated in carrying out the alleged overcharges based on the use of

18   recycled phone numbers.  Plaintiff thus acknowledges that the transactions at issue relate to the very

19   subject of the agreements that contain the arbitration clauses -- i.e., services for his wireless phone.

20   Having brought his claim in one suit and alleged that defendants acted together, plaintiff cannot now

21   argue that m-Qube and VeriSign are too far removed from AT&T Mobility to benefit from the

22   arbitration clause that otherwise encompasses them.

23        However, even if m-Qube and VeriSign were not third-party beneficiaries to the arbitration

24   agreements that Plaintiff entered into with AT&T Mobility, Plaintiff nevertheless should be required

25   to arbitrate his claims against m-Qube and VeriSign under principles of equitable estoppel because the

26   claims in this case, at bottom, accuse defendants of engaging in "substantially interdependent and

27   concerted misconduct."  *Grigson*, 210 F.3d at 528.  Plaintiff's complaint is built upon the allegations

28   that defendants acted together to profit from unauthorized premium messaging services.  Accordingly,

- 20 -

1   Plaintiff's entire action is predicated on the theory that all defendants were working together for a

2   common goal -- i.e., in "concert." These are exactly the type of allegations that justify requiring

3   Plaintiff to arbitrate his claims against m-Qube and VeriSign as nonsignatories to the agreements with

4   AT&T Mobility. *Hawkins*, 423 F. Supp. 2d at 1052 (recognizing the "proposition that where certain

5   parties are clearly compelled to arbitrate, other closely related claims should be included in the scope

6   of the arbitration").

## CONCLUSION

8       For the foregoing reasons, this Court should grant m-Qube and VeriSign's motion to dismiss.

9   In the alternative, this Court should grant m-Qube and VeriSign's motion to compel arbitration of

10  plaintiff's claims and dismiss this litigation.[12]

12  Dated:  November 20, 2007                   Respectfully submitted,
                                                ARNOLD & PORTER LLP
13
                                                By: /s/ Angel L. Tang
14                                              Ronald L. Johnston (State Bar No. 57418)
                                                Angel L. Tang (State Bar No. 205396)
15                                              777 S. Figueroa Street, Suite 4400
                                                Los Angeles, CA 90017
16                                              (213) 243-4000

17                                              James Cooper
                                                *Admitted Pro Hac Vice*
18                                              Laura Riposo VanDruff
                                                *Admitted Pro Hac Vice*
19                                              555 12th Street, NW
                                                Washington, D.C. 20004
20                                              (202) 942-5000

21                                              *Attorneys for Defendants*
                                                *VeriSign, Inc. and m-Qube, Inc.*
22

---

[12]  District courts may dismiss a lawsuit when the claims are subject to arbitration. *See Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (Section 3 of the FAA "did not limit the [district] court's authority to grant a dismissal").

- 21 -